```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                              Docket #19cv03347
 WILLIAMS,                              : 1:19-cv-03347-GBD-JLC

                    Plaintiff,          :

  - against -                           :

 THE CITY OF NEW YORK, et al.,          :
                                              New York, New York
                    Defendants.         : January 14, 2020

------------------------------------: TELEPHONE CONFERENCE


                      PROCEEDINGS BEFORE
                 THE HONORABLE JAMES L. COTT
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:           ALEXANDER WILLIAMS, Pro Se
                         141-180-1632
                         Manhattan Detention Center
                         124 White Street
                         New York, New York 10013

For Defendants:          NEW YORK CITY LAW DEPARTMENT
                         BY:  SAMANTHA PALLINI, ESQ.
                          100 Church Street
                         New York, New York 10007




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street, #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

1

                                                                3

            THE COURT:  Good morning, this is Judge Cott, is
Mr. Williams on the line?
            MR. ALEXANDER WILLIAMS:  Yes, sir.
            THE COURT:  Good morning, Mr. Williams, how are
you today?
            MR. WILLIAMS:  I'm okay, good morning, Your
Honor.
            THE COURT:  Good morning.  I'm going to ask
the lawyer for the City to state her name for the
record here.
            MS. SAMANTHA PALLINI:  Good morning, Your
Honor, Samantha Pallini for the City and the
correction officer defendants.
            THE COURT:  So Mr. Williams, just so you know,
I'm going to make a recording of our conference today
and I'm then going to ask the City to get a copy of
the transcript of this proceeding so that you'll have
a record of it, and I'm going to ask them to mail it
to you, okay?
            MR. WILLIAMS:  Okay, sir.
            THE COURT:  So you don't have to worry about
writing dates down or anything like that because
everything that we say will be recorded here and we'll
probably issue an order, as well, which we'll send to

```
 1                                                          4
 2  you.
 3          MR. WILLIAMS:  Okay.
 4          THE COURT:  The first thing I want to confirm
 5  with you is where you're currently located so we have
 6  the proper address for you.
 7          MR. WILLIAMS:  I'm in Manhattan Detention
 8  Complex.
 9          THE COURT:  Okay.
10          MR. WILLIAMS:  125 White Street, New York, New
11  York 10013.
12          THE COURT:  Okay, great, I think that's where
13  we have the address for you currently.  So the purpose
14  of the conference today is two-fold. The first is to
15  set a scheduled for what's called discovery in your
16  case, and the second is to talk about whether there is
17  any possibility your case here can be settled. And I
18  know you have, in addition to this case, some other
19  cases that are pending here in our court. So I'm not
20  familiar with the details of those, but I know from
21  what I understand that they may have some relation, at
22  least in part, to the claims here. So we can talk
23  about them at least as they relate to this case. And
24  while I can't give you any legal advice, I certainly
25  can and plan to talk a little bit about process and
```

                                                                5

make sure that you understand how things are going to work, because it's very important, I know you're not a lawyer, to understand how court cases in federal court work, okay?  So don't be shy about asking me any questions you may have about process.

          MR. WILLIAMS:  Okay.

          THE COURT:  So as I said, the first thing I want to do is set a schedule for discovery. And what I mean by that is in discovery, the parties exchange documents and the parties can serve each other with what are called interrogatories, which means certain questions. And in most cases there are what are called depositions which is testimony that is taken under oath in advance of trial. And my guess is if your case goes forward, the City will likely want to take your deposition under oath, and Ms. Pallini will make arrangements for that.

          Usually in cases of pro se prisoners, you can't afford the expense of retaining a court reporter, which can be expensive. And so what I usually permit is for you to submit written questions to the lawyer for the City and you can direct them to particular officers or whatever and then they will submit affidavits sworn to responding to the

