

**JAMES E. JOHNSON**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
L**AW** D**EPARTMENT**
100 CHURCH STREET
NEW YORK, NY  10007

**QIANA SMITH-WILLIAMS**
*Senior Counsel*
phone: (212) 356-2360
fax: (212) 356-3509
e-mail: qwilliam@law.nyc.gov

December 1, 2020

**BY ECF**
Honorable Lewis J. Liman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:    Alexander Williams v. City of New York, et al.,
                 19 Civ. 3347 (LJL) (JLC)[1]

Your Honor:

      I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department, and one of the attorneys assigned to represent defendants in the above-referenced matter.  Defendants write to respectfully request that the Court deny plaintiff's motion for a temporary restraining order ("TRO") and order to show cause as the claims in the motion are unrelated to his claims in the operative complaint herein and, therefore, the Court does not have jurisdiction to grant the relief sought. Furthermore, to the extent that any of the relief sought via the motion can be said to relate to the claims in the complaint, the request for a TRO should still be denied since plaintiff fails to show irreparable harm, as the conduct complained of is not unconstitutional.

      By way of background, Plaintiff is a pre-trial detainee in the custody of the New York City Department of Corrections ("DOC"). Plaintiff alleges that between January 20, 2019 and July 14, 2020, defendants, correction officers at Manhattan Detention Center ("MDC"), opened and read his outgoing and incoming mail, denied him access to the law library, ignored and did not process his grievances, denied his ability to timely mail summonses and complaints to correction officers he was suing in a state court proceeding, retaliated against him, used excessive force against him by spraying him with a chemical agent, and denied him adequate medical care. (See Williams I, Compl., pp. 4-5; Williams II Compl., pp. 4-5, 7-11; Williams III

---

[1] This matter was originally docketed as 20-cv-3992. However, on or about August 27, 2020, this matter was consolidated into the matter bearing docket number 19-cv-3347.

Am. Compl. 4, 6-14, and 21.)  By letter, dated November 6, 2020, plaintiff advised the Court and the parties that he is no longer being housed at MDC, but is now at George R. Vierno Center ("GRVC") – the letter was docketed on November 13, 2020. (ECF No. 112.)  Thereafter, plaintiff filed the instant motion for a TRO and an order to show cause, dated November 13, 2020 and docketed on November 24, 2020. (ECF No. 117.)

In the TRO motion, plaintiff does not specifically enumerate the relief sought. Rather, he appears to complain about certain alleged unconstitutional actions that he states he has been subjected to since he has been housed at GRVC.  Specifically, plaintiff complains that he is not being permitted a sufficient number of showers; he is being denied kosher meals; his food is prepared outside of his sight and by an individual without a handling certification; he is being denied access to the commissary; he has been denied medication on occasion and has been denied sick call examinations; he has been denied access to materials to clean his cell; officers have failed to produce him for court; he has been placed on enhanced restraints; and his outgoing mail must go through the Security Office before being mailed out, despite this restriction not being listed on his Lockdown Order. (See ECF No. 117, pp. 3-8.) Plaintiff also alleges that he has been denied access to his criminal defense attorney on occasion.  All of the alleged events post-date the date of the last incident alleged in the operative complaint and none of the individually named defendants are alleged to have committed the acts complained of.

1. **Legal Standard – Temporary Restraining Order**

Plaintiff's motion for a TRO should be denied because he fails to establish a relationship between the alleged injuries in his motion and the conduct asserted in the consolidated complaints and, regardless, he fails to show a likelihood of success on the merits or irreparable harm. "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." Basank v. Decker, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020). "A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (internal quotation marks omitted). "[A] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Basank, 449 F. Supp. 3d at 210 (internal quotation marks omitted). "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." Id. at 213 (collecting cases).

"Preliminary injunctive relief is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mercado v. Dep't of Corr., No. 16-CV-1622 (VLB), 2017 U.S. Dist. LEXIS 41881, at *4-*5 (D.Conn. Mar. 23, 2017). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." Milner v. Black, No. 16-CV-1621 (SRU), 2017 U.S. Dist. LEXIS 94558, at *2 (D.Conn. June 2, 2017).