```
                                                           6
 1
 2  particular questions you have.
 3           MR. WILLIAMS:  Okay.
 4           THE COURT:  Do you follow me so far?
 5           MR. WILLIAMS:  Yes, sir.
 6           THE COURT:  Great.  Okay, so I guess what I
 7  want to do first is set a schedule for the discovery
 8  period and I'll ask Ms. Pallini first how much time do
 9  you think would be appropriate in this case?
10           MS. PALLINI:  I think that 60 to 90 days is
11  fine with us.
12           THE COURT:  Okay, so I'm going to suggest,
13  it's now the middle of January, that we give you until
14  the end of March, March 31, to conclude all discovery
15  as it relates to the claims that are pending in this
16  case.
17           MR. WILLIAMS:  Okay.
18           THE COURT:  And so, Mr. Williams, if there
19  are, you know, questions that you want answers to from
20  particular officers, what I would say you should do is
21  send them directly to Ms. Pallini, you don't need to
22  send them to the Court.
23           MR. WILLIAMS:  Oka.
24           THE COURT:  Generally discovery is not part of
25  the court record, if you will, it's just what's
```

```
                                                                 7
 1
 2  exchanged between the parties.
 3          MR. WILLIAMS:  Okay.
 4          THE COURT:  And then she'll prepare these
 5  affidavits with the officers and send them back to you
 6  and then you'll have them.
 7          MR. WILLIAMS:  Okay.
 8          THE COURT:  Now often what happens after the
 9  close of discovery is that defendants make what's called
10  a motion for summary judgment, I'm sure, Ms. Pallini, you
11  don't know, as you sit here, whether you would make such a
12  motion, but do you think there's some possibility that you
13  might in this case?
14          MS. PALLINI:  I do, yes.
15          THE COURT:  All right, so what I would suggest we
16  do, just for purposes of completeness, is set a schedule for
17  that motion if you're going to make such a motion.
18          MS. PALLINI:  Okay.
19          THE COURT:  So if we're closing discovery by the
20  end of March, how much time would you want before you made
21  the motion, 30 days, until the end of April?
22          MS. PALLINI:  Yes.
23          THE COURT:  Does that work?
24          MS. PALLINI:  That's great, thank you, Your
25  Honor.
```

```
                                                              8
 1
 2              THE COURT:  Okay.  So we'll give you until
 3   April 30 to make your motion.  And Mr. Williams, I'll
 4   give you 30 days to respond to the motion, is that
 5   okay?
 6              MR. WILLIAMS:  Okay.
 7              THE COURT:  So we'll say, I'll say June 1, and
 8   then if there is any reply, June 15, okay?  So that's
 9   the schedule if there's going to be motions.
10              Now, let me lace the subject, well, before I
11   do that, let me just make sure with respect to
12   discovery, do you have any questions, Mr. Williams, at
13   all about anything I've said or about discovery
14   generally, or anything else about the case?
15              MR. WILLIAMS:  Not right now at this point.
16              MS. PALLINI:  Okay.  All right then, so we
17   have a discovery schedule and we have a motion
18   schedule.  What I want to talk about next, which I
19   always raise at an initial conference, is the
20   possibility of settlement.  And settlement is always,
21   you know, important to think about and keep an open
22   mind about, but to be crystal clear, Mr. Williams, I
23   can't make you settle or force you to settle at all,
24   and I'm not raising this to try and force you to
25   settle, I'm just raising it so that you know it's
```

```
                                                              9
```

always an option at least to consider and to discuss with the defendants. And the Court can sometimes play a role in helping the parties, I often have settlement conferences and the like.  Have you given any thought at all to settlement of your case?

        MR. WILLIAMS:  I've thought about it, I don't know what the defendants are willing to do, willing to do about, you know, not so much as monetary value but other injunctions that will have to be in play as far as the law library and how they're conducting the mail process here as referencing me in my Court order.

        THE COURT:  I see, well that makes sense to me given the nature of your allegations. So I think what you will want to do probably, and we don't need to dwell on it today, is I think you should perhaps consider writing a letter to Ms. Pallini laying out sort of what the general terms of settlement might be for you as it relates to both your mail, telephone access, law library, et cetera. I understand from something you submitted that you're subject to a lockdown order, correct?

        MR. WILLIAMS:  Yes.

        THE COURT:  And I think further, there is only one page of that order that you attached, so I think Ms. Pallini is going to need to get a copy of that. And I think she'll

probably make an application to the Court for me to sign an order which will give her permission to get a full copy of the lockdown order because I think that will then help her understand better what the conditions you're under right now are and what latitude she might have in order to talk about settlement. Does that make sense to you?

MR. WILLIAMS: Yes. I believe that it was two-fold, it's actually two pages but it's the front and back. As far as the lockdown order, see, at the jail I've already been through litigations with them explaining and captains and deps agreed after the lawsuit was already in, that that's why they stopped reading the mail, because I didn't have a mail restriction. I didn't have a problem with how the phone was being used except for when they prevented me from calling 311 after they attacked the grievance officer here, where we couldn't make grievances. So 311 was the only other way to contact to make the complaint, to put on record what was going place.

So as far as the phone calls I'm all right, I'm able to contact may lawyer and legal people as needed, as long as nobody is not being spiteful and retaliating over my complaints. The main issue was the