### a. No Relationship Between the TRO and the Present Lawsuit and, Therefore, No Likelihood of Success on the Merits

Here, the allegations in the motion for a TRO solely relate to employees at GRVC and the policies/practices specific to GRVC. (See ECF No. 117, pp. 3) ("Below is a chronological synopsis of the conditions that the plaintiff has been living under since being housed at G.R.V.C.") However, the consolidated complaints in this litigation reflect allegations of claims of unconstitutional conduct that occurred at MDC, by correction officers assigned to MDC.[2]  Furthermore, there are no claims in the consolidated complaints similar to the vast majority of the conditions of confinements that plaintiff sets forth in the TRO motion. Specifically, the consolidated complaints reflect allegations of improper surveillance of plaintiff's mail, improper handling of his grievances, interference with plaintiff's attempts to timely serve process on defendants in a civil case, and alleged excessive use of force.  In comparison, the TRO motion focuses on allegations regarding shower usage, food preparation, access to the commissary, cleaning materials, and medication, as well as allegations that plaintiff has been placed on enhanced restraint. Because the relief sought by way of TRO is, in large measure, drastically different than what plaintiff complains of in the operative consolidated complaints, "[i]t would be inappropriate for the court to grant a request for injunctive relief that is unrelated to the claims and the defendants in the complaint." Al-Bukhari v. Semple, No. 15-CV-322 (SRU) (LEAD), 2019 U.S. Dist. LEXIS 28327, at *11 (D.Conn. Feb. 22, 2019) (collecting cases); see also Stewart v. United States Immigration & Naturalization Service, 762 F.2d 193, 198-99 (2d Cir. 1985). Dec. 30, 2016) (holding that the district court did not have jurisdiction to grant injunctive relief because the employment matter before the court did not involve the same claims that were alleged in the motion for injunctive relief); Milner, 2017 U.S. Dist. LEXIS 94558, at *3 (denying the request for injunctive relief because it involved issues about denial of telephone calls, denial of medical care, denial of the ability to purchase food, and confinement in administrative or punitive segregation that were not related to the claims in the ongoing litigation).  Furthermore, the relief sought is nothing more than an improper attempt to embroil the Court in the workings of GRVC. See, e.g., Milner, 2017 U.S. Dist. LEXIS 94558, at *2.

### b. Plaintiff Cannot Establish Irreparable Harm for Denial of Access to Courts.

Regarding plaintiff's allegations concerning denial of access to his criminal defense attorney, as set forth above, because the alleged denials occurred at GRVC and are not set forth in the operative consolidated complaints, the Court should not grant injunctive relief as to the unrelated claims.  Nevertheless, plaintiff is not entitled to injunctive relief concerning the denial of access to courts claims because he cannot establish that he will be irreparably harmed absent injunctive relief. "To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." Lewis v. Graham, No. 18-CV-451 (MAD) (CFH), 2020 U.S. Dist. LEXIS 21238, at *25 (N.D.N.Y. Feb. 3, 2020). To satisfy

---

[2] To the extent that plaintiff seeks a TRO based on alleged unconstitutional acts that occurred at MDC, the request should be denied as moot since plaintiff is no longer housed at MDC.  See, e.g., Christian v. Lefevre, No. 96-CV-309 (RSP), 1996 U.S. Dist. LEXIS 14824, at *3-*4 (N.D.N.Y. Sept. 26, 1996) (denying as moot requests to enjoin the conduct of officials at Franklin Correctional Facility after plaintiff was transferred to a different correctional facility).

the actual injury element, Plaintiff "must demonstrate that a defendant took or was responsible for actions that hindered . . . plaintiff's efforts to pursue a legal claim." Sheppard v. Lee, No. 10 Civ. 6696 (GBD) (JLC), 2011 U.S. Dist. LEXIS 128432, at *12 (S.D.N.Y. Nov. 7, 2011).

      Plaintiff alleges that he has been denied phone calls with his criminal defense attorney, denied visits with his attorney, and denied access to a typewriter. Plaintiff, however, cannot show any actual injury in regards to his claims.[3] As an initial matter, the fact that plaintiff has been able to file and litigate this matter, including the filing of multiple complaints and motions, including the instant twenty-six page TRO motion, belies that he suffered any actual injury. See Johnson v. Schiff, No. 17-CV-8000 (KMK), 2019 U.S. Dist. LEXIS 166372, at *79 (S.D.N.Y. Sept. 26, 2019) ("Here, Plaintiff cannot show actual injury, as he in fact filed this Action."). Indeed, despite plaintiff's allegation that he has "been restricted from using [a] type writer . . . for [the] last 2 years," he fails to show any direct injury in relation to his civil cases. See Tutora v. Gessner, No. 17-CV-9517 (KMK), 2019 U.S. Dist. LEXIS 51974, at *14 (S.D.N.Y. Mar. 27, 2019) (dismissing a denial of access to courts claim where plaintiff could not show that he suffered direct injury as a result of the alleged restricted access to the library). Furthermore, to the extent plaintiff ties his allegations of denial of access to courts to his currently ongoing criminal prosecution, he fails to state a claim because criminal matters fall outside of the purview of denial of access claims. See Hayes v. Cty. of Sullivan, 853 F. Supp. 2d 400, 435 (S.D.N.Y. 2012) ("[T]he Supreme Court has limited [access to courts] claims [to] attacking the prisoner's sentence, directly or collaterally, or challenging the conditions of the prisoner's confinement[.]") (citing Lewis v. Casey, 518 U.S. 343, 355 (1996)). Finally, the claim also fails because "a state is not constitutionally obligated to provide a pretrial detainee with additional legal resources, such as a law library, when that detainee is already represented by counsel." See Hayes, 853 F. Supp. 2d at 436 (holding that plaintiff's assertion that he was denied access to federal case law to use for his criminal suppression hearing when he was represented by counsel failed to state a cognizable injury).