```
 1                                                              11
 2  reading of my privileged mail, my outgoing mail, which
 3  they gave me a response that they was able to do, and
 4  then once the super's in you stop, which didn't make
 5  sense to me. Because if you're able to do it and
 6  you're arguing in the grievance that you're able, or
 7  do the interpretation that a lockdown order, we can
 8  read it, why stop?  When I brought it up to the judge
 9  that signed the lockdown order, he explained, he asked
10  the DA did he have any warrant at the jail, the DA
11  said no.  We investigated with the warden at the jail,
12  she said he's not on authorized mail watch, he said
13  well then he didn't put a mail section on my Court
14  order for my mail to be addressed.
15            THE COURT:  So the main claim you have now is
16  library access, is that the main thing that's still
17  outstanding?
18            MR. WILLIAMS:  Yes, the law library access.
19            THE COURT:  Okay.
20            MR. WILLIAMS:  (indiscernible) law library,
21  the review of the policy that they have, the policy
22  states that we're supposed to be able to go to the law
23  library or have access to, full access to a working
24  processor, which is the LexisNexis kiosk.  Now they
25  want me to get on the phone and talk to the legal
```

                                                               12
coordinator, and all respect to him, he says he can't
really help you unless, you know, you get into the
specifics of your case which understandable. But how
can you do that on a department phone when every phone
call is recorded?  And I haven't (indiscernible), I'm
going back and forth to court on my criminal matter,
so I'm uncomfortable discussing that on the phone with
them and I prefer to do my own research --
          THE COURT:  I see, okay.
          MR. WILLIAMS:  (continuing) -- the paper and
he's not even answering the stuff that I'm trying to
research.
          THE COURT:  I see.  Okay, well I think that's
very helpful for you to have explained everything that
you did, for Ms. Pallini's sake I think it gives her a
better sense of sort of the scope of your concerns and
your complaints. And that will make it easier for her
to evaluate in talking to various people, probably the
DA's office as well as people at the MDC, what can and
can't be done, and then she'll work with you to see if
you can resolve your claim.  And I know you have other
claims and other lawsuits, and that's outside the
scope of this case, but I guess what I would just say
informally is perhaps there's a way you can consider

                                                              13

talking to Ms. Pallini who I believe represents the
City in the other cases, is that right?
          MS. PALLINI:  One of the other cases.
          THE COURT:  One of the other cases.  So
perhaps you can fold in at least one of the other
cases, as well, to see if there's a way to come up
with a plan that would satisfy you settlement wise.
          MR. WILLIAMS:  Well, Your Honor, me and Ms.
Pallini spoke about three weeks ago about the matter
and I was open to it. But the matter is, you know, I
now that the Court's don't really like to interject
into what the prisons is doing, and that's fine.  My
issue is when it comes to how they're dealing with
certain things and myself, and in reference to my
mail, legal aspects, a lot of people in position here
at the jail where they're being retaliating over the
defendant Dep. Rivera, she was a dep here, she's no
longer here. But now she basically had people not let my
mail go out, there's things I got going on in the Supreme
Court that the clerk is saying they're not getting, where
there's a logbook downstairs saying it went out, but the
clerk in the office is saying they're not getting it. And
the people that's in position to deal with the mail are
tampering with the mail.  So it constantly keeps me having