      **c. Plaintiff Cannot Establish Irreparable Harm for First Amendment Retaliation**

      In an abundance of caution, although it is not clearly stated, defendants analyze plaintiff's allegations that he is being denied phone calls with his attorney, denied visits with his attorney, and denied access to a typewriter as first amendment retaliation claims. See ECF No. 117, p. 9) ("The defendants in this matters clearly has taken on a retaliatory position. . . .") "To establish a First Amendment retaliation claim, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Brandon v. Kinter, 938 F.3d 21, 40 (2d Cir. 2019). "Protected speech or activity includes filing a

---

[3] Plaintiff's allegation that his mail is impermissibly sent through the Security Office although his Lockdown Order does not permit may be construed as a denial of access to courts claim based on interference with legal mail. See generally Davis v. Goord, No. 01-0116, 2003 U.S. App. LEXIS 13030, at *7 (2d Cir. Feb. 10, 2003) (defining a denial of access to courts based on interference with legal mail). However, this allegation fails, as plaintiff does not demonstrate actual injury, i.e., that sending his mail through the Security Office frustrates, or creates an impediment to, a legal claim. See Benjamin v. Kerik, 102 F. Supp. 2d 157, 180 (S.D.N.Y. 2000) ("The plaintiffs have not shown that the Department's inmate mail practices prevented them from communicating with the courts or their attorneys or shown that inmates have missed deadlines or failed to comply with court orders.").

lawsuit, an administrative complaint, or a prison grievance." Lawrence v. Agramonte, No. 19-CV-1498 (VAB), 2020 U.S. Dist. LEXIS 81400, at *7 (D.Conn. May 8, 2020). The third element—a causal connection—includes a temporal requirement: plaintiff's protected speech must have come first, and have been the reason for the later adverse action by correction officers. See, e.g., Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (concluding that plaintiff's lack of setting forth the time frame of the events "precludes inference of a causal relationship").

Here, as an initial matter, the defendants in this litigation are MDC employees not GRVC. To the extent that plaintiff is alleging that MDC employees are somehow retaliating against him based on what is purportedly happening at GRVC, he offers no factual predicate for that allegation, especially since he is no longer housed at MDC. (See supra, n.2.) If the retaliation is alleged by GRVC employees, plaintiff fails to establish any protected conduct or a causal connection between said protected conduct and GRVC employees' adverse actions. Specifically, plaintiff has not identified any protected conduct that purportedly precipitated the alleged adverse action by GRVC employees (i.e., plaintiff's list of complaints). See, e.g., Roseboro v. Gillespie, 791 F. Supp. 2d 353, 368 (S.D.N.Y. 2011) (explaining that a retaliation claim automatically fails if the purported adverse action predates the protected speech). As such, there is not a first amendment retaliation claim and, therefore, no irreparable harm.

### d. Plaintiff Cannot Establish Irreparable Harm for Mail Interference

Plaintiff alleges that his outgoing mail must go through the Security Office before being mailed out, despite this restriction not being listed on his Lockdown Order. (See ECF No. 117, pp. 5.) For the purposes of defendants' response, this allegation is construed as a purported claim for mail interference. "To establish a violation of this right, the [individual] must show that the interference with his mail was both regular and unjustified." See Smith v. City of New York, No. 14-CV-443 (LTS) (KNF), 2015 U.S. Dist. LEXIS 40247, at *10 (S.D.N.Y. Mar. 30, 2015). Notwithstanding Plaintiff showing regular and unjustified interference, there is no liability if defendants establish a sufficient justification for the mail restriction/interference that furthers "one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Wingate v. City of New York, No. 14-CV-406 (ARR) (LB), 2018 U.S. Dist. LEXIS 137244, at *19 (E.D.N.Y. Aug. 14, 2018).

Here, while the Lockdown Order does not address mail restrictions, the Order does not dictate what controls the correctional facility may impose for security reasons. Moreover, the Constitution, not the Lockdown Order, sets the standard as to whether any an interference with mail justifiably furthers a governmental interest. However, the Court need not address the question of constitutionality at this juncture. The claim requires *interference*, but there is no allegation that GRVC employees delayed, confiscated, tampered with, or opened plaintiff's mail. Plaintiff's mail going through the Security Office before being sent out is not a restriction or interference of his right to the free flow of mail; it is one additional step in the process. As such, there is not a mail interference claim and, therefore, no irreparable harm. .

Accordingly, defendants respectfully request that the Court deny plaintiff's motion for a temporary restraining order ("TRO") and order to show cause as the injunctive

relief sought is not related to the claims in the present litigation and, therefore, the Court does not have jurisdiction to grant the TRO. Furthermore, even if the allegations were related to claims in the consolidated complaints, plaintiff fails to show irreparable harm, as the alleged misconduct is not unconstitutional.

                                      Sincerely,

                                      *Qiana Smith-Williams*
                                      Qiana Smith-Williams[4]
                                       *Senior Counsel*

cc:    **VIA FIRST-CLASS MAIL**
        Alexander Williams
        George R. Vierno Center
        09-09 Hazen Street
        Bronx, NY 11370

---

[4] This case has been assigned to Assistant Corporation Counsel Aaron Davison, who passed the New York State Bar Exam and is presently applying for admission. Mr. Davison is handling this matter under supervision and may be reached at (646) 988-3220 or adavison@law.nyc.gov.