```
                                                        14
```

to bring, you know, make a complaint or make an 83 complaint. It's the hope that once the Courts get involved that it will stop, but it looks like it's not stopping, it's going on right now where certain things I have to send out certified, they're telling me I can't use money out of my account to send certified mail out.

THE COURT: Well I, you know, I know it's difficult because you're facing state charges and so there's a State Court that is overseeing all of that, and some of what you're talking about is implicated in the pending criminal case. But at the same time, as you say, you have a right to avail yourself of the resources in the federal court by bringing 1983 claims, but there is sort of an intersection between the two, and Ms. Pallini has to kind of sort through that as well.

I'm not sure there's anything else for me to say or do with respect to that today. I think you've laid it out very clearly, which has been helpful, and I'm just going to ask Ms. Pallini if you can talk to both the DA's office, as well as the officials at the detention center and see if they can work out something that will be satisfactory to you. And if it is, then perhaps you'll be able to resolve this, and

                                                              15
if not, then your case will continue to go forward.

        MR. WILLIAMS:  Okay.

        THE COURT:  Okay?  Is there anything else on your mind that you want to raise today or ask any other questions before we conclude the proceeding?

        MR. WILLIAMS:  Not at all.

        THE COURT:  Ms. Pallini, anything else on your end?

        MS. PALLINI:  Yeah, just one item.  Mr. Williams, are you alleging any emotional injuries? Because we sent you some medical releases, so if you are alleging emotional injury, you're going to need to send those back to me, and if you're not, you don't have to worry about it.

        MR. WILLIAMS:  Well, Ms. Pallini, have sent them back to you, you might not have got it because the ladies mailroom is not sending out my mail. It's to the point where I have to have my private attorney come up at times to get my mail, and I pay this guy on an hourly basis. So everything that you're sending me, I've sent back, and if you didn't get it, it's because they not sending out.  Now they're not letting me send it certified where I can track it, and that was the whole moral of the lawsuit if you read it, that now

16

the other lawsuit basically is saying they're stopping me from properly accessing the courts. And if I can't access the courts in a timely manner, certain cases will get dismissed because the correspondence is not there. So it would seem like that I'm ignoring things, and I'm pretty sure you've seen any time when this first started, I'd get anything from the courts, I'd answer right back in a matter of days.

MS. PALLINI: So Mr. Williams, what I just want to clarify though is are you alleging emotional, like emotional injuries because of what you're talking about in the lawsuits?

MR. WILLIAMS: Yes, ma'am.

MS. PALLINI: You are, okay. Do you remember when you sent me those medical releases?

MR. WILLIAMS: When you sent it to me, I sent it back in a matter of three days. I never take more than 72 hours to respond to anything.

MS. PALLINI: Okay. What I'll do then is I'll double check our offices again and if we don't have a copy, I'll send you another set of releases by the end of this week. And if it helps, I can send you an envelope that's pre-stamped.

MR. WILLIAMS: Ms. Pallini, the issue is not

17

my responding, I'll reiterate it, the Officer Espinosa that's in the mailroom, she's going to listen to Dep. Rivera, and she's not allowing any of my mail to go out.  Any of it.  Sometimes it gets returned back and sits down there for weeks. So you sending me something for me to send back is not the issue, the issue is the officer that's working the mailroom is not allowing my mail to go out and they're not giving me a written response. If they would give me a written response, then I would be able to attach that, but they've been opening the mail, they see how I'm litigating, they see how I'm trying to understand how to do things, so they don't give me nothing in writing. I could show you numerous (indiscernible) that I've sent to the Bogart building asking for things in writing, numerous grievances, now over 41 of them went out just asking if you're not going to send it out, give me notification as to why my mail is not going out and I'm not receiving.

     MS. PALLINI:  Okay, well what I'm going to do then is I'll talk to DOC, but in the meantime, I'm still going to send you another set and then, if you can, to the best of your ability, send those back to me.

```
                                                          18
 1
 2           MR. WILLIAMS:  Okay, no problem.
 3           MS. PALLINI:  Okay, great, thank you.  That's
 4   it, Your Honor.
 5           THE COURT:  All right, thank you, Ms. Pallini.
 6   Have a good day, Mr. Williams, thank you for sharing
 7   your thoughts about everything.
 8           MR. WILLIAMS:  Okay, thank you.
 9           THE COURT:  All right, have a good day.
10               (Whereupon the matter is adjourned.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                            19
                        C E R T I F I C A T E


        I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the United States District
Court, Southern District of New York, Williams versus The
City of New York, et al., Docket #19cv3347, was prepared
using PC-based transcription software and is a true and
accurate record of the proceedings.


Signature___Carole Ludwig_____
              Carole Ludwig
Date:    January 27, 2020
```