19-CV-3347

ALEXANDER WILLIAMS JR,

RECEIVED
SDNY PRO SE OFFICE

2021 MAR 22 PM 2: 32

PLAINTIFF(S),

-AGAINST-

CITY OF NEW YORK ET AL.,

DEFENDAT(S),

### PLAINTIFF'S REPLY TO DEFENDANT(S) REQUEST SEEKING SUMMARY JUDGEMENT

ALEXANDER WILLIAMS JR
PLAINTIFF PRO-SE
G.R.V.C
09-09 HAZEN STREET
QUEENS, NEW YORK 11370

The plaintiff is making a submiossion responding to  what he believes is the defense cross-motion to his motion for Summary Judgement.

On March 3, Or 4 2021 the plaintiff received  54 copies/prints outs of case law from defense counsel Aaron Davison which he suggestes was being used in defense counsel legal arguement in the response to plaintiff's motion.

As a result the plaintiff immediately wrote the court informing of this and asking for time because he did not recive the actual motion from defense counsel Mr Davison but just the case law print-outs.

The plaintiff has expresssed to the Court on numerous occassion that since he commenced this law suit that he has had many issues with reciving and sedning his legal mail in specifically and has even voiced such on the Court's minuts durring a telephone-conferrence with Judge James L. Cott durring the month of Dec 2019 with defense counsel at the time Samantha Pallini in the matter of Williams vCity Of New York Et Al., 19-CV-3347, See EXHIBIT-C for copies of the  minutes on that matter pages 16 - 17.

"The Court recognizes that it 'must' extend extra consideration to pro-se plaintiffs' and that " Pro-Se parties are to be given special latitude on Summary Judgement Motion " SALAHUDDIN V. COUGHLIN, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)(Peck, M.J.) (citations & internal quotation omitted); See e.g. McPHERSON V. COOMBE, 174 F.3d 276, 280 (2d Cir. 1999) (a pro-se party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest").

## SUMMARY JUDGEMENT STANDARDS

1.      The Court has established that in considering a Motion for Summary Judgement, the Court is not to "RESOVLE" contested issues of fact, but

rather is to determine wheter there exist any disputed isues of material fact. See e.g. DONAHUE  V. WINDSOR LOCKS BD. OF FIRE COMM'RS, 834 F. 2d 54, 58 (2d Cir. 1987); KNIGHT V. U.S. FIRE INS. CO., 804 F. 2d 9. 11 (2d Cir. 1986).

2.      The burden of showing that no genuine factual dispute exists rest on the party seeking Summary Judgement. See e.g. ADICKES V. S.H. KRESS & CO,  398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed 2d 142 (1970); CHAMBER V. TRM COPY Ctrs·CORP, 43 F.3d 29, 36 (2d Cir. 1994).

3.      In this matter the plaintiff is the movant and submitted his initial motion seeking Summary Judgementas seen in EXHIBIT-A herein.

4.      To defeat a Summary Judgement Motion the non-moving party, who is defense counsel Mr. Aaron Davison in this matter, must do "more then simply  show that there is some metaphysical doubt as to the material facts" See MATSUSHITA ELEC. INDUS CO V. ZENITH RADIO CORP, 475 U.S. at 587, 106, S. Ct. 1348, 1356, 89 L. Ed 2d 538 (1986).

5.      Instead in this case the non-moving party, who is Mr Aaron Davison, must "set out  specific facts showing a genuine issue for trail", FED. R. CIV. P(E)  accord e.g., MATSUSHITA  ELEC INDUS CO V. ZENITH RADIO CORP, 475, U.S. at 587, 106 S.Ct. at 1356; WEINSTOCK  V. COLUMBIA UNIV,  224 F.3d 33 41 (2d Cir. 2000) ( at summary judgement," [T]he time has come 'to put up or shut'")(citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003)

6.      In this matter it seems as if defense counsel has or is taking the position that (1)  that defendnat K. Alexander did violate the plaintiff rights by reading his  mail but said violation doesnt arise to monetary vuale or (2) defendant(s) violation of the plaintiff rights were tied to

some beliveth that some one was in danger of the plaintiff comunnicating with the out-sdie world freelywithout defense ever explainin what that concern may have been so that the Court could determine if or if not there lied a Legitimate Penological Intrets in their actions.

7.      EXHIBIT-B is the list of exhibits from the plaintiff's summary judgement motion whihc the plaintiff will use to display and referer the Courts to documents herein this response.

## MAIL FIRST AMENDMNET VIOLATIONS
## IN 19-CV-3347

8.      There can be no dispute in regards to wheter or not the defendant K. Alexander unlawfully read the plaintiff's out-going mail when exhibit-E of the summary judgement  supports that defendant K. Alexander was rading plaintiff's mail, because of plaintiff's housing status, because it was not plaintiff's Court order that granted such inrusion permitting so, See Exhibit - B of the summary judgement for plaintiff Court order for review. It was not the Correspondece polciy of NYC DOcs that granted permsisson because within the polciy on this matter it clearly states that in order for an detainees mail to be read out0-going that their must exist a (1) mail watch instituted by the warden of the facility, (2) a lawful warrant and/or (3) a Courts order, See EXHIBIT-D herein for the polciy fro NYC Docs in regards to this matter which was submitted to the plaintiff in discovery from defense as well as EXHIBIT-E herein

9.      The defense never alluded to any statue,warrant, lawful order, and/or polciy that stated and supported that plaintiff's mail should have been being read by defendant K. Alexander before allowing to go out of the facility.

10.     You can not take the defense that defendant K. Alexander was able to read the plaintiff's out-going mail and legal mail because of the

the plaintiff criminal charge because then that would alluded to all correctiona
officers being able to read any/all out-goping mail of all detainees currently
charged with a charge simular and the same of that of the plaintiff's charge.

11.      Furthermore the New York City Board of Correction ( WHO THE DEFENDANT
CITY OF NEW YORK RUNS) director for polcies and Communication issued a
letter on Oct 26,2020 that quilled.this matter completely and stated that
the Command level Order governing the hosuing unit were the plaintif was
housed at the MDC facility violated the plaintiff's right and NYC BOC minimum
standards and did act as a blanket restriction being imposed upon the **plaintiff'**
that were not restrictions listed within his specific Court Order. This
left no room for dispute  in this matter. See exhibit - B of  of summary
judgement motion for plaintiff's Court Order, and exhibit - A for the CLO
that governed the housing unit where the plaintiff was housed while being
held at the Manhattan Detention Complex, and exhibit - Q for letter from BOC.

12.      So the matter of legallity need not be disputed but the injury
that said violations ·from defendant(s) K.alexander action can be the only
dispute but oone that is not great enough to aviod summary judgement in favor
of the plaintiff.

13.      The plaintiff was housed on unit 9 north at the manhatten detention co
due to an Court  order signed by the honorable Judgem Vincent Del-gudice
on Jan 2, 2019. The plaintiff was detained on unit 9 north from Jan 18, 2019
through April 2019 when defendant K. Alexander was removed from the Custody
Recall Post.

14.      In his response to defendant(s) answer to his amended complaint
of 19-CV-3347 the plaintiff submitted documents [being copies of the facility
mailroom log book]showing and supporting that from Jan 18 - April 2019 the

sent out some 85 diffrent pieces of mail 64 of whihc were privilage and legal in nature going to (1) his wife Crystal Wuillaims (2) his attorney's (3) his private investigators in his criminal case discussing exculpatory evidence, (4) doctor in his criminal case discussing exculpatory evidence and defsne strategies and (5) numerous financila institutions, and (6) legal department of New York City Dep't of Correction foil officer Laura S. Mello.

15.     Again defendant(s) failed to establsih any Legitmate Penoligical Intrest in reading the plaintiff mail and needing to know what he was talking about riting these people's and places mentioned above in ¶ 14 of this response herein. Establihsing this need of a "LEGITIMATE PENOLIGICAL INTREST " is a need by defense to defeats the plaintiff motion for Summary Judgement in that matter.This was established by the Courts when it stated that " the non-moving party must do 'more then simply shopw that there is  some Metaphysica doubut as to the material facts'" MATSUSHITA   ELEC INDUS CO  V. ZENITH RADIO CORP., 475 U.S. 574, 586, 106, S.Ct. 1348 1356, 89 L. Ed. 2d 538 (1986).

16.     Even in a case used by defense counsel Aaron Davison out of this very Southern District of New York ACEVEDO V. FISCHER,2015 U.S. Dist LEXIS 162027,  defendants' Summary Judgement motion in regards to First Amendment violations were denied.

CONSTITUTIONAL PROTECTION OF INMATES MAIL:

17.     "[C]onvicted prisoners do not forfeit all Constitutional Protection by reason of their conviction and confinement in prison", the plaintiff is a pre-trail detainee which would mean that he should have higher protection in his rights because he is not convcited as of yet.

18.     The Second Circut has recognized that a priosner's right to the "free flow of incoming and outgoing mail" is guaranteed by the First

Amendment. JOHNSON V. GOORD, 445 F. 3d at 534 (quoting DAVIS V. GOORD, 320 F. 3d 346, 351, (2d Cir 2003)).

19.      An inmates "OUT-GOING" mail is afforded greater First Amendment Protection then incoming mail, and restrictions are justified only if they further "one or more of the substaintial government intrestof securtity" order and rehilbilitation.

20.      The City Of New York and its employees, agents and servants do not reserve the right to determine when the plaintiff can send out out going mail, who he can sedn out going mail to and what he is saying to those he is sedning out going mail to especially when that mail is legal in nature and obtaining exculkaptory evidence and defesne startegies in a criminal matter in which the People of the State Of New York is prosecuting him in.

21.      In ACEVEDO V. FISCHER, 2015 U.S. Dist LEXIS 162027, the defendnats in that case had instututed a Mail wwatch on the plaintiff  and the Court still denied their summary judgement in the matter.

22.      In this case the defndant(s) never instituted a mail watch onm the phaintiff and there response when the plaintiff greived the mattre was admitting reading the mail in reagurds to the plaintiffs case and the housing unit that he was held in as if some sort of legal polciy or blanket Supreme Court order exist allowing such .See Legal justifcation section of Command Level Order 104/19, which is exhibit -A of the plaintiff summary judgement motion.

23.      There is no issue for trail in the regards to wheter or not defendant K. Alexander read the plaintiff out-going mail without a lawful warrant, Court Order and/or NYC Docs polciy supporting his actions.

24.      There is no geuine issue on wheter the defendnat K. Alexander did read the plaintiff out-going mail and 64 pieces of it because he signed mailroom logbook.

25.     The only dispute involving First Amendments violation in 19-CV-3347 is wheter defendnat K. Alexander was order by defendnat E.Rivera and B.Mathis to read plaintiff out-going mail.  The plaintiff supported documents which were grievnaces  stating that he informed both defendnat Rivera and Mathis of what was going on in the response neither denied thsi taken place. Leaving the only dispute being wheter defendnat(s) Rivera and Mathis liable in the Mail first amednment violation of case 19-CV-3347, but no dispute in regards to defendnat K. Alexander at all.

### LAW LIBRARY FIRST AMENDMENTS VIOLATIONS
### OF CASE 19-CV-3347

26.     Exhibit- G of the plaintiff Summary Judgement Motion herein as EXHIBIT-A  is a greivance and the response that the plaintif was sent in regards to denial of full access to the facility Law Libarary.

27.     In that grievcance the plaintiff made it clear that he was a pretrail detainne preparing for trailand wanted to seek full access where he could do his own research and peeparation in legal matters.

28.     The response that the plaintiff was given was "Mr. WILLIAMS HOSUING AREA (9NORTH)IS A COURT ORDERED LOCKDOWN HOUSING AREA IN WHICH LAWLIBARARY SERVICES ARE AFFORDED IN THE HOUSING AREA. THEREFORE MR. WILLIAMS IS NOT ALLOWEDS ACCESS TO THE (KIOSK) WHICH IS PHYSICALLY IN THE LAW LIBARARY AS PER NORTH TOWER LAW LIBARARY 9 NORTH SERVICED (5) DAYS A WEEK AND THEIR PROTOCOL IS FOR 9 NORTH INMATES TO SIGN THE SHEET FOR WHAT THEY WILL LIKE TO BE RESEARCHED AND THE LAW LIBARARY COORDINATOR WILL RESEARCH IT AND THE LAW LIBRARYY COORDINATOR WILL PROVIDE THE PAPER WORK TO THE".

29.     THIS fashion is and the response in total disreagrd to the fact that in order to reserach something for any person one must include specifics of the alleged incident in order for one to proeprly research .

29.        This denial of the facility law library addresses two violation
of the First Amendment and Fourteenth Amendment:

30.        The plaintiff Court Order does not restrict himform the facility
law libarary at all. The plaintiff Court Order does not list any restrictions
for Law Libarary at all. Again See exhibit - B of the plaintiff Summary
Judgement motion.

31.        Furthermore it is construed that the plaintiff was denied this
full access because of the hsouing unit he was housed in and the Command
Level Order that Governed the housing unit, which was CLO 104/19 and can
be seen in exhibit-A of the  plaintiff's Summary Judgement for review.

32.        This command level order state that the plaintiff will not be
allowed to the facility law libarary but does not state reason why. This
document is teh POLICY that was used in deying the plaintiff access and
is determined to had been a "CUSTOM" polciy one that was illegally instituted

33.        Exhibit- Q of the plaintiff's Summary Judgement Motion seen herein
as EXHIBIT-A addresses this denial whereas the NYC Board of Corrections
steeped in some year and foru month later after the plaintiff grievnace
on the matter which was 04/04/2019. The Board of Corrections Director Mr
Bennet Stein interviewed the plaintiff directly in reghards to this mnatter
and also spoke with the ADA on the plaintiff's criminal case who instituted
the Court order Mr Ernest Chin.

34.        In his letter addressed to the plaintiff dated Oct 26, 2020 seen
in exhibit-Q of the plaintiff summary judgement motion Mr. Stein explains
that the plaintiff Court Order does not restrict him from the law libarary
and included an email between himslef and ADA Ernest Chin where Mr Chin
made it clear that the Court Order wasnot intended to restrict the plaintiff
from the facility law libarary.

35.     This was a factor that NYC Docs officials such as Securty Deputy Warden defendnat Elyn Rivera and Secuity captin Benard Mathis who were the MDC Officials over this are of 9 north which was the housing unit hat the plaintiff was in.. There was never any doucments, rules, directives restrictions on the plaintiff fromthe law libarary except the unlawful blankte Policy of CLO 104/19 in which Mr Stein formally addressed in his letter dated Oxt 26, 2020, but if you  look in the footnote under Nop. 2 on page 2 Mr Stein claerly states that BOC staff met with jail leadership to develope a solution in that jail leadership faailed to provide legal research capailities as a result of said meeting.

36.     This supports further that the matter of first amendment violation of denial to the facility law libarary was a matter in which MDC NYC Docs staff .. was aware of but did nothiingg on. correcting the issue.

37.     In weighing the rights of a pretrail detainee against the intrest of the priosn "there must be mutual accomendation between the institutional needs and objective and the provision pf the [C]onstitution that are of the general applciation"WOLFF  V. McDONNELL 418, U.S. 539, 556. 41 L. Ed. 2d 935, 94 S.Ct. 2963(1974).

38.     The second pronge of the violation of denial of the law libarary is the fourteenth amednment violation it present. The plaintiff was restricted from the facility and/or NYC DOcs law libarary services without being afforded a hearing' and opportunity to present evdience  in support of why he should be allowed to facility law libarary . This matter and denial oif the Due Process clause of the foruthteenth amendment. See WOLFF  V.McDONNELL  418, U.S. 539, 41 L.Ed. 2d 935, 94 S. Ct. 2963 (1974).

39.     NYC BAORD OF CORRECTIONminim standards on access to the Law Libarary and legal supplies states in Section § 1-08 (g)(2) " PRIOSNER SHALL HAVE

REASONABLE ACCESS TO TYPE WRITER, DEDICATED "WORD PROCESSOR" AND PHOTOCOPIES FOR THE PURPOSE OF PREPARING LEGAL DOCUMENTS".

40.    This polciy and clo 104/19 are in direct conflcit of one anther and both and/or neither were explained to the plaintiff when he was submitted to hsouing unit 9 north as which one held more merit over the othere.Agian the defendant(s) failed to state any legitmate penological interst in denying the plaintiff frombeing able to conduct his own legal resrech wheter in the matter of his criminal case or civil cases

41.    If there was any misunderstanding in regards to this matter, NYC Docs officials had the opportunityto correct and/or seek clarification from BOC in Apruil of 2019 when NYC Baord Of Correction staff first met with MDc Leadership which had to involve and include defendnat Elyn Rivera because she was the deputy Warden of the entire facility and defendnat B. Mathis who was the securityu captin directly over 9 north where the plaintiff was housed at.[leaving liability for both defenbndats in regards to first amednemnt violation on Law Libarary denail] .

42.    In this letter seen in exhibit-Q of the plaintiff summary judgement even after NYC DOCS officials to the highest level Cheif Hazel Jennings was notified of this wrongful denial the plaintiff was moved to another DOCs jail G.R.V.C. and housed in a new housing  area with the same exact CLO as 104/19 just under a diffrent number which can been seen ad compared herein as EXHIBIT- F. [COMMAND LEVEL ORDER 370.20].

43.    Though not the factor of this matter the creation of CLO 370.20 on Nov 2 2020 the same day that theplaintiff was was transfered to G.R.V.C. shows the total disreagrds that NYC DOs and the defendnat(s) CITY OF New York  disregards for the paintiff right ssurrounding this matter .

11

44.      Who better to clarify any misundersatandings in this matter then
the Director  of polciy and cummincation of the New York Baord of Corrections,
but I guess that even Mr.Stein was not enough for the plaintiff's rights
to be upheld and respcted in this reagrds

45.      All of the exhibits and legal arguement mentioned herein this ection
supports that the plaintiff summary judgement should be grant in regards
to this first amendment and foruthtennth amendment violation as well because
their exist no geuine dispute on wheter the defendat(s) were wrong in regards
to denying the plaintiff from full access to the facility law libarary.

46.      This viods the defense in this matters and support the plaintiff
in summary judgement.

<u>CONCLUSION IN THE MATTER OF</u>
<u>ARGUEMENT FOR CASE DOCKET 19-CV-3347</u>

47.      In their motion for summary judgement the defense states and admits
on  page three ¶ 2 that the defendant K. Alexander did intend and fact read
the plaintiff's out-going mail from Jan - throughout March of 2019. In the
foot notes of page three the defense state that defendnat K. Alexander colected
and logged other inmates mail 97 in total which supports the plaintiff's
arguement that a Custom Polciy did exist from the defense own words as all
the other iinmates mail was being read also by K. Alexander.

48.      On page fifthteen of thier summary judgment motion in ¶ 1, the
defernse make a arguemnt that Defendnat K. Alexander was justified in reading
the plaintiff mail. In ¶ 2 of page fifthteen the defense makes an arguement
that because the plaintiff was ICR froman incident some 7 years prior to
2019 that the defendnat K. Alexander was justified in some way in reading
the plaintiff's mail.

49.     Exhibit-= C of the defnse summary judgement doesnt list a mail restriction on the plaintiff's Court order, Supporting the plaintiff case that the Criminal judge and ada on the plintiff did not intend for the plaintiff mail to be read going out. defendnat K, Alexander is not actively part of any criminal investigation into the proseciution cae nor did the defense state any Legitmate belif that the plaintiff was involved in a particular criminal act.

50.     In exhibit-H of there summary judgement motion the defense use a section of the Correspondeacne directive in efforts to curtail the court from reviewing the entire polciy governing this matter. In exhibit -D of his summary juidgement motion the plaintiff listed the entire "INMATE CRESPONDEN CE " Polciy for the court toreview.  On the first page of this polciy in the fourth paragraph  listed C., it states that "INMATE CORRESPONDENCES SHOULD BE HANDLED IN ACCORDANCE WITH THE GUIDELINES AND PROCEDURESSPECIFIED IN THIS DIRECTIVE",clearly meaning that all inamtes even IRC inmates mial should be handled using this Directive as a guidleine in such.

51.     On Page two ¶'s 3 and 4 IN LAYS OUT THE FACT THAT ALL INMATES MAY CORR WITH  any operson except when thetre is a reasonable belief that limitation is necessary to pwbtect the public's saftye. The defense failed in stating what reasonable belief that someone safty was attached to the need to read the plaintiff's out going mail.

52.     The 4th ¶ on page two starts off stating " THERE SHALL BE NO CENSORSHI OF ANY MAIL EITHER TO OR FROM INMATES, UNLESS AUTHORIZED BY THE WARDEN AS NOTED IN SECTION 1V." The defense failed here to show that the plaintiff had had a Mail watch authroized by the warden of the facility in this matter. The stated in  DAVIS,  320 F.3d at 351 (quoting WASHINGTON,  782 F.2d at 1139), THAT THERE MUST BE GREATER PROTECTION ON lEGAL mAIL THEN NON-LEGAL MAIL  AS WELL AS GREATER PORTECTION ON OUT-GOING MAIL THAT THERE IS ON INCOMING.

53.     On page three ¶' 4 - 8 OF THE  directive on inmate correspondence, it lays out the guidlee neded to be in place before reading any of an inmates mail .  . It states that the Warden written order shall state the specific fact and reason supopporting the determination to reading out-going mail ¶ 5. In  ¶ 4 listed as being no 2. it states " ACOPY OF THE WARDENS WRITTEN ORDER TO READ OUT-GOING MAIL; MUST PROMPTLY BE PROVIDED TO THE CHEIF OF FACILITY OPPEREATION AND PLACED ON FILE IN THE FACILITY SECURITY OFFICE".

54.     This is a neccesity that never took place in the plaintiff case in the defense within there summary judgement motion basically asks the court to view the defendnat K. Alexander as a correctional officer, a Judge, a investigator, a warden  and a NYC Doc Cheif of operation all in one in order to somehow disregard all polciy, directors, procedure and legal statue just to aviod civil litigation in the action of K. Alexander.

55.     The most  importasnt thing in the violation alleged by Defendnat K. Alexander is  that the defense asks the court to disregards the most sacried right that any one citize has whihc is the right to DUE PROCESS of the Fourthteenth Amendment which is alos stated within the correspondece directive on page 3 paragraph number as 4., which states the following: " THE AFFECTED INMATES SHALL BE GIVEN WRITTEN NOTIFICATION OF THE DETERMINATION AND SPECIFIC FACTS AND REASONS SUPPORTING IT BY SIGNING SECTION 2 OF FORM #4001A.

56.     THE FORM IN QUESTION CAN BE SEEN IN THE BACK OF THE DIRECTIVE A FORM THAT WAS NEVER GIVEN TO THE PLAINTIFF BECAUSE THERE WAS NEVER ANY WARDEN DETERMINATION SUPPORTING THE ACTS OF DEFENDNAT K. ALEXANDER.

57.     Another legal avoidance by the defense in their summary judgement exhibit listed as Exhibit- H is the fact that they purposely left out the Directive listed Correspondances

58.      The title of the Exhibit listed as defense H statees that it governs t

"RECIEVING AND SENDING OF INMATES PACKAGES",  not the mail. the material

in this case is not that of a package but that of legal maiul whihc is governed

by  the Inmate Correspondence directive as seen in exhibit- D of the plaintiff's

summary judgement motion. there is no way that the defense could have over

look this factor and it also will go in supporting the plaintiff "RETALIATION

" claims which he wwill address latter in regards to case 19-CV-8737 and

20-CV3992, whhere the plaintiff will show the pattern of NYC and NYC Docs

defendnats when punishing the plaintiff and using legal tatics to further

their agenda  in relation to escaping cicvillitagation.

59.      Page 9 of the correspondece directive seen as exhibit-D of the plainti

Summary Judgement motion herein as EXHIBIT-A   ¶ 2 number as 8. states the

following: " ALL POLCIES, GUIDELINE, PROCEDURES, RESTRICTIONS AND CHANGES

ISSUED BY THE DEPARTMENT CONCERNING THE INSPOECTION OF MAIL BY INMATES IN

GENERAL POPULATION, SHALL ALSO APPLY TO MAIL RECIVED BY INMATES IN PUNITIVE,

SEGREGATION, CLOSED CUSTODY AND ANY OTHER SPECIAL STATUS".

60.      theplaintiff court order status fits into and/or under that "SEECIAL

STATUS, or CLOSE CUSTODY status,but the directive/plociy on this matter leave

no room for the legal argumenbt in which defens counsel brings forth in that

any inspection involving inamtes mail, "the Plaintiff's  Mail" need to had

been done so within or following these guidleine of this polciy to be deem

sufficient and legal.

61.      In exhibit- J of there summary judgement motion the defense attempts

to allude to a  Operation Order as a legal justification for reading theplaintif

out going mail, but this operation orders does not list state or highlight

"MAIL" as one of the proteties as an inmates. Nor does defense list any state

law supporting there arguemnt in that aspecteither.

1 5

62.     Lastly in exhibit- M of their summary judgement motion defense
list the mailroom log book which will also play a role in tampering claims
later herein this reply, as being and showing all pieces of mail of the plaintif
that was processed by defendnat K. Alexander.

63.     In this exhibit  it shows that defendnat K. Alexander lsuited the
mail, the plaintiff name and even who the mail was addressd to such as NYC
DOC,Record access officer, Laura Mello, foil officer, David barret, Civil
complaint review baord, clerk of the court, NYPD Sgt , NYPD Foil unit, NYS
Divsion of CJS, John Salvatore esq, Coorectional health servoces, experian,
transunin. exquifax, U.S. district court and more that the defendnat K. Alexande
read of the plaintiff's mail.

64.     The plaintiff never stated that he only observed defendnat K. Alexande
reading his mail once, the plaintiff simply answered defense counsel question
in reagrds to "one" of the occassion where defendant Alexaander questioned Plaintif
in regards to something
that he was stating to his wife in a letter.

65.     A Correctional officer task with the respoonsibility of watching
over a detainee awaiting trail in a criminal matter can not act and conduct
themselve in a fashion as that ofd an investigator in regards to that criminal
matter, unless he/she is deputized to do so by Law enforcement , a judge or
district Attorny and that was not the case in this matter.

66.     As in pursuant to Fed R. 56.1(e) the plaintiff request that the
Court grant summary judgement in favor of First Amendmemnt and Due Process
violation in regards to denail' of law Libarary services whereas the defense
failed to properly support and address a fact  in regards to why the plaintiff
was restricted from this service,

67.     Rather the defense attempted to simply state that the plaintiff
was not injured by such denial which is not enough to defeat Summary Judgement
in this case.

MAIL TAMPERING AND INTERFERENCE FIRST
AMEDNMENT VIOLATION IN REGARDS TO CASE 19-CV-8737

68.     IN  the case docket of  19-CV-8737 the plaintiff exoplins how
CO Martinez and Mailromm civil T. Green ineterferred with his mail, but
in there summary judgement motion defense failed to list andy legal arugemnets
in support of thios matter .

69.     The plaintiff reminds the Court that it was the defense and not
himself who made application to the court to combind each of the complaint
because they belived that they were all realted in nature. This means that
the defebnse bears that same burden when times comes to produce legal arguement
and case law in support of there position oin every matter and factor mentioned
within each complaint.

70.     So for this matter the plaintiff request summary jeudgement in
19-CV-8737 in regards to firts amendment violation and due process violations
in reffrrence to his mail being tampered with by Defendnat CO Martinez
and Civilian T. Green on the basis. that the defense failed to properly
address this violation and/or produce legal arguemnt and case law directly
in pursuant to their defendse on that particular matter.

71.     Federal Rule 56(a) statue states that summary judgement should
be granted in the favor of the movant if (1) a party fails to support an
assertion of fact or (2) fail to properly address another party's assertion
of fact as requesied by Rule 56(c), the court may grant summary judgement.

72.     neverthe less the plaintiff will highlight to the Court that
in his summary Judgement and through 19-CV-8737 he presented evidence in
support of his allegation in the conduct of CO Martinez and Civilain T.
Green.

73.     In EXHIBIT-A herein which is the plaintiff';s summary judgement
motion submitted to the Courts, in exhibit-F of that summary judgement
the plaintiff supported as evidence in support of his cliam a foil request
return in regards to copies of the housing unit log book on July 2, 2019,
where defendnat CO martinez documnetd by her own hand writing and logbook
entry that "CO MARTINEZ 1769 ON POST THIS WRITER HAS "GIVEN BACK" INMATE
ALEXANDER WILLIAMS 1411801632 (5) PIRECES OF CERTIFED MAIL ADDRESSED TO
MOS, AS PER SAID INMATE REQUEST LETTER ADDRESSED TO MICHAEL COLEHON 44
COURT STREET, SUITE 906 BRROKLYN NY 11201 HAS BEEN SENT OUT".

74.     Throughout this proceedings as well as within their own summary
judgement motion the defense never lay any defense in support of this clima
and violation by defendnat CO Martinez. The defense failed to address this
claim made by the plaintiff as well as to produce any legal arguement and case l
law in support of their positin in this matter or produce any restricions,
courtorder, warrant, polciy that supports the action of the defendnat CO
Martinez.

75.     The Court stated in regards to this matter that " INTERFERENCE
WITH LEGAL MAIL IMPLICATES A PRIOSN INMATES RIGHTS TO ACCESS TO THE COURT
S AND FREE SPEECH AS GUARANTEED BY THE FIRST AMENDMENT AND FOURTEENTH AMENDMENT
TO THE U.S. CONSTITUTION".  SEE DAVIS V. GOORD,  320 F.3d 346, 351 (2d
Cir. 2003.

76.     The plaintiff easily passes the burden of showing that this tamepring
and violation of First Amendment rights was not a single isolated incident
by way of case 19-CV-337 which was file before 19-CV-8737 allegding defendnat
K. Alexander tampering with 64 pieces of legal mail out-going of the plaintiff's
as well as 20-CV-3992 where as being filed after the matter wth CO Martinez
where the plaintiff shows that his mail was continuancly trampered with.

77.     This factor also supports that the p-laintiff was being intimdated and theratned as a witness in regards to civil litatigation which is part of the retaliation cliams. The defendnat(s) actions without cause from the plaintiff held an affect that defendant(s) nor the defense counsel has taken into consideration rather then just searchibng for legal loop holes to jump through when looking to defeat the plaintiff allegations.

78.     The plaintiff explained in his complaint listed as 19-CV-8737 that mailrrom civilain defendnat T. green gave notice that his out-going mail legal in nature was not going to be leaving the facility because it was a lawsuit(described the nature of the suit) because security had it in there office.

79.     The plaintiff explains that was how he initiated his grievances and co into the matter which lead to defendnat CO Martinez retruniong mail on July 2 2019, which shows that if not he complaining that there was not intention to notify himin regards to the interferrence and seizure of his mail which had been done there since approxamatley June 22, 2019.

80.     So defendnat T. Green acted as notification in the siezure of the mail belongging top the plaintiff wheras MDC Officials never gave notice . There can be no Legitmnate Penological interst in the mail itself because it was all legal isonal in which CO Martinez documented as being M(1) piece addressed to Corporation counsel as plaintiff submitted exhibits as photos of the envelopes and the last and 5th pieces addressed to an attorney Michael coloehn as she documented.

81.     The courts established that the First Amendment protects an inmates "right to the free flow of incoming and outgoing mail", See DOLBERRY V. LEVINE, 567 F. Supp. 2d 413, 419 (W.D.N.Y. 2008)

82.     There is no legitimate reason and/or defense that the defense

counsel can offer the court in regards for why after being served in docket
19-CV-3347 months later the plaintiff legal mailin being witheld by defendnat
Martinez and civilan T. Green in case docket 19-CV-8737. That if why defense
counsel failed to address such violaton – because there is no legal address
that can be made in the matter.

83.     The fact that defendnat T. Green was able to inform the plaintiff
of what the nature of the mail that was being withehedl was in regards
to only supports the fact that defendnat T. Gren played some role in the
violation. This supports the plaintiff criteria of reaching the burden
of displaying that defendnat T. Green did play some role in violation which
is all that is needed when the defense fails to proeprly address and/or
present legal argeuemnt in support of their opposition against plaintiff
in regards to defendnat T. Green.

84.     The plaintiff is hereby willing to accept dismissal in the regards
to Defendnat's CO Ramirez in 19-cv-3347 and defendant(s) Grievance oficer
Padilloa in 19-cv 8737.

### MAIL TAMPERING AND INTERFERENCE FIRST AMEDNMENT AND DUE PROCESS VIOLATIONS IN BOTH 19-CV-8737 & 20-CV-3992

85.     In this case of 20-cv-3992 the plaintiff first amednement violation
where in regards to (1)CO Sandra Espinoza, (2) ADW Harvey, (3) Captin Goritz,
(4) CO WELLS, directly and all other defendts indirectly.

86.     In exhibit-N of the plaintiff summary judgement motion herein
as EXHIBIT-A in response to his handling of his mail grievance the plaintiff
was told that MDC order#104/19 dtermine who and how his mail would be
handled.

87.     The plaintiff's brings the Court attention back to exhibit-Q
of that same summary judgement which is the letter from the Director of
polciy and communication Mr Beennet Stein of the NYC Board of Corrections,who
stated thet that CLO 014/19 governing the plaintiff housing unit added
restrictions against the plaintiff that was not listed within his court
order and was wrongfully instituted as a blanket polciy. This language
amount to what is called a Custom Polciy in totality.

88.     This statement and all of the exhibits provided in the defense
summary judgement motion primariliy exhibit-M which is the plaintiff's
EXHIBIT-G herein shows that  correctional staff who dealth with the plaintiff's
mail while housed in MDC 9north unit.

89.     In  seperate matter that involved the mail tatics of MDC solely
in regards to defendnat CO Sandra Espinoza when another court order inmate
named Randy Swionson submitted an Article 78 in New York Coo how his mail
was being opned and sent to him in brown paper bags in stead of in his
face/presence Defendnat Sandra Espinoza entered a statement as an affidavit
seen eherin as EXHIBIT-H.

90.     In this statement Defendnat Sandra Espinoza states that she is
currently assigned to mailroom at MDC and that she herself performs the
mail for this inmate (RANDY SWINSON WHO IS COURT ORDERED) in a perfessional
manner.

91.     This Exhibit is entered to show that the crediability and reliability
of this defendnat Sandra Espinoza is no good and that she also perjured
hersleve in this manner because the defendnat(s) own exhibits _m as seen
as EXHIBIT-G herein shows that defndnat Sandra espoinoza has never signed
for any mail in argerds to any inmate on 9 north and ever polciy that governs
9 north listed a correctional officer as mail and phone officer beside
Sandra Espinoza.

92.     EXHIBIT-H is used to show that all in all defendnat Sandra Espinoza is the person that control all aspects of the facility mailroom in regards to all mail as she stated in her own affidavit in Index No 100465/2020 that she filed iwth the Clerk of the Court in New York County on 12/14/2020.

93.     There is no tampering with the plaintiff's mail, no with-holding of the plaintiff's mail no opening of the plaintiff's mail if defendnat Sandra ea professional manner in which she stated within her affidavit seen in EXHIBIT-H herein.

94.     In all instnce and throughout each case 19-cv-3347, 19-cv-8737 and 20-cv-3992 there is no way that the plaintiff mailcould have reached the hands of some of the other defendnats without the role of defendnat Sandra Espinoza in her own words as seen iun EXHIBIT-H.

95.     Furthermore the defense has failed to address and proeply present legal arguement in pursuant to defendnat(s) Sandra espinoza, ADW Harvey, CO WELLS, Deputy warden Bailey deputy warden Galloway and warden BIBi Saurez within thier summary judgement which favors that the Court should grant summary Judgement in plaintiff's favor in pursuant to Fed Rule 56`(e).

96.     In no instance in regards to the alleged violation mentioned with 20-cv-3992 was the plaintiff affoprded . Due Progesq by way of being afforded the notification as to why the issue with his mail existed and a hearing to present evidence in why his position was legal and righful.

97.     When the plaintiff utilized social service services to access his own funds to send legal mail out certfied where it could be tracked and traced the Defndnat(s) instituted a blocking systeme and then gave the plaintiff no way of sending his mail in a traceable fashion.

98.        This ultamtely was the cause behind the USE of FORCE involving
defendn COritz which will be addressed later on.

99.        The defense gave no legal argument in why the plaintiff was denied
using his own funds to send mail out of the jail in a tarckable fashion
and whenever the plaintiff grieved the matter the resoponse was always
blanketing by that of "CLO 104/19". Which has alrady been determine to
had been wrongfully instituted against the plaintiff by Defendnat CITY
OF NEWYORK very own New York City Baord or Corrections directo Mr Bennet
Stein.. See exhibit-N of plaintiff summary judgement in regards to the
response he was given when attempted to access his funds for certified
mail sending.

100.       In GILL V. PIDYPCHAK,  389 F.3d 379, 380-81 (2d Cir. 2004), the
Established that the Correction officials may not take action that would
have a chilling affect upon inmates exercise of FIRST AMENDMENT rights.
See id. at 381-83.  Because of the relative ease with which claims of retalaitio
can be incanted, however, Courts have scrutinized such retaliation claims
with particular care.

101.       But in this case 20-cv-3992 the defense never leads legal arguement
in support of the sudden change in how the plaintiff was able to access
his own funds to send legal mail out of the facility after so many diffrent
grievnacces / complaints and civil suit filed with supporting documentation
in regards to MDC officials and some of the defendnatnamed herein playing
a role in preeventing the plaintiff legalmail from leaving the facility.

102.       The second Circut defines "ADVERSE ACTION' OBJECTIVELY, AS RETALITORY
CONDUCT 'THAT WOULD DETER A SIMILARLY SITUATED INDIVIDUAL OF ORDINARY FROMNESS
FROM EXERCISING... CONSTITUTIONAL RIGHTS." GILL, 389 F.3d at 381 (quoting
DAVIS, 320 F.3D at 353, superceded by 2003 U.S. App LEXIS 13030, 2003 WL
3600563 (2d Cir FEB 10, 2003). that adverse action in this case was the

23

sudden chagne in MDC Polciy  instituted by defendnat Elyn Rivera once the courts got involved in attempting to prohibit the plaintiff's contact and/or ability to track mail sending to the court to ensure that it actuall was sent out of the facility.

103.     To prevail on a retalion claim under 42 U.S.C § 1983, a plaintiff must prove by the perponderance of evidnece that : (1) the speech or conduct at issue was "protected",(which accessing the court has always been a proetected right for a prisoner), (2)  THE DEFENDNAT(S) TOOK "ADVERSE ACTION" AGAINST THE PLAINTIFF; (WHICH WAS THE SUDEN CHANGE INPOLICY THAT LEAD TO DENIAL OF SOCIAL SERVICES THAT WAS USED TO ACCESS HIS FUNDS TO SEND LEGAL MAIL OUT CERTIFED RETURN RECIRT); AND (3) THERE was a causal connectrion between the protected speech and the adverse action--in other words, that the proetected conduct was a "substatial or motivating factor" in the defendant(s) decison to take actionagainst the plaintiff,See MOUNT HEALTHY CITY SCH. DIST. Bd OF Educ. V. DOYLE 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); GILL, 389 F.3d at 380 (citingDAWES, 239 F.3d at 492).

104.     In showing futher support of the defendnat City Of New York as wll as the other defendnat(s) motive and punishment supporting rataliation against the plaintiff.

<u>RETALIATION CLAIMS SUPPORT:</u>

105.     The plaintiff commenced his first claim 19-cv-3347 in  april or so of 2019. This claim was in regards to mail and law libarary claims.

106.     In Aporil of 2019 the plaintiff had a issue with a CO Fasta in which he commecned a state claims in regards to. When commecing this state cliam pro-se the plaintiff  was order by a state judge to serve notice

upon the defenendat(s) himself unlike federal court. Once the pplaintiff statred this litigation all of the retalaitory conduct commenced whereas as , as seen in 19-cv-8737 where defendnat Martinez documented that she witheld plaintiff's mail because it was addressed to MOS (meaning memebr of service) for department of Corrections sttaff.

106.    A copy of this order from the clerk of the court could be seen therein as EXHIBIT-I.

107.    In their summary juegdment motion the defense never addressed this matter nor throughout these proceeding has they ever laid any defense as to why CO Martinez blantly withheld plaintiff legal mail containg Summons and Complaint because it was addressed to MOS.

108.    Defendnat CO Martinez own words and hand written supports that retalia against the plaintiff where she stated exactly what plaintiff complaint states in totality.  Which was that the plaintiff mail was hedl because it was addressed to MOS.

109.    The defense counsel never alludes to any law,statue, NYC Department of Correction polcies, directive even a facility memorandum that states and support that an inmate detainee within a specific facility can not send a Notice of Summons and Compliant to a Correctional Officer that works at the same facility.

110.    Minus this position minus this polciy, this statue this diurective the defense can not opresent any logical purpose in Defendant(s) CO Martinez holding the plaintiff mail.

111.    The plaintiff recently discovered a seperate matter in whihc could show and support retalion claims in this case.

112.     In the month of April 2020 the plaintiff filed an Artcile 78
with the New York County supreme court challanging the command level order
104/19 since it seemed to had been the root of all of his complaint via
response he recived whenever he grievaed amatterr.. The index Number for
this matter was 100464/2020.

113.     On Feb 27, 2021 the plaintiff recievd a decsion from the honorab;le
judge John Kelly in regards to this ART 78  and said deciosn could be sen
eherein as EXHIBIT-J, where as teh  respondent NYC Dep't of Correction
and warden of MDC filed response caliming that the plaintiff's ART 78 issues
where moot because he no longer was detaineed in that facility.

114.     At that point theplaintiff understood why he was transferred
and moved to G.R.V.C where the same exact clo that he cahallenged in said
ARt 78 was governing his housing unit as seen in EXHIBIT-F herein , that
respondent NYC DOCS officials movd him as (1) punishment and (2) as a way
out of negliegnce in civil  litigation surrounding the same exact CLO that
Bennet Stein informed DOCS was violating the plaintiff's righst as seen in
exhibit-Q of his summary judgement.

115.     The plaintiff filed a appeal in aesponse to this matter displaying
the retaliation and legal plot iin attempt to escape negliegnce  see EXHIBIT-
K herein.

116.     Teh Court has established that an inmate can not be transferred
to punish him for filing a law suit, See THADDEUS-X  V. BLATTER 175 F.
3d 378 (6th Cir.,1999).

117.     From the well detailed list of grievances and denial of services
the plaintiff has established a fact that their existed a "CAMPAIGN OF
HARRASMENT AND RETALIATION" against himself as displaying and supporting
his retaliation claims which the courts ha sstated is needed in supporting
such See CALHOUN V. HARGONE, 312 F.3D 730 (5th Cir. 2002).

CUSTOM POLCY SUPPORT AGAINST DEFENDANT'S
CITY OF NEW YORK FOR 19-CV-3347, 19-CV-8737
& 20-CV-3992

118.     In the matter of 19-cv-3347, defendnat K. Alexander is an correctional
officer which falls under being an agent, servant and/or employee for the
city of new york.

119.     It is obvious by his conduct and the defense arguement in attempts
to state that since the plaintifff was IRC or a Court Order inmate that defendna
K. Alexander relied on what he belive to be a legtimate polciy in CLO 104/19
and memorandum of the security unit within MDC to read plaintiff's mail before
allowing it to go out.

120.     If the defense belived in their own theroy in this matter and in
the defense that they presented in this case then defendnat K. Alexander
would not have been removed from his post because of his actions and all
the other correctional officers that replaced him such as CO Bathe, CO Vega,
CO Semple, CO Santos and CO Aristide would have also been reading the plaintiff'
and other court order inmates mail before allowing it to go out.

121.     If what defendnat  K alexander did was not wrong and within the
guidlines then why would NYC DOCs officials stop practicing a policy that
was correct after the plaintiff commenced his civil litigation.

122.     If that was not good enough proof in support of the plaintiff's
position then the Court need to look no further then the letter from Bennte
Stein who the defendant(s) CITY OF NEW YORK employs as the Director of "POLOLCY
& COMMUNICATION " as the over watch agency the BOARD of CORR for NYC DOCS
and determining polcies and standards in dealing with pre-trial detainees
in all city jails. In Exhibit-Q of the plaintiff's summary judgement the
Court saw a letter from Mr Stein informing NYC DOCs officials that the

CLO (command level order) that governs the housing unit that the plaintiff
was in 9 north violate minimumstandards and also violated the plaintiff's
right by adding restrcitions upon him that was not specified within his Court
Order, then Mr Stein included a email from ADA Ernest Chin who applied for
the Court order in criminal court who claerly stated the Court order was
not intended to restrict the plaintiff from Law libarary for research purposes.

123.    So for making their determination the Court need to look no further
then the defendnat(s) CITY OF NEW YORK and its own inner agency's director
letter staing such polcy being wrongfully imposed. This voids the defense
counsel of any legtimate defense in regards to any restrictions placed upon
the plaintiff at all. The Court alos noticed then when the plaintiff submittd
that letter to them In Nov of 2020 and made such notification to defense
counsel by way of advising them to reach a agreement with the plaintiff in
regards to the matter.

124.    It was obvious by the defense response that the position they took
was one of a " NO PAY" position which they had the right to take
125.    The plaintiff does not argue the fact that the NYC Docs oficials
could not have in place rule and regulations governing 9 north or any other
housing unit within the facility MDC or any other city jaoil for that matter.

126.    What the plaintiff does make clear and would like to reiterates
to the defense and the Court is that any polciy any rule and any regulation
that is imposed upon the plaintiff and any city detainee must be done so
and created within the guidleines of polcies and minimum standards that is
first set by the nyc Board of Corrections or apply for an application of
Varience to explain why minimum standrs in that particuilar matter could
not be met and then await an approval from NYC BOC officials in regards to
that partiuclar Virance apllication. That was not the case in this matter
before the court today.

127.     In MONELL V. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658, 56 L.Ed 2d 611, 98 S.Ct. 2018(1978), the Supreme Court established that "Local governing bodies...can be sued directly under [42 U.S.C. § 1983] for monetary , declaratory, or in-junction relief.

128.     MONELL establishedd that alleging that a MUNICIPAL POLCIY or ORDENCE is itself "Unconstitutional" is always suffiecient to establish the necessary cause connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional Municipal polciy may be considered the act of the municipality itself., Id. at 694; See also PEMBAUR  V. CITY OF CINCINNATI, 475 U.S. 469, 478-80, 89 L. Ed 2D. 452, 106 S. Ct. 1292 (1986).

129.     The common denominator in each of the plaintiff's complaints is the Command Level Order which governed the housing unit 9 north where the plaintiff was placed at.

130.     This is the same command level order that throughout this entire proceedings that the defnse has avioded addressing because as attorney's for the CITy Of New York defense counsel knows and understands that CLO implicat ion in violation in the plaintiff's  rights also opens the door to class action suit from the hundreds if not thousands of detainees that were hoiused under these CLO's.

131.     So the defense has attempted to acttack the fact that NYC Docs officails right to creating rules and regulation are being coompromised. At arguement in which the plaintiff will address in his conclusion.

132..     Command Level order #104/19 is the polciy that restricted plaintiff's from facility Law Libarary  even though the plaintiff did not have a restriction stating such as seen in exhibit-Q of the plaintiff's summary judgement motion.

133.    Command Level order #104/19 polciy is the polciy that caused the plaintiff to be denied social service services to access hoss "OWN" funds to send mail out cetrtified returmn receipt mail when serving and dealing with legal paper-work.

134.    Command Level Order 104/19 restrcited the plaintiff from the facility law libarary and the defendnats as well as NYC DOCS officials have still deneid the plaintiff law libarary access forcing the plaintiff tomit details involving his pending murder charges in order to get the proper case law researched which still has not worked. This is even after they were informed that this restriction is wrong and illegal per AdA Ernest Chin as well as Judge Vincent Delgudice.  See exhibit-Q of summary judgement motion.

135.    Command Level Order #104/19 and 307/19 are municipal polcies and that Custom has caused the plaintiff's injury. BD. OF CNTY. COMMR'S OF BRYAN CNTY  V. BROWN, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed 2d 626 (1997)( internal citation omitted); See also CONNICK  V. THOMPSON, 563 u.s. 51, 131 S. cT. 1350, 1359, 179 L. eD 2D 417 (1011)

136.    This housing unit has always had a CLO of this sort like CLO #104/19, (housing unit 9 north) or CLO 307/19, governing it, for at least the two years that the plaintiff was housed and held there.

137.    The comannd level order's were so persistent and wide spread that it a affected all of the inamtes inclduing the plaintiff that was housed there doing this time period and before an acted as an official polciy in MDC.

DEFENDANT(S) CITY OF NEW YORK FAILUR IN TRAINING ANS SUPERVISING:

138.    The Courts detemined in CONNICK, 131 S. Ct. at 1361,   THAT A CITY CAN BE HELD LIABLE FOR A  SINGLE instance of misconduct by a low-level a employee, if, under the circumstances, the unconstitutional  consequences

of a failure to train or supervise were "PATENTLY OBVIOUS".

139.     This is the case in the matter of defendnat(s) K Alexander in 19-cv-3347 and defendnat(s) CO Martinez and T. Green in 19-cv-8737 as well as defendnat Sandra Espinoza in 20-cv-3992.

140.     First K. Alexander as an correctional officer had to be train that he does not have to follow an unlawful order. Furthermore  defendnat K. Alexander had acces to the plaintiff Suprpeme Court Order and CLO 104/19 as both were kept in a black spiral book that was in the satation on the 9 floor where he on numerous accassion read and reviewed both the plaintei's and read and knew that the restriction of reading the plaointiff's outgoing mail was not listed within his Supreme Court Lockdown Order. K. Alexander knew or should have been train or supervised in a better fashion then what he was, because he obviously did not know better then the conduct that he performed his daily duty in durring the time period mentioned herein the complaint.

141.     This same rule of law applies to CO Martinez and T. Green in 19-CV-8737, and Sandra Espinoza in 20-cv-3992.  Any person knows better then to tamper with anyones mail regardless of being a detianee or a person in the free world.

142.     Sandra Espinoza offered a affidavit to the Courts that was basically admitting to an act that she clearly does not perform but no supervisor prevent her from making such perjured statment and/or thought it okay because it was not involving the instance offense.  See EXHIBIT- H for refreshing if needed.

143.     Clearly CO Martinez and T.,. Green did not know better then to hold an inmates mail and then document the reason as being because it was legal ored to MOS members of service that worked at the facility, where

ther existed no rule, no regulation and no polciy that stated that the plaintiff
could not send papers to MOS if he was detained in the same facility as the
MOS.

144.    In JENKINS V. CITY OF NEW YOR, 478 F. 3d 76, 94 (2d Cir. 2007),
the court established that the mishandling the situation and the wrong choice
by a city employee will frequently cause the deprivation of a citizens constitut
ional right.

145.    Lastly in CANNON  V. UNIVERSITY OF CHICAGO, 441 U.S. 677, 696-697
(1979),  the Court stated that "THE LIABILITY OF MUNICIPAL CORPORATIONS FOR
THE ACTS OF THEIR AGENT IS, AS A GENERAL RULE, TOO WELL SETTLED AT THIS DAY
TO BE SERIOUSLY QUESTIONED".

CONCLUSION

146.    All in all the defendnat(s) actions in reagrds to the plaintiff
legal mailout-going andf leaving a facility is a serious and proetect right
of any prioners or detainee as well as the plaintiff Mr. Williams.

147.    The matter questioning wheter the defendnat(s) mentioned herein
this reply was answered long before the defense counsel summbitted there
Summary Judgement motion and long before the plaintiff submitted his.

148.    The matter was settled when the City of New York who is also namned
as a defendnat herein this matter created the NYC Board of Corrections to
create and establish minimum standrad polcies in protecting the rights of
detainees and settle the proceudres inplace for polcies in which NYC Doocs
personnel should enforce and follow.

149.    If the Court have any confusion in rachoing it detemination you
can start with reviewing NYC Baord of Corrections director of Polciy and
Communication letter to the plaintiff and CC to cheif of DOC and general

counsel reminding of such as seen in exhibit-Q of the plaintiff's Summary
Judgement motion which is included herein this response as being EXHIBIT-
A herein.

150.     It will make no sense for the NYC board of Corrections existence
if the court rules that correctional personnel themselve can create and enforce
polcies without degrees in Constitutional law and understanding the dianamics
in which particular rights of pre-trail detinanee like the plaintiff are
and how cruical they are in protecting and upholding the U.s. Constitution as
well as New York State Constitution..

151.     More importantly the NYC Docs officials creation of command level
orders 104/19 307/19 or 370.20 all violate the plaintiff righst as well as
the rights of any inmate in which these restrictions are imposed upon. WHen the
Legal Justification section of these orders state that the restriction within
said Order is justified by the Supreme Court Order, when those restriction
are not actual in the Supreme court order of the plaintiff it violates the
plaintiff rights, Usees the honorable Judge Vincent Delguidice  name in vain
as well as create an environment where as any and all correctional personnel
that comes in contact with the plaintiff is under the beliveth that all the
restrictions listed in the CLO are actually that restricted by the Judge
of the Supreme court when they are not.

152.     Undere any other circumstances the creation of such fraudulent
document would be considered a penal law code violation.

153.     The New York City Seal is Authorized for usage on official documentati
and the command level orders are not official at all in nature.

154.     The Court knows and understand the order of any Judge better then

33

any student of law will ever understand . The Court knows that a judges "ORDER" is to be enforced and not interputated,manipulated or modified without coming back in front of the Court before hand.

155.    The defense Summary Judgement motion is a request basically asking the court to disregards this fact, to disregards another judges order and grant NYC Docs officials Cart Blanche when moving forward in this type of issues.

156    There exist a Legal Department within the new york City dep't of corrections and if there was any questions in thelegality of what docs officials wanted to do add, change, or whatever with regards to the plaintiff's Court ... Order, then the proper route would have been for that legal department ... reach out to Said Judge Vincent Delgudice to seek guidance in how to move forward or add restriction for a legitimate penological reason. When this did not happen before adding restriction to the plaintiff status which was already determined by Judge Vincent deljudice, the defendant(s) not only violated the plaintiff Due Process rights along with other mentioned within the complaint but also commited the act of "CONTEMPT" under N.Y.S. Penal Law.

WHERAS for all of the reason stated within this reply the plaintiff request that the court deny the defendnat's Summary Judgement motion and rule in favor of his Summary Judgement motion.

ALEXANDER WILLAISM JR
PLAINTIFF PRO-SE
09-09 HAZEN STREET
QUEENS NY 11370

EXHIBIT - A

19-CV-3347 [JLC]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER WILLIAMS JR ,

                          PLAINTIFF(S).

        -AGAINST-

CITY OF NEW YORK ET AL,.

                          DEFENDANT(S),

PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF SUMMARY JUDGEMENT IN
PURSUANT TO FED R. CIV. 56.1

ALEXANDER WILLIAMS JR
PRO-SE PLAINTIFF
MANHATTAN DETENTION COMPLEX
125 WHITE STREET
NEW YORK NEW YORK 10013

TABLE OF CONTENTS

|                          | PAGES |
|--------------------------|-------|
| TABLE OF AUTHORITIES      | ii    |
| PRELIMINARY STATEMENT     | 1     |
| STATEMENT OF FACTS        | 2     |
| LEGAL STANDARD            | 3     |
| ARGUMENT POINT I          | 3     |
| ARGUMENT POINT II         | 7     |
| ARGUMENT POINT III        | 10    |
| ARGUEMENT POINT IV        | 12    |
| ARGUMENT POINT V          | 15    |
| CONCLUSION                | 16    |
| LIST OF EXHIBITS          | iii   |

TABLE OF AUTHORITIES

CASES                                                                          PAGES

HUDSON V. PALMER,
        468 U.S. 517, 547 (1984)                                                 5

PARRISH V. JOHNSON,
        800 F.2d 600, 604 (6th Cir. 1986)                                        5

DAVIDSON V. SCULLY,
        694, F.2d 50, 53 (2nd Cir. 1982)                                         5

LAAMAN V. HELGEMORE,
        437 F.Supp. 269, 322 (D.N.H. 1977)                                       5

STOVER V. CARLSON,
        413, F. Supp. 718, 723 (D. Conn. 1976)                                   5

GUAJARODO V. ESTELLE,
        580 F.2d  748, 759 (5th Cir. 1978)                                       6

TITLE  40: OF BOARD OF CORRECTIONS MINIMUM STANDARD FOR NYC JAILS  7,8,13

JOHNSON V. AVERY,
        383 US. 483 (1969)                                                       8

TORRACO V. PORT AUTHORITY OF N.Y. & N.J.,
        615 F.3d 129, 140 (2d Cir. 2010)                                         17

GILBERT V. SELSKY, 867, F. Supp. 159, 166 (S.D.N.Y. 1994)                        17


STATUES:

FED. RULE CIV. 56.1                                                           3,16

42 U.S.C. § 1983                                                              1,17

## PRELIMINARY STATEMENT

1.       The plaintiff boought the initial action forth under 42 U.S.C.
§ 1983 against the City Of NEW YORK et al, which was given a index number
of being  19-CV-3347.

2.       In this complaint the base of the issue was the fact that the
plaintiff was  not being allowed full asses to the facility law library,
his out-going mail was being read before he was allowed to send it out,
and his complaints were being ignored, each  factor being in violation
of his Constitutional Rights.

3.       While the above mention case was being litigated the plaintiff
filed another complaint in pursuant to  42 U.S.C. § 1983 against the city
of NEW YORK et al, which was given an index number of being 19-CV-8737.

4.       The base of this compliant was  the fact the  plaintiff  out-
going legal mail was being sensored and denied to leave the facilty because
it was addressed to  staff that worked at the jail and other legal entities,
staff was retaliating aginst him for his civil litigation and the facility
grievance civilian was not properly filing his grievances which was denying
him exhaustion of all rememdies  before bringging forth litigation all
which were in violation of his Constitutional Rights.

5.       While the two of the above mention complaints were being litigated
the plaintiff filed yet another complaint with the Southern District of
New York  waich was issued the index number of  20-CV-3992 .

6.       The base of this complaint was retaliation, excessive use of
force and illegal censorship of his out-going and in-coming mail, denial
of adding his layyers number to his allowed call list after being approved
by the judge that issued his lock down order, being denied the right to
the facility social service in order to use money from his account to send
out certified mail to ensure that the recipient actually recived the mail,

1

factors that were all in violations of his Constitutional Rights.

7.      The defendant(s) filed motions with the court which the plaintiff
objected to requesting that all three (3) of the matters be combined as
one  due to the simularities in nature and that the court litigate the
three cases under the initial case number of 19-CV-3347.

8.      The court ultimatley  honored the defendants request and the
matters were then combined  as one.

99      It  is important to  document that the plaintiff opposed the
defendnats request each time and notified the court that he rather litiagte
each matter seperately.

## STATEMENT OF FACTS:

10.      Throughout the litigation the defendants has relied on the Right
to read the plaintiff's out-going mail, denial of full access to the facility
law library  and denial of social service  as being correct under a facility
Command Order 104/19, herein as EXHIBIT - A.

11.      The defendants has maintianed that since the plaintiff is housed
in a special housing unit due to being issed an **Loock Down Order** by Suprme
Court judge  Vincent Del-Gudice herein as EXHIBTT - B, that they reserve
the right to legally  engage in the activities that the plaintiff belives
is a violation of  his Constitutional Rights mention herein in para 10
above.

12.      The defendants have denied that the defendnat **CO MARTINEZ** ever
tamper with and/or denied the plaintiff the ability to send out legal privilege
mail as  mention in complaint 19-cv-8727 as well as denying that the plaintiff's
greivances where ever tamper with and/or  denied exhustion.

13.      The defendants have also denied  any retaliation acts that the
plaintiff has claimed throughout all three of the complaints that was combined,

2

as well as denying the defendnat SANDRA ESPINOZA  ever tampering with
and/or witholding the plaintiff in-coming and out-going mail, as well as
denying  the excess use of force claim made against defendant CAPTIN  GORITZ
in  complaint number 20-cv- 3992 .

### LEGAL STANDARD FOR SUMMARY JUDGEMENT

### IN PURSUANT TO  FED. R. CIV. 56.1

14.        The Courts have explained that the very mission of the summary
judgement is to pierce the pleadings and to asses the proof in order to
see wheter there is a genuwine need for a trial. The thrid Circuit Doctrine
which permits the pleadings themselve to stand in the very way of granting
an otherwise justified summary judgement, is incompatible with the basic
purpose of the Rule. **Rule 56(c) and (a)** states the circumstances in which
summary judgement "shall be rendered" the Court""shall if applicable"
ascertain the facts existing without substantial controversey, and if
appropriate "shall" enter summary judgement. THE BELOW FACTS HIGHLIGHTS
THE SUPPORTING ARGUEMENT FOR THE PLAINTIFFS SUMMARY JUDGEMENT REQUEST.

### POINT I

### PLAINTIFFS FACTS SUPPORTING CONST.VIOLATION
### OF FIRST AMENDMENT

15.        EXHIBIT - C is a email  directly from Kings County assistant
District  Attorney Ernest Chin who is the ada on the plaintiff's criminal
case and the ada who applied to the supreme court judge for the plaintiff's
Lock Down Order  herein as EXHIBIT -B, whihc is the foundatoin of the defendes
arguement justifying there action in relation to the First Amendment violation
brought up throughout the complaints.

3

16.        As you can see from the answers to the questions asked by the plaintiff defense attorney to the ADA who initiated the lock down order, Mr Gala clearly states that there is no restrcition on the plaintiffs' assessing the facility law library and/or restrictions on the plaintiffs mail and that if the plaintiff is having any issues it must be due to polocies of the NYC dept of Corrections.

17.        EXHIBIT - D is the polocy/directive that governs the correspondences of all  detainees detained in all of the city jails with the City of New York.

18.        On page 2 of 17 Guidleines section (b) the directive states:

THERE SHALL BE NO CENSORSHIP OF ANY MAIL EITHER TO OR FROM INMATES, UNLESS AUTHORIZED BY THE WARDEN AS NOTED IN SECTION IV. C AND E OF DIRECTIVE OR A LAWFUL WARRANT. NO RECORDS OF CORRESSPONDENCES RECIVED BY ANY INMATE SHALL BE PLACED IN THE INMATE'S INSTITUTIONAL FILE, EXCEPT FOR A WARDEN'S ORDER TO READ AN INMATE'S CORRESPONDENCES AS AUTHOIRIZED BY THIS DIRECTIVE.

19.        On the same page under section (C)  IT  cleary states that non-privialged  mail shall not be read unless there is information from another law enforcement agency, the Commanding officer of the department of intelligence unit (I.U.), or the department senior staff pf the rank of Warden or above thet that  the correspondences amy contain one or more of the following:

A. Plans for sending contraband into or out of the facility
B. Plans for criminal activity within or outside of the facility
C. Information, which if communicated, would compromise the secuirty and good order of the facility and/or the safety of any person of persons within or outside the facility.

20.        There is now question as to if the plaintiff's mail was read because the facility admited to reading the plaintiff mail by stating the foloowing :

" ON 03/25/19 THE OCGS HAS REVIEWED YOUR STATEMENT AND WAS IN CONTACT WITH MDC SECURITY TO LEARN THAT BASED ON YOUR COURT ORDER AND THE DEPARTMENTS GUIDELINES IN THE HANDLING OF INMATES CORRESPONDECES ALTHOUGH THERE ISN'T ANY LISTED RESTRICTIONS TO WHO M YOU CAN SEND OR RECIEVE MAIL/CORESPONDECES THE

4

INFORMATION IN YOUR COURT ORDER SPECIFIES A RISK OF COMPROMISING THE SECURITY
AND/OR THE SAFTEY OF ANY PERSON OR PERSONS OUTSIDE OF THE FACILITY. BASED ON
THESE FINDINGS THE READING OF YOUR CORESPONDECES /MAIL IS DEEMED APPROPRIATE".

This greivance is displayed as being  exhibit - b in case number
19-CV-3347, but is herein as being EXHIBIT - E.

21.       In HUDSON V. PALMER, 468 U.S. 517, 547 (1984). SEE ALSO PARRISH
V. JOHNSON, 800 F.2d 600, 604 (6th Cir. 1986) the Court determined that
"Any 'arbitray opening and reading of ...mail [with] no justification -
other than harrasment' may violate the FIRST AMENDMENT".

22.       Privilage mail  in itself is entitled to greater confidentiality
and freedom from censorship then regular mail and 64 out of the 86 letters
that was read by the defendant CO ALEXANDER, was addressed to the plaintiff's
lawyers, doctorsn private investigators, banks, credit reporting agencies,
and even to new york city department of Corrections head-quaters loacted
at 75-20 astoria blvd, queens ny. The court as stated in DAVIDSON V. SCULLY,
694 F.2d 50, 53 (2nd Cir. 1982), that outgoing privileged mail may generally
be sent unopened.

23.       Furthermore the Courts determined in  cases cited supra note
10; see,e.g. ADMIN. REGULATIONS, No. 750 §§ V F1(d) AND V D2(b) (STATE
OF NEVADA DEP'T OF PRISONS, AUG. 8, 1984); POLICY STATEMENT, MANUAL OF POLICES
AND PROCEDURES, No. 02-00-105, OFFENDER CORRESPONDENCE (INDIANA DEP'T OF
COREECTIONS, DEC. 16 1983). What mail to or from [PRIVILEGED] correspndents
cannot be censored. Also in LAAMAN V. HELGEMORE, 437 F.Supp. 269, 322 (D.N.H.
1977) ("correspondence from attorneys-at-law, courts, gobernment officials
...is privileged mail, and scrutinty of it by prison oficials is restricted
under the FIRST & SIXTH AMENDMENTS); STOVER V. CARLSON, 413 F. Supp. 718,
723 (D. Conn. 1976) ("the channels of comunication to and from those agencies
with important and immediate responsibility for the fact of an inmates
incarceration remain entirely free from prison staff surveillance").

24.     In  GUAJARDO V. ESTELLE, 580 F2d 748, 759 (5th Cir. 1978) the
courts established that "Only a warrant based upon probable cause to belive
that the correspondence contains evidence of illegal activity would permit
prison oficials to open such outgoing mail."

25.     In this case the defendants never (1) informed the plaintiff
that he was on a facility mail watch instituted buy the warden of MDC;
(2) obtained a lawful warrant allowing them to censor the plaintiff's outgoing
mail; and (3) never had direct information of who may have been at risk
and where they person may have resided when using the laumguage inside
of the Lock Down order.

26.     In EXHIBIT - A Command Order 104/19  page 5 of 5 the legal justicfics
ion  states  as Per Supreme Court Order. This means one or two things,
either the facility is suppose to follwo the Suprme Court Lockd Down Order
of Vincent Delgudice which is seen herein as EXHIBIT- B and that Order
does not state anything at all in refference to the plaintiff's mail restrict-
ion or that the facility maintains a Supreme Court Order that blankets
them in their actions.

27.     Minus any legal documents to support their gcounds it is on the
facility/prison in burdenn to show a compelling justificiation for  interfecing
with the free execise of the freedoms laid out in the FIRST & SIXTH AMENDMENTS
OF THE US CONSTITUTIONS.

28.     It is the opinion of the plaintiff's that the defendants failed
to produce any justification that can/will/did reach the burden of giving
them the authority to violate the plaintiff's FIRST & SIX AMEND RIGHTS
as the defendnats admitted to doing in their grievance response in exhibt-
b of the initial complaint 19-cv-3347 also seen herein as EXHIBIT - E.

6

## POINT II

### PLAINTIFFS' FACTS SUPPORTING THE CONST. VIOLATION OF MINIMUM STANDARDS OF NYC JAILS AND DENIAL OF FULL ASSESS TO A COMPLETE LAW LIBRARY

29.      New York City  Dep't of Corrections mantains a minimum standard doctrine in whibb each inmate being detain Rights must be afforded and respected in this aspect. The Board of Corrections herein called B.O.C, is responsible for ensuring that each detainee gets afforded the Rights covred under these Minimum Standards.

30.      **TITLE 40: OF B.O.C.**  ;ays out the entire Minum standard doctrine in which each facility within the jurisdiction of The City of New York is to follow; and  the matter governing the Law Library can be found in section **§ 1-08 ACCESS TO COURTS AND LEGAL SERVICES.**

31.      Under Section (b) **Judicial and administartive Proceedings; (1)** states **"PRISONERS SHALL NOT BE RESTRICTED  IN THEIR COMMUNICATION WITH COURTS OR ADMINISTRATIVE AGENCIES PERTAINING TO EITHER CRIMINAL OR CIVIL PROCEEDINGS EXCEPT PURSUAT TO A COURT ORDER."**

32.      This  explains that the plaintiffs' communication with the Courts and  other legal agencies should not be restricted by any means unless it was stated so in his Lock Down Court order which is herein as **EXHIBIT-** B; but still the defendant CO MARTINEZ RESTRICTED THE plaintiff from engaging in this exact activty which should have been protected  as mentioned in complaint no. 19-cv-8737 and was admited to by the defendant herselve when she logged  exactly this in the housing unit log book that she was returning out-going mail and then allowing  letters going to an attorney Michael Ross of 44 Court street in Bklyn NY to go out as seen in EXHIBIT - F herein, leaving no room for legal standings minus a Court Order that supported such.

7

33.    Section (f) in pursuant to § 1-08 access to courts and legal
services under TITLE 40: OF BOARD OF CORRECTIONS, states under section
(f) (4) that "EACH PRIOSNER SHALL BE  GRANTED ACCESS TO THE LAW LIBRARY
FOR A PERIOD OF AT LEAST TWO HOURS PER DAY ON EACH DAY THE LAW LIBARAY
IS OPEN. UPON REQUEST, EXTRA TIME MAY BE PROVIDED AS NEEDED, SPACE PERMITING"
in pursuant to section (g) (2) it states that " PRISONERS SHALL HAVE REASONABLE
ACCESS TO TYPEWRITERS, DEDICATED WORD PROCESSORS [KIOSK], AND PHOTOCOPIERS
FOR  THE PURPOSE OF PREPARING LEGAL DOCUMENTS".

34.    The right to access to a fully operating law library by prisoners
was established by the courts in JOHNSON V. AVERY, 383 US. 483 (1969);
AND BOUNDS V. SMITH 430 US 817 (1977).

35.    Furthermore  in EXHIBIT- C herein it is stated by the Kings County
Ada ernest Chin who intiated the plaintiff's Lock Down Order that the plaintiff
Order was not intended to restrict him from the facility Law library and
that if he was restricted that had to be due to NYC Deppt  of corrections
policy.

36.    The defendants has contended in there defense that the plaintiff
was restricted from the facility law library by way of his Supreme Court
Lock down order; wich could be deemed illegal and violation of constaitutional
rights if the Lock Down Order is  found to not have been dlaced in efforts
to resticting him from such.

37.    The plaintiff has never recieved an misbehavior incident report
inside and/or near the facility law library so he should not have been
restricted by way of a ticket; nor should he have been restricted
for punitive purpses because his Supreme Court Lock Down Order was not
issued  for punitive reason(s); that is the defendant(s) CITY OF NEW YORK,
CAPTIN MATHIS, DEPUTY ELYN RIVERA, K ALEXANDER  makes this arguement in
their defnse.

8

39.        In EXHIBIT- G herein  when the plaintiff complained about being
denied the access to the facility the law library the defendnat(s) response
was  that denial was legal in pursuant to his Supreme Court Lock Down Order,
which is also  listed in the plaintiffs initial complaint 19-cv-3347 as
exhibit- j.

39.        When the plaintiff pursued his denail complaint to access to
the facility law libacary he was written a letter from the law library
civilain Mr Alou  informing him that if he wanted research done that  he
was to follow the facility policy off calling the law library via telephone
to discuss his matters to engage in legal reserach; This is supported by
the letter from legal cordinator herein as EXHIBIT- H.

40.        Speaking on the phone to anyone other thenthe person and/or person(s)
named within EXHIBIT- B, which is his Supreme Court Lock Down order would
be the plaintiff being in Contempt of the Judges Order and will aytomatically
lead to further Criminal carges against the plaint.

41.        Furthermore the facility  informed the plaintiff to discuss the
matters surrounding his criminal charges on a departmental line which is
recorded  with the legal cordinator so that he can research natter for
the plaintiff, is fundemantal flawed when every call within the facility
is recorded and stored on a data base and can possibly be harmful to how
the plaintiff marshals his criminal defense in the murder charges that
he is preparing for trial in.

42.        Outside the arguement supported by a Court order the defendnatsCITY
OF NEW YORK, CAPTIN BERNARD MATHIS, K. ALEXANDER AND ELYN RIVERA have no
legal standing supporting their decison to deny the plaintiff full access
to the facility law libaray.

43.        The Command Order 104/19 eherin as EXHIBIT-A bears nor legal

9

justifciation to deny the plaintiff from engaging in the activities listed herein Point II and Point I because they are proected acitivites that can only be barred by the existence of a Court Order and/or Legal warrant stating such directly.

44.      Furthermore the depit of Correction in the State of New York do not only hold the power and/or right to barr any detainee or the plaintiff from  exceising any light given to him by the US Constitution. This is even stated on page 5 of 5 in EXHIBIT - A  under the legal justification section; which amounts to the Command Order 104/19 being Unconstitutional on its face.

## POINT III

### PLAINTIFFS' FACTS SUPPORTING CONT. VIOLATION
### IN DENAIL OF THE RIGHT TO ACCESS THE COURTS BY
### WAY OF DENYING HIM EXHUSTION OF REMEDIES THROUGH
### WAY OF PURPOSELY NOT PROCESSING HIS GRIENCES FILED

45.      EXHIBIT- I herein is the  polciy/ directives that governs the inmate grievance procudres of all/any detainees being held within NYC Dep't of Corrections such as the Manhattan deteation Complex where the plaintiff was detained at ducring the time of the alleged violations that are mention in all three of the com,pliants that are combined into index number 19-cv3347 of the Southern District of New York.

46.      EXHIBIT- J herein is the back of the grievance formed being used at MDC  which also lays out the **Submission and Appeals process** WHEN  filing and appealing a grievance.

47.      In all of the griewances listed but not limited the plaintiff requested that the decioion he was given on initial response be appealed and the plaintiff never recived a response on the appeal request whihc prevent him from  appealing the grievances to C.O.R.C prevent him exhuastion and ultimately prevent him access to the court due to lack of exhuastion

GRIEVANCE NUMBER MENTION ABOVE:

210684, 212191, 342894, 345336, 344945, 344956, 336451, 338111, 288894, 344069, 344059, 340539, 340507, 336466, 336416, 340530, 335409, 348100, 348782, 277979, 281225, 2620776, 274126, 281259, 294345, 295244, 298306, 210220, 210058, 250204, t367/19, 210876, 204689, 210104, 245900, 238318, 238292, t374/19, 245644, 245726, 250132, 291185, 250183, 259792, 245644, 285849, 25978, 257215, 291185, 291168, 290414, 290452, 281215, 258327, 288261, 288267, 269986, 269976, 269986, 271766, 283607, 283603, 245766 and 238300.

The plaintiff has never ben afforded a response from his intital appeal on any grievance that he has filed since Jan 18 2019 to Present time except for in the appeal for tablets, so please be informed that this calin covers any/all grievances listed herein and not listed.

48.    The defendants has attempted to on numerous occassion make the defnse aruqement that the plaintiff failed to exhaust all remedies before bringging forth civil litigation, the commencement of civil litigation in relations to FIRST AMEMENDMENT violations need not be exhusted  before hand.

49.    The defendants CITY OF NEW YORK, GREIVANCE CIVILIAN A PADDILLO, JOHN HERNANDEZ, ELYN RIVERA, have mantained that the plaintiff's girevance complaint herein case number 19-cv-8737  never took place and held no merit by way of denying sysbh such in their response/answer to the intital complaint.

50.    Whereas the plaintiff's displaying of the facts that none of the grievances listed herein and filed throughout his time at MDC to present has ever been answerd when he has requested an appeal; this supports his complaint in relations to this matter leaving the burden on the defense which can not argue a factual defense that can show legal supporting as to why the plaintiff grievances were never answered in appeal request.

POINT IV

PLAINTIFF'S FACTS SUPPORTING THE CONST. VIOLATION
OF RETALIATORY ACTIONS BY DEFENDNATS IN NUMEORUS FASHIONS

PACKAGES:

51.     In 20-cv-3992 the plaintiff explains that the facility maintains
a poleiy that all packages and/or envelopes bearing tracking numbers are
opend down stairs inside of the facility mailroom outside of his presence
and placed in a brown paper bag before being givenn to the plaintiff.

52.     The defendants,SANDRA ESPINOZA, CIVILAIN T. GREEN, ELYN RIVERA,
JOHN HERNANDEZ, ADW HARVEYN, CO MARTINEZ, CITY OF NEW YORK, CO WELLS, ET
AL., 19-cv-3347, 19-cv-8737 and 20-cv3992 all hake the arguemnt that this
sint not what is taking place.

53.     Herein as EXHIBIT- K is a copy of numerous reciepts signed by
mailroom staff when opening packages down stairs before sending brown bag
top plaintiff'sg housing unit. Minus the proof of the defendants showing
that the plaintiff was escorted down stairs to the mailroom to recive and
witness the packages and envolopes bearing tracking numers being opeded
in his presence the defendnats can not explain how the plaintiff is reciving
his mail when CO PEREZ AND CO CHARLES  AS Shown as signing the recipts
shown in EXHIBIT - K did work the plaintiff housing unit on the date on
the recipt nor did they sign the plaintiffs' housing  unit log book as
being the person delivering mail on the date listgd on the recipts; this
factor supoorts the plaintiff arguement in this nature.

54.     The plaintiff has alos grieved this matter and was told in response
that doing such is what is done to inmates that are housed in housing unit
9 north due to Supreme Court Lock Down Orders.

12

55.      Furthermore TITEL 3 40 OF THE B.O.C.   SECTIONS § 1-12 PACKAGES states in section §§ 1-11 AS WELL AS THE inmate correspondences directive herein as  AS EXHIBIT - D both class packages coming into facility as being correspondece and governed by the same directive/policy; meaning that incoming correspondence must be open in the presence of the intended recipiant unless ther exist a warrant and/or Court order that states otherwise.

CONFICATION OF DOCUMENTS:

56.      EXHIBITS - L herein is grievances filed by the plaintiff on numeorus occassion when defendants named herein searched his cell and conficated legal documents without reason and without leaving the plaintiff a voucher for those  documents  which were legal in nature and where documents that plaintiff recibed from NYC dep't of correction from Laura S. Mello general counsel/foil officer from responce to foil: re quds.

DENIAL OF SENDING OUT MAIL:

57,      On numerous occassion since commenment of civilitagion the plaintiff has been denied the right to send out mail by numerous correctional staff at MDC some named herein and other not. The plaintiff filed multiple grievnaces on this matter and neither of the griavnce where ever responded to after they were sent to the head of the facility  and the plaintiff appealed them see EXHIBIT - M herein.

DENIAL OF SOCIAL SERVICES TO SEND CERTIFIED MAIL OUT :

58.      The defendnats began to deny the plaintiff access to the social services at the facility once they became aware the that was how the plaintii was able to use his funds in his inmate account to send out certified mail so that any/all correspondences that he sent out could be located and track by way of the uspa tracking numer that came with using certified mail from the United States Postal Service.

59.      Also **EXHIBIT- N** herein is a grievance that the plaintiff filed
when he attempted on numerous occassion to use the social service at the
facility to gain assess to his person belongs that was in saft keeping
at the jail to send them out; the plaintiff submitted release form to security
at the jail on multiple occassion and never did he recive any responses.

60      In regarding to accessing social services the plaintiff complaint
is not just simply the denial but rather the fact that once the access
was restricted the facility and the defendants herein never explained nor
informed  the plaintiff on a secure process in being able to use the social
service at the jail.

**DENAIL RIGHT TO CALL ATTORNEY:**

61.      On numerous occassions the plaintiff was denied the right to
use the facility phone doing recall hours to contact his criminal defense
attorney Jeff Chabrowe who was on his allowed phone list as seen and explain
herein EXHIBIT - O.

62.      Furthermore ducring the time span of Jan 200 - April 2020 the
defendant was denied the right to contact his other defense attorney Julie
A Clark Esq, even after the judge ordered so and the distatcit attorney
Ernest Chin contacted O.S.I.U capt Alleyene on numerous occassion in regrds
to why the plaintiff was denied such for so long.

63.      It was not until the plaintiff filed a Article 78 with the New
York County Supreme Court and served artcile 78 on the Manhattan Detention
Complex warden was the plaintiff phone list finally updated as see herein·
**EXHIBIT- P.**

## POINT V.

### PLAINTTIFFS SUPPORTING ARUEGMENT IN PURSUANT
### TO CUSTOM POLICY CLAIM SECTION OF SUITS

64.      Plaintiff ALEXANDER WILLIAMS REPEates, reiterates and realleges each and every paragraph of the complaints and further alleges:

65.      The CITY OF NEW YORK by way of the other defendant named herein 19-cv-3347, 19-cv-8737 and 20-cv3099, while acting under color of law, aapear in conduct that constituted a custom usage, practice or rule of the respective municipality/autority, which is forbidden by the Constitution of The United States.

66.      The aforemntion customs, polices, usage, practices, procdures and rules of the CITY OF NEW YORK AND NYC DEP'T OF CORRECTIONSinclude, but were not limited to, wronfully reading the out-goingmail of the plaintiff as the defendnats admitted to do so in their response to the plaintiff grievance on the matter herein as EXHIBIT - E,

67.      THE Aforne ntion customs, polices, usage, practices, procdures and rukles of the  CITY OF NEW YORK  AND NYC DEP'T OF CORECTIONS include, but were not limited of the worngfully denial of stooping the plaintiff out-sgoing legal mail as admited by defendnat CO MARTINEZ herein  as EXHIBIT - F, which  she admitted to by way of her own hand writting and logging such in the plaintiff housing unit on July 2 2019.

68,      The aformention customs, polices, usage, practices, procdures and rule of  THE CITY OF NEW YORK include but wee not limited to not responding th the plaintiff's greivance appeal request on a hundred if not more griences buy the defendnat GREIVANCE CIVILAIN A PADIILO.

69.      The aformention customs, polices, usage, practices, procdures and rule of the CITY OF NEW YORK  include , but were not limited to the wornfull denialk of adding dhe plaintiff defense attoney Julie A clark to his allowed call list as proven herein EXHIBIT - P.

70.      The aformention customs,  polices, usgaes, practices, proceudres
and rules of the **CITY OF NEW YORK**, Include, but were not limited to the
wrongful  opening and inspection of the plaintiff **ALEXANDER WILLIAMS JR**,
as well as all/any detainees held at the Manhatan Detention Complex outside
of there presence, when the directive/ploicy lable **INMANTE CORREPSONDECE** herein
as **EXHIBIT-** D clearly states  on page 9 of 17 in section **V. PROCEDIRES**
**(8) "all polices, guidelines, procedures, restrictions and changes issued**
**by the department** concerning the inspection of mail recived by inmates
**in general population, shall also apply to mail recived by inmates  in**
**punitive segregation, close custody and any other special housing unit**
**status";** SUCH AS  being  detainee in a housing unit for Court Order Lock
down  as the plaintiff is currently housed in and was housed in durring
the time of the event alleged in the compliants.

### CONCLUSION:

71.      The plaintiff herein and throughout the proceedings has more
than  achieved the goal of reaching the threshold needed to show the Courts
that summary judgement  is  worthy of being honored in his favor; even
though  there is no  mandatory need of having legal support in the area
of requesting summary judgement in the claim of maintain and allowing a
**CUSTOM POLICY** where the facts laid out in the inttial complaint supports
such and when the defendant(s)  failed to  address such claims as required
in  FED. R. 56.1.

72.      Moreso the defendant(s) formal answer basically admits to at
minimum the **CUSTOM POLICY** when there was no reason given why the defendant(s0
failed to properly  addrexzs the alleged  acts and suited to give a blanket
response in their answer.

73.      In pursuant to the liabilty of the defendant **CITY OF NEW YORK**,
the courts has established a Municiapl liability claim when " a plaintiff

reached the requirements of pleading and proving three (3) elements: (1) an  official policy or custom  that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional  right". AS SEE IN TORRACO V. PORT AUTHORITY OF N.Y. & N.J. , 615 F.3d 129, 140 (2d CIR. 2010)..

74.      In GILBERT V. SELSKY, 867 F.Supp. 159, 166 (S.D.N.Y. 1994) a panel of Judges from this very District opinioned that a Municipal is deemed liable to sue they fail to inform employees working at a jail and train staff, employees, correctional officers, on the policies designed to avoid violation of Constitutional Rights as the rights decribed within the plaintiff's ALEXANDER WILLIAMS JR, civil complaints.

        WHEREAS  for the foregoing reason the plaintiff, ALEXANDER WILLIAMS JR, respectfully request that this Court issue an Order granting Summary Judgement in his favor for the amount demanded in the complaint and any other relief that the Court may deem just and proper.

DATED: DECEMBER 2020
       NEW YORK  NY

ALEXANDER WILLIAMS JR 1411801632
        PLAINTIFF PRO-SE
MANHATTAN DETENTION COMPLEX
125 WHITE STREET
NEW YORK NEW YORK  10013

ADDENDUM FOLLOWING ON NEXT PAGES

ADDENDUM BASED ON B.O.C DECISION

75.      In their response to the plaintiff's  amended complaint filed
with the court on 10/19/20 page 3 paragraph no 13 the defendant(s) deny
the plaintiff's claim except to admit to to instituting **Command&Level** Order
**104**/19 on April 12 2019, and **Command Level Order**  307/19 on November 8,
2019, subjecting the plaintiff to policies and procedures the was in violation
of the plaintiff's Constitutional Rights, and was in violation  of New
York City  DOC's Minimum Standards. SEE EXHIBIT - Q.

76.      This claim is the  core of the plaintiff's  complaints throughout
the three civil comaplints which also happens to be the foundation of the
defendant(s) defense throught each seperate comaplint as the defendant(s)
admit and acknowledge that the plaintiff was being subjected to siad Command
**Devel** Order  for the second time in their response filed with the Court
on 10/19/20  page 4 paragraph no 15.

77.      EXHIBIT - Q, clearly expresses that (1)"**BOC** SHOULD PROVIDE YOU
ACCESS TO LEGAL RESEARCH MATERIAL IN MANHATTAN DETENTION COMPLEX LAW LIBRARY
OR, IF NOT POSSIBLE, VIA A LEXIS NEXIS KIOSK IN YOUR HOUSING AREA OR A
TABLET THAT HAS LEXIS NEXIS CAPABILITIES BUT NO ABILITY TO COMMUNICATE
WITH OTHER PEOPLE OR OTHER DEVICES"; This was the exactly the legal arguement
that the plaintiff  stated in complaint  **19-CV-3347** and also listed as
exhibit - g herein where you will see that the facility responded informing
the plaintiff  in grievance no **204023**  "M,R WILLIAMS  HOUSING AREA £9NORTH·
IS A COURT ORDER LOCK DOWN HOUSING AREA  IN WHICH LAW LIBRARY SERVICE ARE
AFFORDED IN THE HOUSING AREA. THEREFORE MR. WILLIAMS **(**THE PLAINTIFF HEREIN**)**
IS NOT ALLOWED ACCESS TO THE KIOSK WHICH IS PHYSICALLY IN THE LAW LIBARARY",
WHICH WAS IN RESPONSE TO THE PLAINTIFF'S REQUESTING DIRECTLY TO USE THE
KIOSK LEXIS NEXIS TO RESEARCH ; THE defendant named in 19-CV-3347 as well
as the defnendats **CITY OF NEW YORK**, stood by this decision  which lead
to the plaintiff being denied to research and prepare for trail and civil

matter from jan 18 2019 - present time, which was wrong and in violation of DOC minimum standard and the plaintiff Constitutional rights as stated in EXHIBIT - Q and should sqaush the defendant(s) defense in the area of law library and defendnats CITY OF NEW YORK  CUSTOM plaxi POLICY arguement supporting the request in summary judgement herein.

78.       In regrads to the the matter of reading the plaintiff's outgoing mail; again EXHIBIT - Q sqaushes the defendnats arguement as to wheter the reading was legal when EXHIBIT - Q page 2  2nd paragraph states clearly " ADDITIONALLY, DOC COMMAND LEVEL ORDER (CLO) GOVERNING YOUR HOUSING AREA DOES NOT COMPLY WITH MINIMUM STANDARDS. WHILE DOC MUST LIMIT YOUR CONDITIONS OF CONFINEMENT IN RESPONSE TO AM COURT ORDER, DOC MUST COMPLY WITH ALL MINIMUM  STANDARDS THAT ARE  NOT LIMITED BY SUCH ORDER. (SUCH AS THE PLAINTIFF NOT HAVING ANY MAIL RESTRCITION LISTED IN HIS SUPREME COURT LCOK DOWN ORDER) INSTEAD, IN THIS CASE, IT APPEARS DOC HAS PLACED A BLANKEE RESTRCCTIONS N EACH PERSON IN YOUR HOUSING AREA WITHOUT REGARD TO EACH PERSON'S SPECIFIC COURT ORDER. THE BOARD OF CORRECTIONS RECOMMENDS DOC RESCIND THIS CLO AND ADDRESS EACH PERSON'S  CONDITIONS INDIVIDUALLY, PURSUANT TO EACH SPECIFIC COURT OEBER";  This statement clearly support the plaintiff's summart judgement request  were as  in there response to the  plaintiff's matter in 19-CV-3347 in regards to the reading of his outgoing correspondences the facility responded  informing plaintiff that they would contiue to read his out going mail due to the languag used in his supreme court lock down order even though that that Court Order did not list any such restriction. See AGAIN EXHIBIT- E HEREIN.

79.       Whne calims in 19-CV-8737 & 20-CV-3992 are throughly inspected the core of the complaints stem around the plaintiff's mail being opened before given to him, inspected diffrently then that of an inmate in general population of Manhattan detention Complex, witheeld  due to the housing unit he is placed in and/or excessive use of force steming from altercation

deriving from the plaintiff non-reciving his mail due to the Command Level Order such as in the matter with the defendant CAPTIN GORIZTZ, who was dispacthed  to the housing area by defendnat SONYA HARVEY, to enforce the Command Level Order  that was ultimately being institued wrongfully as learned in EXHIBIT - Q;  in grievance no's  201158 the facility response to the plaintiff's mail issue was  was  balnketed by  using the HOUSING AREA COMMAND LEVEL ORDER;  just as in grievance no's  listedximdefx as being  DEF_0530, DEF_0531, DEF_0532, DEF_0533, DEF_0534, DEF_0535, DEF_0536, DEF_0537, DEF_0538, DEF_0539, DEF_0540, DEF_0541, DEF_0542, DEF_0543, DEF_0544, DEF_0545, DEF_0546, DEF_0319, DEF_0320, DEF_0321,DEF_0560 - DEF_0574, DEF_0458 -DEF_0460, DEF_0326 - DEF_0328, DEF_0329 - DEF_0331, DEF_0332 - DEF_0334, DEF_0309 - DEF_0318 and more not limited to this claim, where minus the plaintiff's court order stating anything in relations to sending and recieving mail, his mail should flow as that of a inmate in genral population and not be handled by secuirty, a recall officer, opened outside his presence or with held as in the inatance in defendant CO MARTINEZ which wrong doing is not only supoorted in EXHIBIT- Q But also admitted and abvious by her own admission as seen in EXHIBIT- F HEREIN; SO THERE IS NO **legal** arguement that the defnse could make as to the plaintiff's correspondeance/ FIRST AMENDMENT  violations.

80.     Moreso the defendants continued to violation the plaintiff FIRST AMENDMENT  RIGHTS even after being told and/or notified by the BORAD OF CORRECTION on Oct 26 2020 via EXHUBIT - Q herein; futher supporting the plaintiff's  arguement that the defendant(s) actions where retaliatory in nature and out right against state and federal law in relations to FIRST AMENDMENT VIOLATION MINUS the lack of Court Order and/or Lawful Warrant allowing tampering. with-holding, deflecting, mis-directing, opening outside precense any/all correspondences coming and going/leaving the fcaility that belonged to the plaintiff ALEXANDER WILLIAMS JR.

81.     In relations to the adding subtsance to the denial of social service  to use funds to send certified mail to and from the facility and send property home as well as using funds to take care of personal business(s) outside of the facility; when the defendant(s)  restricted access to the social service services they restricted the plaintiff access to his founds and violated  his FIRTS AMENDMENT RIGHT, when it was explained to  the defendnats from the plaintiff by way of multple grievances that he was being "DENIED SOCIAL SERVICE AND WHENEVER HE SENT REQUEST TO SECURITY OFFICE HE NEVER RECIVED RESPONSE" which ultimately denied him the rights to send mail certifed to legal and non legal recipients, send his propety home as well as pay bills outside of the fcaility.

82.     It is clear that when the defendnats failed to notify the plaintiff as toi a proper  route and ensured that that route was secure in making social service request that it was being done just to prevent him foom engaging in the protected rights mentioned in paragraph 30 and 81 herein.; see defense exhibit listed as the follwoing for plaintiff request and/or notification seeking assiatnce: DEF_0350 - DEF_0351, DEF_ 0338 - DEF_0341, DEF_0420 - DEF_0423, DEF_0164 - DEF_0165, DEF_0168 - DEF)0169, DEF_0181 - DEF_0182, DEF_0183 - DEF_0184, DEF_0185 - DEF_0185XNN and more not list and not limited; all the instances the plaintiff issue was due to the x wrongfully Command Level Order that encroached on minimum standard rights of the plaintiff violating his Constitutional Rights and this violation continued after the defe      ere  notified of their wrong doing on Oct 26 2020 as seen herein EXHIBIT - Q.

83.     When reviewing the matter of the plaintiff claim against the defendnats in 19-CV-8737 in relations to the denial to exhaust his remedies by way of failing to answer the plaintiff's grievances the plaintiff would ask the Court/Judge to look nor futher then the defense exhibit's; DEF_0335 -DEF_0337; when the plaintiff greived the fact that he had over 35 diffrent

grievances in that the facility did not respond to his request for appeal

so that he can ultimately appeal the issue to the BOARD OF COORECTIONSAND

This grievance went unanswer, wheras strangley the exact entity NEW YORK

CITY BOARD OF CORRECTIONS WHERE THE same enitity that ruled in EXHIBIT-

Q THAT ruled that the issues that the plaintiff was attempting to get

to the correctauthorities where the issues could be rectified and the

defnendants purposely ignored the plaintiff grievance knowing this.

84.        More important if the Court/Judge review every grievance that

the plaintiff has every filed since being housined at the Manhattan Detyntion

Complex with the exception of the grievance in relation to the denail of

the Tablet, the defendant(s) have never responded to any appeal requst

mae by the plaintiff as seen in every exhibit that teh plaintiff was just

sent by the defendant(s) on oct 30 2020. [as being a copy of every grievance

that was filed by the plaintiff from Jan 19 - Present time]

85.        Lastly when reviwcing the matter of the defendnat(s) CITY OF

NEW YORK MAINTAINING A CUstom policy the plaintiff would simply direct

the Courts attention to the following exhibits submitted by the defendnat(s0

CITY OF NEW YORK;   DEF_0511 - DEF_0513, DEF_0486 - DEF_0486 - DEF_0488,

DEF_0505 - DEF_0510, DEF_0517 - DEF_0518, DEF_ 0653 - DEF_0655, DEF_0662

- DEF_0664, DEF_0179 - DEF_0180. DEF_0448 - DEF_0452 DEF_0444 - DEF_0447,

DEF_0440 - DEF_0443, DEF_0443 - DEF_0435, DEF_0430 - DEF_0432, DEF_0417

- DEF_0419, DEF_0406 - DEF_0409, DEF_0402, - DEF_0405, DEF_0398 - DEF_0401

AND many more where all essentailly relatd to Command Level Order 104/19

that governed the issue.

Furthermore it is clearly noticiced that the defendnats CITY

OF NEW YORK either allowed or was negligently unaware that the facility

and its employees were wrongfully balnketing the housing unit using this

Command Level Order rather then treatin the plaintiff as well as other

inmates housed in housing unit 9 North court orders completely seperate

in nature. The entire existance of Command Level order supports the existance
and usage of a custom policy that ultmately violated the plaintiff rights
as stated herein.

WHEREAS   For all the reason listed herein and more the plaintiff
ALEXANDER WILLIAMS JR,   request that the Courts grant summary judgement
in his favor and whatver other   releif that the Court deems just and proper.

ALEXANDERE WILLIAMS
1411801632 PRO-SE

23

EXHIBIT - A




| | THE CITY OF NEW YORK<br>DEPARTMENT OF CORRECTION<br>**MANHATTAN DETENTION COMPLEX**<br>125 WHITE STREET<br>**COMMAND LEVEL ORDER** | |
|---|---|---|

| ☐ NEW | ☐ INTERIM | ☒ REVISED | ☐ ADMINISTRATION | ☒ SECURITY | ☐ PROGRAMS |
|---|---|---|---|---|---|

| **EFFECTIVE DATE**<br>4/12/19 | **ORDER NO.**<br>#104/19 MDC | **SUBJECT**<br>COURT ORDERED LOCKDOWN INMATES | |
|---|---|---|---|
| **SUPERSEDES:** | | **REFERENCE:** SUPREME COURT ORDER | **PAGE** 1<br>**OF** 5 **PAGES** |

| Reviewed by: ELYN RIVERA | Reviewed by: TATANISHA BANKS | Reviewed by: ELYN RIVERA |
|---|---|---|
| *Elyn Rivera Deputy Warden* | | *Elyn Rivera Deputy Warden* |
| Signature: Deputy Warden for Security | Signature: Deputy Warden for Administration | Signature: Deputy Warden for Programs |

| Approved by: **SHERMA DUNBAR,<br>ACTING WARDEN** | Signature: |
|---|---|

## I. PURPOSE

This command level order is promulgated to establish policy and procedures for the Care, Custody and Control of the inmates under Court Ordered lockdown status.

## II. POLICY

It shall be the policy of the Manhattan Detention Complex to comply with the mandates of all Court Orders dealing with inmates housed in this facility. Additionally, the restrictions imposed on "Lockdown Status" inmates by the Court supersedes any rights these inmates may ordinarily have under the Minimum Standards.

## III. PROCEDURES

The inmates housed in Court Ordered lock-down areas shall be governed by the following:

a. Twenty-three (23) hour lock-in, feed-in status.

b. Inmates housed in Court Ordered Lock-Down areas will be allowed to possess the following property in their cell:

1. One (1) Bible
2. Three (3) Magazines
3. Three (3) Books
4. One (1) Bar of Soap
5. One (1) Container of shampoo
6. One (1) Toothbrush
7. One (1) Toothpaste
8. One (1) Plastic Cup
9. One (1) Towel
10. Deodorant

|  | **EFFECTIVE DATE**<br>4/12/19<br>**ORDER NO.**<br>#104/19 - MDC | **SUBJECT**<br>**COURT ORDERED LOCKDOWN INMATES** | | | |  |
|---|---|---|---|---|---|---|
| | | | **PAGE** | **2** | **OF**<br>**5** **PAGES** | |

## III. PROCEDURES continued

### Special Security Procedures

a.  Inmates in lock-down status shall not be removed from their cells unless a Captain is present. AT NO TIME WILL MORE THAN ONE (1) INMATE BE ALLOWED OUT OF HIS CELL AT ANY ONE TIME.

b.  Whenever a Court Ordered Lock-Down Inmate is removed from the housing area, he shall be restrained in leg irons, waist chains and mitts. The Inmate shall be under one-on-one observation of a Correction Officer to assure no communication with any other inmate(s), verbally, in writing or through hand signs.

c.  During the day tour (0700x1500 hours) and under the supervision of a Captain these inmates shall be strip-searched and their property carefully searched on a daily basis. These searches will be recorded on a Random Search Form.

d.  Inmates shall dress in jumpsuits at all times, unless going to court for trial.

e.  Inmate housed in Court Ordered Lock-In areas shall not be allowed to refuse to be produced in court.

f.  The Court Ordered inmates shall not be permitted to refuse to attend court because of complaints of health problems unless the physician examining this defendant certifies in writing that the attendance of this defendant in court would likely result in serious impairment to this defendant's health. In this event, this information shall be immediately transmitted to the Central Operations Desk At (718) 546-1384.

g.  The Court Ordered inmate's accompany card shall be kept in the CMC box in the General Office.

### Program/Inmate Services

Law Library/Outgoing Mail

Inmates will make all requests for Law Library materials in writing. These requests will be forwarded to the Security Office who will obtain copies of the requested materials and place same in the inmates blue storage bin.

1.  The assigned Captain will collect all letters written by the inmate. The Captain will turn the mail over to the Security Office. Under no circumstances will any inmate in Court Ordered Lockdown status be permitted to send out any written correspondence or any other type of communication.



| EFFECTIVE DATE 4/12/19 | SUBJECT | | |
|---|---|---|---|
| | **COURT ORDERED LOCKDOWN INMATES** | | |
| ORDER NO. #104/19 - MDC | PAGE   3 | OF   5 | PAGES |



## III.   PROCEDURES continued

### Telephone Calls and Visit Privileges:

1. The court ordered inmates are barred from Visits and Telephone calls to anyone other than their attorney of record. These numbers are listed in each inmate's court order folder.

2. All calls will be placed between the hours of 1330 – 1430 hours and 1630 – 1730 hours.

3. The Correction Officer assigned to the Security Testing post shall make the telephone call using a P.I.N. Number which will be changed weekly by Security. Inmates are not allowed to know the P.I.N. numbers. The Security Testing Officer shall maintain a log of each attorney called. Such a log will detail the following information for each attempted call:

   a.   Date and Time call requested
   b.   Time call was placed
   c.   Whether or not contact was made with the Attorney
   d.   Time call ended.

### Inmate Showers

Inmates will be afforded a ten minute shower, three (3) times per week. The showers are to be recorded in a shower logbook. As stated earlier, a Captain shall be present when the inmate is removed from his cell to the shower and again when he is returned from the shower to his cell. All shower activity shall be logged in the Housing Area Logbook.

### Incoming Mail

Any incoming mail for the inmates housed in court ordered areas will be forwarded to the MDC Security Office. No mail shall be forwarded to these inmates until approved by the Commanding Officer of his/her designee.

### Commissary

The only items inmates housed in Court Ordered areas may purchase from commissary are:

| 1. | Soap | 4. | Toothpaste |
|---|---|---|---|
| 2. | Shampoo | 5. | Paper |
| 3. | Deodorant | | |

Custodial staff assigned to the housing area will complete the Commissary request form for the inmate. This shall prevent subject from communicating with commissary help. All commissary products will be thoroughly searched prior to giving them to the intended inmate. Appropriate logbook entries shall be made relative to the delivery of this service.



| | EFFECTIVE DATE<br>4/12/19<br>ORDER NO.<br>#104/19 - MDC | SUBJECT<br><br>**COURT ORDERED LOCKDOWN INMATES** |  |
|---|---|---|---|
| | | PAGE     4     OF<br>                              5     PAGES | |

## III.    PROCEDURES continued

### Social Service

All requests for Social Services shall be forwarded to the Security Office. At not time will these inmates have any contact with Social Service personnel.  Additionally, at no time will interview slips be forwarded to any Service area.

### Religious Services

If these inmates request religious services, the Chaplain will be called to visit them.  However, the Chaplain will first be instructed that he/she may not:

1.   Communicate on the inmate's behalf with anyone other that the Warden, the Security Office, or the Court-appointed Special Master.
2.   Convey any written messages from these inmates to anyone else.
3.   May not give anything to or receive anything from these inmates.

### Medical/Mental Health Services

Any necessary medical or mental health services are to be provided to these inmates in the housing area.  They will not be removed to go to the Clinic unless it is physically impossible to provide them with necessary medical services in the cell/housing area.  Mental Health services, if required, will be provided to them in the housing area, not in the Clinic.

If the inmate must be removed to the Clinic for medical services, he shall be escorted by a Correction Officer and a Captain and kept separate from all other inmates in such a manner as to assure that he is unable to communicate, in any manner, with other inmates.

Medical staff who come to see these inmates in the housing area should first be instructed that they may not:
1.   Communicate on the inmate's behalf with any one other than the Warden or the Security Office.
2.   Convey any written messages.
3.   May not give anything to or receive anything from these inmates unless the item is necessary to provide medical services (i.e., medical supplies, medication).



| | | | |
|---|---|---|---|
| **EFFECTIVE DATE** 4/12/19 | **SUBJECT** | | |
| | **COURT ORDERED LOCKDOWN INMATES** | | |
| **ORDER NO.** #104/19 - MDC | **PAGE** 5 | **OF** 5 | **PAGES** |



III.    **PROCEDURES** continued

### Hospital Runs

In the event that the inmate requires hospitalization, he is to be treated and outposted at Bellevue Hospital absent a medical emergency. In the event of a medical emergency, the inmate is to be transported to the nearest hospital.

### Inmate Recreation

Inmates housed in the Court Ordered area may be afforded recreation in accordance with the details delineated in the court order or as amended in a separate memo. These stipulations shall be reflected in the posted "Recreation Schedule". A Captain shall be present when the inmate is removed from his cell and returned to this cell, following the recreation period. While at recreation, these inmates shall be separated from all other inmates in such a manner as to assure that they cannot communicate with any other inmates verbally, in writing or through hand signals. These inmates will be restrained in waist chains handcuffs and mitts whenever they are out of their cells for recreation.

Appropriate logbook entries shall be made relative to delivery of this service.

### CELL AREA ACCESS AND SUPERVISION

1.  Civilian personnel (i.e. Chaplain and Medical Staff) must enter the cell area accompanied by a Supervisor at all times.

2.  The Area Captain will conduct at least three (3) tours of inspection in the court ordered inmates cell area during each tour of duty.

3.  The on-duty Tour Commander will conduct at least one (1) tour of inspection during each tour of duty. He/she is responsible for ensuring that the provisions of this order are fully complied with.

IV.    **LEGAL JUSTIFICATION**

1.    This order is justified as per Supreme Court Order.

EXHIBIT - B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM, PART 7
----------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

**LOCKDOWN ORDER**

      - against -

ALEXANDER WILLIAMS,
      BOOK & CASE # 1411801632
      NYSID # 01897858L

Kings County
Indictment Number
2146/18

                    Defendant.
----------------------------------------------------------------X

        WHEREAS the above-captioned defendant is before the Supreme Court, Kings County, PART 7 pending trial in the above-captioned case, wherein he is charged with Murder in the Second Degree, and other related charges, and

        WHEREAS this Court has been presented with clear and convincing evidence that this defendant, has solicited the aid of other persons to threaten, intimidate, and cause serious physical injury or death to witnesses, and has been engaging in other conduct that raises serious, well-founded and legitimate concerns, that he poses a continuing, significant risk to the safety of persons whom he perceives as being potential witnesses against him; and this Court finds that the imposition of each of the restrictive conditions of confinement on this defendant that are delineated in this order is essential to protect the integrity of the criminal proceedings against him and others and to assure the safety of potential witnesses and their families, and is required in this case.  It is

        ORDERED that pending further written order of this Court or another court of appropriate jurisdiction:

**Housing**

1)      The above-captioned defendant is to be housed in a highly secure area designated by the Department of Correction, preferably the lockdown area, on lock-in, to be separated from all other inmates in the area, in such a manner as to prevent him, to the extent possible, from communicating with or passing material to other inmates,

**Visits and Phone calls**

2)      Defendant is barred from having any visits other than with his attorney, Jeffrey Chabrowe, Esq.

3)      Defendant is precluded from making any telephone calls other than to his attorney, Jeffrey Chabrowe, at 917-529-3921.  A correction officer or captain shall dial such telephone number 917-529-3921 using the defendant's PIN number.  Moreover, the defendant's PIN number shall

EXHIBIT –C

 Gmail

**Crystal Williams <tlcvisionary@gmail.com>**

## Fwd: Access to Law Library
1 message

**jcw24@aol.com** <jcw24@aol.com>                                                    Mon, Oct 26, 2020 at 4:24 PM
Reply-To: jcw24@aol.com
To: "tlcvisionary@gmail.com" <tlcvisionary@gmail.com>
Cc: jcw24@aol.com

Pls see below.

Thank you.

Please acknowledge receipt of this email.

Julie A. Clark, Esq.
32 Court Street, Suite 707
Brooklyn, New York 11201
Phone: (718) 625-6888
Fax:     (718) 625-6977
E fax:   (347) 230-5464
_____

**THIS OFFICE WILL NOT REQUEST WIRES BY EMAIL. PLEASE CALL AND CONFIRM ANY WIRE REQUESTS****
CONFIDENTIAL COMMUNICATION**
E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.


-----Original Message-----
From: CHIN, ERNEST <CHINE@BrooklynDA.org>
To: jcw24@aol.com <jcw24@aol.com>; bennettstein@boc.nyc.gov <bennettstein@boc.nyc.gov>
Cc: jchabrowe@gmail.com <jchabrowe@gmail.com>
Sent: Mon, Oct 26, 2020 4:21 pm
Subject: RE: Access to Law Library

The lockdown order does not specifically address mail or the law library. The lockdown order addresses phone and in person visits, restricting access to the inmate's attorneys and investigators.

The lockdown order does not address mail or the law library specifically.
Regarding opening mail, charging him for certified mail, and blocking access to the law library, that may be related to other DOC policies.

**From:** jcw24@aol.com [jcw24@aol.com]
**Sent:** Monday, October 26, 2020 1:04 PM
**To:** bennettstein@boc.nyc.gov
**Cc:** CHIN, ERNEST; jchabrowe@gmail.com; jcw24@aol.com
**Subject:** Re: Access to Law Library

Please advise as to the lockdown order for Mr. Alex Williams :

1. Does his order permit the jail to read his outgoing mail?
2. Does his order  permit the jail to open his mail before he receives it?
3. Does the order include any certified mail that is sent out for the jail to use his funds?
4. Does the order include the jail blocking him from the law library?

Thank you.

Please acknowledge receipt of this email.

Julie A. Clark, Esq.
32 Court Street, Suite 707
Brooklyn, New York 11201
Phone: (718) 625-6888
Fax:    (718) 625-6977
E fax:  (347) 230-5464
_____

**THIS OFFICE WILL NOT REQUEST WIRES BY EMAIL. PLEASE CALL AND CONFIRM ANY WIRE REQUESTS****
CONFIDENTIAL COMMUNICATION**
E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.


-----Original Message-----
From: JULIE CLARK <jcw24@aol.com>
To: Stein, Bennett (BOC) <bennettstein@boc.nyc.gov>
Cc: chine@brooklynda.org <chine@brooklynda.org>; jeff chabrowe <jchabrowe@gmail.com>; jcw24@aol.com <jcw24@aol.com>
Sent: Thu, Oct 22, 2020 2:02 pm
Subject: Re: Access to Law Library


Pls email the response to all on the email chain


JULIE A. CLARK, Esq.
32 Court Street, suite 707
Brooklyn, NY 11201
718-625-6888
718-625-6977 (fax)
jcw24@aol.com



On Oct 22, 2020, at 1:50 PM, Stein, Bennett (BOC) <bennettstein@boc.nyc.gov> wrote:

Hi Mr. Chin and Ms. Clark -

Thank you for the time on the phone. As discussed, Alexander Williams has filed and twice appealed a grievance regarding his access to  a tablet that he can use for legal research via Lexis

Nexis. DOC currently does not allow him to go to the law library and they have not installed a law library kiosk in the housing area that would allow him to search Lexis Nexis. The Board of Correction (the City's independent oversight agency for the jails) is now considering a recommendation to DOC on Mr. Williams' final appeal.

I am just hoping to confirm whether the judge's order in this case is meant to limit access to the law library / Lexis Nexis / legal research materials.

Thanks,
Bennett

Bennett Stein
Director of Policy and Communications
New York City Board of Correction
929-270-3282 (cell) 212-669-7992 (office)
bstein@boc.nyc.gov

This email communication and any files transmitted with it contain privileged and confidential information from the Kings County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

EXHUIBIT- D

415R



THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION

# DIRECTIVE



| [ ] NEW | [ ] INTERIM | [X] REVISED | SUBJECT |
|---|---|---|---|

| EFFECTIVE DATE 03/16/09 | *TERMINATION DATE / / | **INMATE CORRESPONDENCE** |
|---|---|---|

| CLASSIFICATION # 4001R-B | SUPERSEDES 4001R-A | DATED 06/16/08 | APPROVED FOR WEB POSTING [X] YES [ ] NO | DISTRIBUTION A | PAGE 1 OF 17 PAGES |
|---|---|---|---|---|---|

| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | AUTHORIZED BY THE COMMISSIONER |
|---|---|
| CAROLYN THOMAS, CHIEF OF DEPARTMENT    SIGNATURE | MARTIN F. HORN    SIGNATURE |

## I.   PURPOSE

This Directive sets forth the policy, guidelines and procedures for the efficient handling of inmate correspondence by the New York City Department of Correction.

## II.   POLICY

A.   The general policy of this Directive is to insure the prompt delivery of inmate mail, thereby encouraging contact with family, friends and to support the privacy of such correspondence.

B.   The regulations stipulated in this Directive represent departmental decisions for the benefit of all inmates and for ensuring the safety and security of the facility, inmates, staff and the public.

C.   Inmate correspondence shall be handled in accordance with the guidelines and procedures specified in this Directive.

D.   The Department shall seek criminal prosecution when any item found in correspondence involves a criminal offense.

E.   The United States Postal Service (USPS) operates a program whereby matter may be sent free of charge if mailed by or for the use of blind persons or others who cannot read or use conventionally printed materials due to visual impairment. This program is applicable to inmates who are blind or visually impaired in the custody of the Department. The Department will act as a conduit for the transfer of such mail from an inmate to the Postal Service.

416R

| | EFFECTIVE DATE **03/16/09** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** | |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES  [ ] NO | PAGE **2** OF **17** PAGES | |

## III.  DEFINITIONS

A.   Privileged Correspondence – shall mean correspondence to and from attorneys and individuals under the direct supervision of attorneys, assistance agencies and individuals under the direct supervision of legal assistance agencies, and courts.  In addition, privileged correspondence shall mean correspondence to and from the State Commission of Correction, Board of Correction and other correctional officials, local, State and Federal law enforcement agencies, media, physicians, clinicians and clergy.

B.   Non-Privileged Correspondence – shall mean all other correspondence.

## IV.  GUIDELINES

A.   Inmates may correspond with any person, except when there is a reasonable belief that limitation is necessary to protect public safety or maintain facility order and security.  Correspondence shall not be deemed to constitute a threat to safety and security of a facility solely because it criticizes a facility, its staff, or the correctional system, or espouses unpopular ideas, including ideas that facility staff deem not conducive to rehabilitation or correctional treatment.  The Department shall provide notice of this policy to all inmates in the Inmate Handbook.   There shall be no restriction upon incoming or outgoing inmate correspondence based upon either the amount of correspondence sent or received, or the language in which correspondence is written.

B.   There shall be no censorship of any mail either to or from inmates, unless authorized by the Warden as noted in Section IV. C and E of this Directive or a lawful search warrant.  No records of correspondence received by any inmate shall be placed in the inmate's institutional files, except for a Warden's order to read an inmate's correspondence as authorized by this Directive.

C.   Outgoing Inmate Non-Privileged Correspondence:

Outgoing inmate non-privileged correspondence shall not be opened or read except pursuant to a lawful search warrant or the Warden's written order articulating a reasonable basis to believe that the correspondence threatens the safety or security of the facility, another person, or the public.

1.   Outgoing inmate non-privileged correspondence shall not be read unless there is information from another law enforcement agency, the Commanding Officer of the Department's Intelligence Unit (I.U.), or other Department senior staff officials of the rank of Warden or above that the correspondence may contain one or more of the following:

416R

| | | | |
|---|---|---|---|
|  | **EFFECTIVE DATE**<br>**03/16/09**<br><br>**CLASSIFICATION #**<br>**4001R-B** | **SUBJECT**<br><br>**INMATE CORRESPONDENCE** |  |
| | **DISTRIBUTION**<br>**A** | **APPROVED FOR WEB POSTING**<br>[X] YES     [ ] NO | **PAGE 3 OF**<br>**17 PAGES** |

## IV.    GUIDELINES (cont.)

   a. Plans for sending contraband into or out of the facility;

   b. Plans for criminal activity within or outside of the facility; or

   c. Information, which if communicated, would compromise the security and good order of the facility and/or the safety of any person or persons within or outside the facility.

  2. A copy of the Warden's written order (Form #4001A, "WARDEN'S WRITTEN ORDER TO READ OUTGOING INMATE CORRESPONDENCE") and accompanying documentation to read outgoing correspondence must be promptly provided to the Chief of Facility Operations and placed on file in the facility's Security Office.

  3. The Warden's written order shall state the specific facts and reasons supporting the determination.  The Warden shall articulate the facts and supporting reasons by completing Section 1 of Form #4001A, "WARDEN'S WRITTEN ORDER TO READ OUTGOING INMATE CORRESPONDENCE," Attachment D of this Directive.

  4. The affected inmate shall be given written notification of the determination and the specific facts and reasons supporting it by signing Section 2 of Form #4001A, "WARDEN'S WRITTEN ORDER TO READ OUTGOING INMATE CORRESPONDENCE."  The affected inmate shall then be issued a copy of the form.  The Warden may delay notifying the inmate only for so long as such notification would endanger the safety and security of the facility, after which the Warden shall immediately notify the inmate.

  5. A written record of correspondence read pursuant to this subdivision, Form #4001A, "WARDEN'S WRITTEN ORDER TO READ OUTGOING INMATE CORRESPONDENCE," shall be maintained and shall include: the name of the inmate, the name of the intended recipient, the name of the reader, the date that the correspondence was read, and the date that the inmate received notification.

    NOTE: Section 3, "READER OF CORRESPONDENCE" of Form #4001A, shall be completed only after the affected inmate has received notification.

  6. Any action taken pursuant to this subsection shall be completed within five (5) business days of receipt of the correspondence by the Department.

416R



| | EFFECTIVE DATE **03/16/09** | SUBJECT | | |
| CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** | | |

| DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **4** OF **17** PAGES |



## IV.   GUIDELINES (cont.)

D.    Outgoing inmate privileged correspondence shall not be opened or read except pursuant to a lawful search warrant.

E.    Incoming Inmate Non-Privileged Correspondence:

1.    Incoming inmate non-privileged correspondence shall not be opened except in the presence of the intended inmate or pursuant to a lawful search warrant or the Warden's written order articulating a reasonable basis to believe that the correspondence threatens the safety or security of the facility, another person, or the public.

a.    The Warden's written order shall state the specific facts and reasons supporting the determination. The Warden shall articulate the facts and supporting reasons by completing Section 1 of Form #4001B, "WARDEN'S WRITTEN ORDER TO READ INCOMING INMATE CORRESPONDENCE," Attachment E of this Directive.

b.    The affected inmate and sender shall be given written notification of the Warden's determination and the specific facts and reasons supporting it. Facility staff shall complete Section 2, "INMATE NOTIFICATION" and Section 3, "SENDER NOTIFICATION" of Form #4001B. The affected inmate shall then sign Section 2 and receive a copy of the form. If the correspondence has a return address, it shall be indicated in Section 3. The facility shall then mail the sender a copy of the form at the Department's expense. If the correspondence did not have a return address, this shall be indicated in Section 3 and the form is to remain on file at the facility. The Warden may delay notifying the inmate and the sender only for so long as such notification would endanger the safety or security of the facility, after which the Warden immediately shall notify the inmate and sender.

c.    A written record of correspondence read pursuant to this subsection, Form #4001B, "WARDEN'S WRITTEN ORDER TO READ INCOMING INMATE CORRESPONDENCE" shall be maintained and shall include: the name of the sender, the name of the intended inmate recipient, the name of the reader, the date that the correspondence was received and was read, the date that the inmate received notification and the date notification was mailed to the sender.

NOTE: Section 4, "READER OF CORRESPONDENCE" of Form #4001B, shall be completed only after the affected inmate received notification and notification was mailed to the sender.

416R

| | EFFECTIVE DATE **03/16/09** | SUBJECT | |
|---|---|---|---|
|  | CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **5** OF **17** PAGES |

## IV.   GUIDELINES (cont.)

    d.   Any action taken pursuant to this subsection shall be completed within five (5) business days of receipt of the correspondence by the Department.

2.   Incoming inmate non-privileged correspondence shall not be read except pursuant to a lawful search warrant or the Warden's written order articulating a reasonable basis to believe that the correspondence threatens the safety or security of the facility, another person, or the public.

3.   Incoming correspondence shall not be read unless there is information from another law enforcement agency, the Commanding Officer of the Department's Intelligence Unit, or other Department senior staff officials of the rank of Warden or above that the correspondence may contain one or more of the following:

    a.   Plans for sending contraband into or out of the facility;

    b.   Plans for criminal activity within or outside of the facility; or

    c.   Information, which if communicated, would compromise the security and good order of the facility and/or the safety of any person or persons within or outside of the facility.

4.   A copy of the Warden's written order (Form #4001B, "WARDEN'S WRITTEN ORDER TO READ INCOMING INMATE CORRESPONDENCE") and accompanying documentation to read incoming correspondence must be promptly provided to the Chief of Facility Operations and placed on file in the facility's Security Office.

5.   Incoming privileged correspondence shall not be read except pursuant to a court order.  Incoming privileged correspondence shall not be opened and inspected except in the presence of the recipient inmate or pursuant to a lawful search warrant.

F.   The Department shall not maintain any records of correspondence received by any inmate, including sources or amounts of correspondence, except as noted in Sections IV. C and E of this Directive.  In addition, nothing herein shall preclude the Department from maintaining, in a place separate from the inmate's institutional file and for the sole purpose of assuring efficient mail delivery, their own records of mail received; provided, however, that such records shall not be used in any way to affect

416R



| EFFECTIVE DATE **03/16/09** | SUBJECT | |
|---|---|---|
| CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** |  |

| DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES  [ ] NO | PAGE **6** OF **17** PAGES |

## IV.   GUIDELINES (cont.)

any terms or conditions of a inmate's subsequent confinement, nor shall they be released to any party other than the inmate except upon court order or subpoena issued by a governmental agency which, by law, is authorized to inspect Department of Correction records and then only after notice to the party affected, which notice in no event shall be less than twenty-four (24) hours before the return date of the application for the court order or subpoena.

G.   Incoming correspondence may be manipulated or inspected without opening and subjected to any non-intrusive device.  Such manipulation or inspection does not in any way or manner remove the responsibility for opening and inspecting all incoming correspondence in the presence of the intended inmate.

H.   Any particular correspondence may be held for an extra twenty-four (24) hours pending resolution of a search warrant application or court order.

I.   Any inmate may address written communications to the Commanding Officer of the facility or the Commissioner.  Upon request, an inmate will be supplied with paper and envelope for the purpose of such communication.  Such communication shall be promptly delivered to the Warden or transmitted to the Commissioner if intended for the Commissioner.

J.   Employees are prohibited from writing, mailing or conveying any letter or information from or to any inmate or any other person on behalf of an inmate without the approval of the Commanding Officer of the facility.

K.   If an inmate is unable to read or write, he or she may receive assistance with correspondence from other persons, including but not limited to, facility employees and other inmates.

L.   Each facility shall make available for purchase by inmates both stationery and postage.

M.   The Department shall provide indigent inmates (inmates having no funds in their Commissary Account) with free stationery, envelopes and first class postage for all letters to attorneys, courts and public officials.   Mail from indigent inmates, addressed to the Office of the Comptroller shall be sent by certified mail at Departmental expense.   Inmates receiving funds in their Commissary Accounts sufficient to cover expenses borne by the Department for certified mail within seven (7) calendar days of its posting, may be required to pay for such postage.   There shall be no postage weight limitations on this type of correspondence.   In addition, two (2) postage free personal letters weighing two (2) ounces or less will be permitted each week to indigent inmates.   Each facility shall make available to indigent inmates at Department expense stationery and postage for all letters to attorneys, courts and public officials, as well as two (2) other letters each week.

416R

| | EFFECTIVE DATE **03/16/09** | SUBJECT **INMATE CORRESPONDENCE** | | |
|---|---|---|---|---|
|  | CLASSIFICATION # **4001R-B** | | |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES  [ ] NO | PAGE **7** OF **17** PAGES | |

## IV.   GUIDELINES (cont.)

N.   Inmates shall be permitted at their request and their own expense, to send correspondence by certified mail.  However, when the inmate is indigent, and as a matter of law, rule or regulation and such correspondence is required to be sent by certified mail, the expenses shall be borne by the facility concerned.

O.   All procedures, guidelines and restrictions issued concerning the searching and censoring of mail received by inmates in general population as well as any changes in these procedures, guidelines and restrictions, also will apply to mail received by inmates in punitive segregation, close custody, and any other special status.

## V.   PROCEDURES

A.   INCOMING CORRESPONDENCE

1.   In order to enhance the detection of narcotic substances concealed in inmates' incoming correspondence and packages, the following procedures will be adhered to:

a.   All incoming inmate correspondence and packages to Rikers Island shall be forwarded to the Central Mail Processing Center.

b.   The Canine Unit will be deployed for a narcotics scent detection of all correspondence and packages prior to being released to the facility.

c.   Upon completion of the canine narcotics scent detection, Special Operations Division (SOD) will notify the affected commands to retrieve their inmate correspondence and packages.

d.   Under no circumstances will inmate correspondence or packages be retrieved directly from the United States Postal Service by the individual facility.

2.   Incoming inmate correspondence shall be delivered to the intended inmate within a forty-eight (48) hours period after receipt by the facility unless the inmate is no longer in custody.  Upon delivery, all incoming correspondence shall be opened and inspected in the presence of the intended inmate.

416R

| | EFFECTIVE DATE<br>**03/16/09** | SUBJECT<br>**INMATE CORRESPONDENCE** | |  |
| --- | --- | --- | --- | --- |
| | CLASSIFICATION #<br>**4001R-B** | | | |
| | DISTRIBUTION<br>**A** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **8** OF<br>**17** PAGES | |

## V.   PROCEDURES (cont.)

3.   Letters, printed material, photographs, pictures, money orders and Cashier's/Teller's checks may be received in correspondence.  This list of items is to be kept on file at the Board of Correction and any revision to the list shall be forwarded to the Board of Correction.  The list shall be posted in English and Spanish in each housing area.

4.   When any privileged, certified, or special delivery mail is delivered to the inmate, the mail room officer assigned to distribute the mail will require the intended inmate to sign the Mail Logbook to confirm receipt of the correspondence.

5.   The Mail Logbook will specify the name and book and case number of the inmate receiving mail, the name of the sending party and/or affiliation, the date of receipt, the inmate's signature and the signature of the officer distributing the mail.

6.   No records of correspondence received by any inmate shall be placed in the inmate's institutional file, except as noted in Section IV. C and E of this Directive.

7.   If any contraband or prohibited items other than dangerous contraband is found in any incoming correspondence, the inmate shall be so advised and the item shall be confiscated.  However, at the inmate's option, the item may be returned to the sender, destroyed or donated to an outside charitable organization. The appropriate form (Form #420A [English] or #420B [Spanish], REMOVAL OF NON-PERMISSIBLE ITEM(S) INCOMING CORRESPONDENCE/PACKAGE) indicating the option selected and containing brief instructions for the appeal procedure shall be prepared in quadruplicate.  The first copy shall be filed in the inmate's folder; the second copy shall be given to the inmate; the third copy is for the Board of Correction and the fourth copy shall be forwarded to the General Counsel of this Department.  After removal of an item, the incoming correspondence shall be forwarded to the intended inmate.

a.   If dangerous contraband or an item suspected of being a controlled substance is found therein, the inmate shall be so advised and the item confiscated.  The contraband shall be placed in an envelope and sealed in the presence of the inmate and a witnessing officer.  Entries shall be made on the sealed envelope denoting the name and address of the sender, a description of the contraband, the name, number and

416R



| EFFECTIVE DATE **03/16/09** | SUBJECT | **INMATE CORRESPONDENCE** | |
|---|---|---|---|
| CLASSIFICATION # **4001R-B** | | | |
| DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **9** OF **17** PAGES | |



## V.   PROCEDURES (cont.)

location of the inmate recipient and the signature of both witnesses. The sealed envelope shall then be forwarded to the Tour Commander who shall deliver the envelope together with a full written report of the incident to the Commanding Officer for processing and possible criminal action.   When an item found in incoming correspondence involves a criminal offense, it shall be forwarded to the appropriate authority for possible criminal prosecution.   In such situations, the processing of Form #420A/B may be delayed if necessary to prevent interference with an ongoing criminal investigation.

(8)   All policies, guidelines, procedures, restrictions and changes issued by the Department concerning the inspection of mail received by inmates in general population, shall also apply to mail received by inmates in punitive segregation, close custody and any other special status.

9.   Facilities will not accept cash by mail for deposit into the inmate funds account.  In the event cash is received in the mail, it will be held in escrow until the inmate is discharged with the following exceptions:

a.   Institutionally generated charges (i.e., unpaid restitutions, fines, mandatory surcharges;

b.   Self-bail; and

c.   Sent to an authorized third party.

10.   All money orders and cashier's checks sent to inmates by mail for deposit in their cash fund accounts shall be received by the Institutional Mail Officer, opened in the inmate's presence and stamped "INMATE FUNDS - FOR DEPOSIT ONLY" prior to the inmate endorsing the same with his/her signature and book and case number.   A numbered mail money receipt will be prepared in duplicate by the officer for each inmate receiving money. The original receipt shall be given to the inmate in accordance with the prescribed mail procedure of the institution.   The duplicate receipt shall remain in the Mail Money Receipt Book as a permanent record.

a.   To ensure accountability when different officers use the Mail Money Receipt Book throughout the day, each officer upon completion shall close out the book by clearly printing in blue or black ink, on the reverse side of the last receipt used, the date, time, numbers of the first and last receipts issued, total amount of funds collected (followed by a notation of the breakdown of money orders), and officer's name, followed by his/her signature and shield number.   The officer will immediately surrender the money order(s) and book to the Cashier who will verify the

416R



| EFFECTIVE DATE **03/16/09** | SUBJECT |
|---|---|
| CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** |
| DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES [ ] NO |
| | PAGE **10** OF **17** PAGES |



## V.   PROCEDURES (cont.)

same and affix his/her signature (with name clearly printed below), identification number, the date, and the time below the officer's signature.

The Cashier will then enter in the computer, from the Mail Money Receipt Book, monies received by each inmate according to the following procedure; Inmate Banking Menu, #6 Debit and Credit Inmate Account.   A line drawn across the individual receipt will denote that the receipt was entered.   After all receipts are in the computer, return to Inmate Banking Menu, #8 Report Menu, then #1 Debit and Credit Register, return to Inmate Banking Menu, to #9 End of Day Processing, etc., then #1 End Day Processing.

The computer hard copy totals will be compared to monies received and verified.   A copy of the Debit and Credit Register in addition to the Summary Totals will be attached to the Cashier's Daily Statement.   The amount received and receipt numbers will be recorded on line #2, mail money on the Cashier's Daily Statement.

11.   When the records indicate that an inmate has been transferred to another facility of the Department, the unopened envelope containing the correspondence shall be properly re-addressed, time-stamped and dispatched promptly to the facility to which the inmate was transferred. However, Privileged Mail shall be processed in accordance with the procedures outlined in Section V. C.  Privileged Mail.

12.   When the records indicate that an inmate has been transferred to a facility not under the jurisdiction of the Department, the unopened envelope shall be time-stamped and the original address on the envelope shall be crossed out with one (1) diagonal line (/).   The name and address of the facility concerned shall be written in ink on the front of the envelope and the re-addressed envelope shall then be forwarded to the facility of record, through the United States Postal Service.   No additional postage shall be required. Privileged Mail shall be processed in accordance with the procedures outlined in Section V. C. Privileged Mail.

13.   Any "non-privileged mail" received for an inmate who has been discharged from the Department's custody (i.e., release on bail, released in court, completed sentence, etc.), shall be forwarded to the address of record.

   a.   When the records indicate that the inmate has been discharged and there is no forwarding address on record, the mail shall be returned to the sender.   The notation MOVED - Left No Address - shall be hand-stamped on the envelope.   However, if there is no return address on

416R

| | EFFECTIVE DATE **03/16/09** | SUBJECT **INMATE CORRESPONDENCE** | | |
|---|---|---|---|---|
|  | CLASSIFICATION # **4001R-B** | | |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES   [ ] NO | PAGE **11** OF **17** PAGES | |

## V.   PROCEDURES (cont.)

the envelope and the inmate is unknown, the notation ADDRESSEE UNKNOWN shall be hand-stamped on the envelope and returned to the United States Postal Service.

B.   OUTGOING CORRESPONDENCE

1.   Outgoing inmate correspondence shall be addressed and sealed by the inmate.

2.   All outgoing inmate correspondence shall bear the inmate's name, and either the facility post office box, or the inmate's home address in the upper left-hand corner of the envelope.  Failure to comply will result in the mail being returned. Free postage shall be provided to indigent inmates in accordance with the policy stated in this Directive.

3.   All outgoing inmate correspondence shall be placed in a locked mail receptacle by the inmate, and the mail shall be forwarded through the United States Postal Service at least once each business day.

4.   Inmates who are blind or visually impaired may choose to send outgoing mail without postage.  The mail may be sent to both domestic and international destinations.  The contents of the mail must meet USPS requirements for the free mailing service.  These requirements specify the types of items that qualify for the service.

5.   The envelope must meet the following two requirements:

a.   The phrase "Free Matter for the Blind or Handicapped" must be marked on the upper right hand corner of the front.

b.   The envelope must remain unsealed.

6.   The mailroom staff that process outgoing mail shall screen the items mailed to ensure that those being sent without postage are items submitted by inmates entitled to free mail.

a.   The Officer or other staff person shall maintain a list of the inmates who are blind or visually impaired; the list shall include the name, Book and Case Number, Housing Location and type of disability of the inmates.

b.   When an inmate is admitted to a Departmental facility and appears to have or is claiming a disability, the inmate shall be assessed in the facility's clinic by medical staff. Once it has been determined by medical staff that the inmate has a disability, the Intake Supervisor or designee,

416R

| | EFFECTIVE DATE **03/16/09** | SUBJECT **INMATE CORRESPONDENCE** | |
|---|---|---|---|
|  | CLASSIFICATION # **4001R-B** | |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **12** OF **17** PAGES |

## V.   PROCEDURES (cont.)

shall immediately notify the Associate Counselor located in the Counseling Services Unit at the facility and the Deputy Warden for Programs or his/her designee.  The Deputy Warden for Programs will provide the mailroom with an updated disability list on a weekly basis, which shall also include all inmates that are blind or visually impaired. During non-business hours the Intake Supervisor shall forward this information to the office of the Deputy Warden for Programs.

c.   The Officer or other staff person assigned to the mailroom shall check all items of outgoing mail that have no postage and are marked "Free Matter for the Blind and Handicapped" against the weekly list of disabled inmates.

i.   Letters or packages so marked by inmates who are on the list as qualifying for free mail shall be sent out with all other outgoing mail. The Department shall not be obligated to provide any postage for these materials.

ii.   Letters or packages so marked by inmates who are not on the list and, therefore, not qualified for free mail shall be returned to the inmates for proper postage.

d.   The Officer or staff person shall leave the letters or packages that qualify for free mailing unsealed so that the USPS may inspect its contents.

### C.   PRIVILEGED MAIL

1.   When any privileged, certified, or special delivery mail is undeliverable, a notation of why delivery could not be effected shall be made in the UNDELIVERED MAIL LOGBOOK – PRIVILEGED, CERTIFIED, REGISTERED and SPECIAL DELIVERY by the Mail Clerk or other person assigned to perform said duties.

The opening/closing date of the Logbook shall be entered on the outside cover of the Logbook.

2.   The Logbook shall contain the following headings:

Entry A - Name/address of sender;

Entry B - Name/number of inmate addressee;

416R



| EFFECTIVE DATE **03/16/09** | SUBJECT |
|---|---|
| CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** |



| DISTRIBUTION **A** | APPROVED FOR WEB POSTING **[X] YES  [ ] NO** | PAGE **13** OF **17** PAGES |
|---|---|---|

## V.   PROCEDURES (cont.)

Entry C - Reason why mail was undelivered.  This entry must be clearly stated, for example:

i.   Inmate was transferred to GMDC.;

ii.   Inmate was released on bail;

iii.   Inmate transferred to State Prison (Give name/address).

Entry D -  Action taken, for example:

i.   Mail forwarded to address of record - enter address where mail was forwarded;

ii.   Return to sender - enter reason why mail is being returned to sender, e.g., addressee unknown, insufficient information, etc.

Entry E - Date action taken as per Entry "D" above;

Entry F - Name/I.D. number of person processing the mail - recording the entries.

After making the logbook entries, the Mail Clerk shall then process the mail as specified in this section.

3.   FORWARDING OF PRIVILEGED MAIL

All privileged mail addressed to an inmate who has been transferred to another facility within the Department or transferred outside the jurisdiction of the Department shall be time-stamped and imprinted with a standardized stamp provided by the Department (see Exhibit A), and processed by the Mail Clerk or officer assigned to perform Mail Clerk duties.

a.   Prior to the Mail Clerk imprinting the envelope, a diagonal line (/) shall be placed through the original address.

b.   The stamp shall contain the following information:

FORWARD TO (ADDRESS ONLY)

i.   DATE RECEIVED;

ii.   DATE FORWARDED;

416R



| | |
|---|---|
| EFFECTIVE DATE<br>**03/16/09** | SUBJECT |
| CLASSIFICATION #<br>**4001R-B** | **INMATE CORRESPONDENCE** |

| DISTRIBUTION<br>**A** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **14** OF<br>**17** PAGES |



## V.   PROCEDURES (cont.)

            iii.   FORWARDING FACILITY (NAME OF);

            iv.   FORWARDED BY (NAME/I.D. # OF PERSON PROCESSING THE MAIL)

    c.   The Mail Clerk will then clearly print the information required in the imprinted captions and then forward the piece of mail to the United States Postal Service for processing, or to the facility of record if the inmate was transferred to a facility within the Department.

4.   RETURN OF PRIVILEGED MAIL TO SENDER

    a.   When privileged mail is received for an inmate who has been discharged and there is no record or a forwarding address, or in cases where the mail can not be delivered to the inmate because of "insufficient information," "addressee unknown," or "no forwarding address," the privileged mail shall be time-stamped and imprinted with the standardized stamp provided by the Department (see Exhibit B), before it is returned to the sender.  Prior to the Mail Clerk imprinting the envelope, a diagonal line (/) shall be placed through the original address.

    The stamp shall contain the following information:

    RETURN TO SENDER

      i.   DATE RECEIVED;

      ii.   DATE FORWARDED;

      iii.   (CHECK THE APPROPRIATE BOX)

      iv.   / /  NO FORWARDING ADDRESS;

      v.   / /  ADDRESSEE UNKNOWN;

      vi.   / /  UNDELIVERABLE - INSUFFICIENT INFORMATION;

      vii.   FORWARDED BY FACILITY (NAME OF);

      viii.   FORWARDED BY (NAME/I.D. # OF PERSON PROCESSING THE MAIL).

416R

| | EFFECTIVE DATE<br>**03/16/09** | SUBJECT<br>**INMATE CORRESPONDENCE** | | |
|---|---|---|---|---|
| | CLASSIFICATION #<br>**4001R-B** | | |  |
| | DISTRIBUTION<br>**A** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **15** OF<br>**17** PAGES | |

## V.  PROCEDURES (cont.)

NOTE:  Prior to any privileged mail being returned to sender, the Mail Clerk shall make a reasonable attempt to locate the forwarding address of the inmate concerned, by perusing the inmate's folder or by referring to the Inmate Information System (I.I.S.); in addition, before any privileged mail is returned to sender, the Mail Clerk shall submit the mail to the supervisor in charge of the Mail Room, who shall ensure that every effort to locate the addressee was made.

b.  The Mail Clerk will then clearly print the information required in the imprinted captions, check the appropriate box and then forward the piece of mail to the United States Postal Service for RETURN TO SENDER.

D.  APPEAL

1.  Within twenty-four (24) hours after the removal of any item(s) from correspondence, the intended inmate, the Board of Correction and the General Counsel of this Department shall be given written notification of such removal.  Such notice may be delayed, if necessary, to prevent interference with any ongoing criminal investigation.  See Attachments: Form #420A (English) and Form #420B (Spanish).  This notice shall include:

a.  The name (and number, if inmate) and address of sender;

b.  The name and number of the recipient (sentenced - use sentence number; detention - use book and case number);

c.  The item(s) removed;

d.  The reason(s) for removal;

e.  The disposition of the item(s);

f.  The appeal procedure.

2.  The removal of the item(s) from an incoming letter may be appealed to the Board of Correction by the affected person.

3.  The affected person shall be advised that notice of the intent to appeal the removal must be given in writing, to the facility, to the Department and the Board of Correction.

416R



| | EFFECTIVE DATE **03/16/09** | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** | |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING   [X] YES   [ ] NO | PAGE **16** OF **17** PAGES |



## V.   PROCEDURES (cont.)

4.   After notice is filed, the appeal may be submitted and the Department, the facility and any affected person may submit to the Board of Correction for its consideration any additional relevant material.

5.   The Board of Correction or its designee, shall issue a written response to the appeal within fourteen (14) business days after receiving notice of the appeal.

## VI.   REFERENCE

Directive #1500R-A, entitled "STANDARD OPERATING PROCEDURE FOR RECEIPT, DISBURSEMENT AND ACCOUNTING OF INMATE CASH FUNDS", dated 11/10/97 (as amended).

## VII.   ATTACHMENTS

A.   Exhibit A - Standardized stamp for privileged mail addressed to an inmate who has been transferred to another facility within the Department or transferred outside the jurisdiction of the Department.

B.   Exhibit B - Standardized stamp for privileged mail for an inmate who has been discharged and there is no forwarding address, or in cases where the mail cannot be delivered to the inmate because of "insufficient information", addressee unknown" or "no forwarding address."

C.   Form #420A (English) and Form #420B (Spanish), REMOVAL OF NON-PERMISSIBLE ITEM(S) - INCOMING CORRESPONDENCE/PACKAGE.

1.   When it is necessary to use Form #420B (Spanish); the information entered shall also be in Spanish.  The corresponding Form #420A (English) shall be prepared and the information entered shall be in English.

2.   Prepare the form(s) in quadruplicate for the following distribution:

a.   Original copy to inmate's folder;

b.   One (1) copy to inmate;

c.   One (1) copy to Board of Correction;

d.   One (1) copy to the General Counsel of this Department.

416R

| | EFFECTIVE DATE **03/16/09** | SUBJECT | |
|---|---|---|---|
|  | CLASSIFICATION # **4001R-B** | **INMATE CORRESPONDENCE** |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING   [X] YES   [ ] NO | PAGE **17** OF **17** PAGES |

## VII.   ATTACHMENTS (cont.)

   3.   Clearance for administrative purposes and distribution shall be made by the office of the facility Commanding Officer.

   D.   Form #4001A, WARDEN'S WRITTEN ORDER TO READ OUTGOING INMATE CORRESPONDENCE.

   E.   Form #4001B, WARDEN'S WRITTEN ORDER TO READ INCOMING INMATE CORRESPONDENCE.

   F.   Form #4001C, LIST OF ITEMS PERMITTED TO BE RECEIVED THROUGH THE MAIL.

## VIII.   SUPERSEDES

Directive #4001R-A, entitled "INMATE CORRESPONDENCE", dated 06/16/08.

EXHIBIT A               **ATTACHMENT A**

THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION

FORWARD TO: _____

_____

_____

_____

FOR OFFICIAL USE

DATE RECEIVED: _____

DATE FORWARDED: _____

FORWARDING FACILITY: _____

FORWARDED BY: _____

(BOLD PRINT)

<u>EXHIBIT B</u>         **ATTACHMENT B**

---

### THE CITY OF NEW YORK
### DEPARTMENT OF CORRECTION

RETURN TO SENDER

CHECK THE APPROPRIATE BOX

☐ NO FORWARDING ADDRESS

☐ ADDRESSEE UNKNOWN

☐ UNDELIVERABLE - INSUFFICIENT INFORMATION

---

FOR OFFICIAL USE

DATE RECEIVED:_____

DATE RETURNED:_____

RETURNING FACILITY:_____

RETURNED BY:_____

(BOLD PRINT)

**ATTACHMENT C**



| **CITY OF NEW YORK** | Form : #420A |
|---|---|
| **DEPARTMENT OF CORRECTION** | Rev. : 06/21/05 |
| **REMOVAL OF NON-PERMISSIBLE ITEM(S)** **INCOMING CORRESPONDENCE/PACKAGE** | Ref. : 4002R-A |



| FACILITY: | DATE: | Check Where Applicable: | ☐ Correspondence ☐ Package |
|---|---|---|---|

| Inmate's Name: | Number: | Location: |
|---|---|---|

The following item(s) were found in your incoming ☐ correspondence ☐ package and are prohibited by Institutional and/or Department of Correction regulations:

_____

_____

_____

_____

_____

_____

_____

_____

These item(s) were sent to you by:

| Sender's Name: | Sender's Address: |
|---|---|

These item(s) may be returned to the sender at your expense, donated to a charitable organization or destroyed. Please check your choice:

**Return** ☐     **Donate** ☐     **Destroy** ☐

| Inmate's Signature: | Date: |
|---|---|
| Officer's Signature: | Date: |

Appeal:
1. You may give notice in writing to the Department of Correction (Facility Commanding Officer) and to the Board of Correction (51 Chambers Street, New York, N.Y. 10007), of your intention to appeal the removal of the item(s).

2. You and the Department of Correction may submit to the Board of Correction any relevant material in addition to this written determination.

3. The Board of Correction, or its designee, will issue a written response on your appeal within fourteen (14) days after receiving notice of your requested review.

| DISTRIBUTION: Original copy to inmate's folder. One (1) copy to inmate. One (1) copy to Board of Correction. One (1) copy to General Counsel. | INSTRUCTIONS: Clearance and distribution shall be made by the Office of the Facility Commanding Officer. |
|---|---|

(Prepare in quadruplicate)

**ATTACHMENT C**



| CITY OF NEW YORK | Form : #420B |
|---|---|
| **DEPARTMENT OF CORRECTION** | Rev. : 06/21/05 |
| REMOVIMIENTO DE ARTICULOS NO PERMITIDOS CORESPONDENCIA/PAQUETE RECIVIDOS | Ref. : 4002R-A |

| FACILIDAD: | FECHA: | Subrayar la palabra apropiada: ☐ Corespondencia ☐ Paquete |
|---|---|---|

| Nombre del Recluso: | Numero: | Celda: |
|---|---|---|

El (Los) siguente articulo(s) fue(ron) encontrado en su ☐ corespondencia ☐ paquete y está prohibido por las reglas Instituticionales y por El Departamento de Correcion:

_____

_____

_____

_____

_____

_____

_____

_____

El (Los) articulo(s) fue(ron) mandado por:

| Nombre: | Dirección: |
|---|---|

El (Los) articulo(s) puede(n) ser devuelto(s) a la persona quien lo mandó por el gasto suyo, donad a una organizacion de caridad o destruidos.
Marque la palabra apropiada:

**Devuelto** ☐          **Donarlo** ☐          **Destruirlo** ☐

| Firma del Recluso: | Fecha: |
|---|---|
| Firma del Oficial: | Fecha: |

Apelacion:  1.  Usted puede darle aviso por escrito al Departamento de Corrección (al Comandante de la Institución) y a la Junta de Corrección (51 Chambers Street, New York, N.Y. 10007), de su intencion de apelar la mudanza del articulo(s).

2.  Usted y el Departamento de Corrección pueden someter a la Junta de Corrección cualquier material pertinente además de esta determinacion escrita.

3.  La Junta de Corrección o su designado dará una repuesta escrita sobre su apelación dentro de catorce (14) dias del recibido del aviso para revisar.

| DISTRIBUCION: Original al record del recluso. Una (1) copia al recluso. Una (1) copia para Board of Correction. Una (1) copia para General Counsel. | INSTRUCCIONES: La Oficina del Comandante de la Institucion se hara cargo de la authorizacion y distribucion de la forma. |
|---|---|

(prepare cuatro copias)



| CORRECTION DEPARTMENT<br>CITY OF NEW YORK | PREPARE THIS FORM<br>IN QUADRUPLICATE<br>Form # 4001A<br>Rev.: XX/XX/08<br>Ref.: Dir. #4001R-B |  |
| --- | --- | --- |

## WARDEN'S WRITTEN ORDER TO READ
## OUTGOING INMATE CORRESPONDENCE

### SECTION 1 - AUTHORIZATION

**NAME OF FACILITY:**                                                            **DATE:**

| INMATE SENDING CORRESPONDENCE | NAME: | B & C #: | NYSID #: |
| --- | --- | --- | --- |

| INTENDED MAIL RECIPIENT | NAME:<br>ADDRESS: |
| --- | --- |

*Warden's justification for reading, (to include specific facts and reasons supporting the determination):*

| WARDEN'S NAME: | SIGNATURE: | DATE OF DETERMINATION: |
| --- | --- | --- |

### SECTION 2 – INMATE NOTIFICATION

| I CERTIFY THAT I HAVE RECEIVED A COPY OF THIS ORDER | SIGNATURE OF INMATE: | B & C # | DATE: | TIME: |
| --- | --- | --- | --- | --- |
| Served by (Print Name, Rank and Shield #): | | Signature of Server: | | |
| Refused to Sign for Notice:  ☐ Yes  ☐ No | | Witnessed by: | | |

### SECTION 3 – READER OF CORRESPONDENCE

| MEMBER READING CORRESPONDENCE | NAME: | RANK: | SHIELD: |
| --- | --- | --- | --- |
| | SIGNATURE: | DATE READ: | |

| DISTRIBUTION | ORIGINAL – FACILITY FILES          COPY – INMATE FOLDER<br>COPY – INMATE                       COPY – FACILITY OPERATIONS |
| --- | --- |

ATTACHMENT E



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

PREPARE THIS FORM
IN QUINTUPLICATE

Form # 4001B
Rev.: XX/XX/08
Ref.: Dir. #4001R-B

## WARDEN'S WRITTEN ORDER TO READ
## INCOMING INMATE CORRESPONDENCE



### SECTION 1 - AUTHORIZATION

| NAME OF FACILITY: | DATE CORRESPONDENCE RECEIVED: |
|---|---|

| INTENDED INMATE RECIPIENT | NAME: | B & C #: | NYSID #: |
|---|---|---|---|

| SENDER OF CORRESPONDENCE | NAME: |
|---|---|
| | ADDRESS: |

*Warden's justification for reading, (to include specific facts and reasons supporting the determination):*

| WARDEN'S NAME: | SIGNATURE: | DATE OF DETERMINATION: |
|---|---|---|

### SECTION 2 – INMATE NOTIFICATION

| I CERTIFY THAT I HAVE RECEIVED A COPY OF THIS ORDER | SIGNATURE OF INMATE: | B & C # | DATE: | TIME: |
|---|---|---|---|---|
| Served by (Print Name, Rank and Shield #): | | Signature of Server: | | |
| Refused to Sign for Notice: ☐ Yes ☐ No | | Witnessed by: | | |

### SECTION 3 – SENDER NOTIFICATION

| NOTIFICATION TO SENDER | ☐ COPY OF THIS NOTICE WAS SENT TO RETURN ADDRESS |
|---|---|
| | ☐ CORRESPONDENCE DID NOT HAVE RETURN ADDRESS |
| | STAFF'S NAME: | DATE SENT: |
| | SIGNATURE | RANK: | SHIELD: |

### SECTION 4 – READER OF CORRESPONDENCE

| MEMBER READING CORRESPONDENCE | NAME: | RANK: | SHIELD: |
|---|---|---|---|
| | SIGNATURE: | DATE READ: |

| DISTRIBUTION | ORIGINAL -- FACILITY FILES |
|---|---|
| | COPY – INMATE FOLDER    COPY – INMATE |
| | COPY – SENDER           COPY -- FACILITY OPERATIONS |

ATTACHMENT F



| THE CITY OF NEW YORK DEPARTMENT OF CORRECTION | Form: #4001C |
|---|---|
| | Eff.: 06/16/08 |
| LIST OF ITEMS PERMITTED TO BE RECEIVED THROUGH THE MAIL | Ref.: Dir. #4001R-A |



**THE FOLLOWING ITEMS ARE PERMITTED TO BE RECEIVED THROUGH THE MAIL AS OUTLINED IN DIRECTIVE # 4001R-A, INMATE CORRESPONDENCE:**

| ITEMS |
|---|
| LETTERS |
| PRINTED MATERIAL |
| PHOTOGRAPHS (INSTANT PHOTOGRAPHS ARE PROHIBITED) |
| PICTURES |
| MONEY ORDERS |
| CASHIER'S/TELLER'S CHECKS |

**\*\*CASH WILL NOT BE ACCEPTED**

EXHIBIT- E

ATTACHMENT - C          *Inmate copy*



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM



| | | |
|---|---|---|
| | Form.: 7102R | |
| | Eff.: 9/14/18 | |
| | Ref.: Dir. 3376R-A | |

| Grievance Reference #:<br>200469/T113/19 | Date Filed:<br>03/22/19 | Facility:<br>MDC |
|---|---|---|
| Inmate Name:<br>WILLIAMS, ALEXANDER | Book and Case#:<br>141-18-01632 | Category:<br>#4- MAIL |

From OCGS Inmate Statement Form, print or type short description of grievance:

On the above date (03/20/19)
I was informed by Security Captain Mathis that I did have incoming mail but would not be given it until it was logged as of 7 pm I still did not received mail. There is no policy that can be issued to start that NYC DoCs must keep a track record of who is writing me and who I write. I am a pre-detainee and keeping record of my mail.

SEE ATTACHED DOCUMENTS

Action Requested by Inmate: Incentive censorship of mail, give me notice of why mail is censored and answer grievance.

## STEP 1: FORMAL RESOLUTION

Check one box: ☑ Grievance   ☐ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

On 03/25/19 The OCGS has reviewed your statement and was in contact with MDC Security to learn that based on your Court Order and The Departments Guidelines in the handling of inmates Correspondence although there isn't any listed restrictions to whom you can send or receive mail/correspondence the information in your court order specifies a risk of compromising the security and/or the safety of any person or persons outside the facility.

Based on these findings the reading of your Correspondence/Mail is deemed appropriate.

## CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution   ☐ No   ☒ I request to appeal the resolution of this grievance to the Commanding officer.

Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies.

| Inmate's Signature: | Date:<br>3/26/19 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: | Date:<br>3/26/19 |
|---|---|

ATTACHMENT-B-1

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: Alexander Williams | Book & Case #: 1411801632 | NYSID #: |
|---|---|---|

| Facility: MDC | Housing Area: 9 North | Date of Incident: 03/20/19 | Date Submitted: 03/20/19 |
|---|---|---|---|

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** on the above date I was informed by security Captain Mathes that I did have incoming mail but would not be given it until it was logged as of 7 pm I still did not receive mail there is no policy that can be issued to state that NYCDOCS must keep a track record of who is sending me and who I write to. I am a pre-detainee and keeping record of my mail

**Action Requested by Inmate:** discontinue censorship of mail, give me notice of why mail is censored and answer grievance

**Please read below and check the correct box:**

Do you agree to have your statement edited for clarification by OCGS staff?  Yes ☐  No ☑

Do you need the OCGS staff to write the grievance for you?  Yes ☐  No ☑

Have you filed this grievance with a court or other agency?  Yes ☐  No ☑

Did you require the assistance of an interpreter?  Yes ☐  No ☑

| Inmate's Signature: Alexander Williams | Date of Signature: 03/21/19 |
|---|---|

### FOR DOC OFFICE USE ONLY

**OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.**

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR.

2019 MAR 22 A 10: 36
RECEIVED AS
NYC DEPT CORRECTION
CONSTITUENT & GRIEVANCE
TIME STAMP

| Grievance Reference #: T/13/19 /200469 | Category: #4 Correspondence/Mail |
|---|---|
| Office of Constituent and Grievances Services Coordinator/Officer Signature: | |

EXHIBIT - F



NEW YORK CITY DEPARTMENT OF CORRECTION
Cynthia Brann, Commissione

Laura S. Mello
Senior Counsel | FOIL Office
75-20 Astoria Boulevard
East Elmhurst, New York 11370

718-546-0952
Fax 718-278-6001

August 23, 2019

Alexander Williams
141-18-01632
MDC
125 White Street
New York, New York 10038

    Re: FOIL Request
      FOIL #: 2020FR0337

Dear Mr. Williams:

    This is a final response to your request for records (copy enclosed) made pursuant to the New York State Freedom of Information Law. Enclosed please find MDC's 9 North logbook and the inmate withdrawal forms you requested.

    Please be advised that personally identifying information pertaining to other inmates has been withheld because disclosure of such would constitute an unwarranted invasion of privacy pursuant to the New York State Public Officers Law, Section 87(2)(b).

    Pursuant to the New York State Public Officers Law Section 89(4), you may, within thirty (30) days of receiving this letter, submit an appeal for any redacted or withheld information to Lisa Richardson, Deputy General Counsel / Records Appeal Officer, at the above address.

Very truly yours,

Avninder Ajula
Assistant General Counsel

5 SEP 2019 AM11:48

Enclosure
AA/amt

Tuesday July 2nd 2019 0700 X 1531 fair          343

"O martinez" Area on Post
as writer has given back
inmate williams, alexander
411891632 back 5 pieces of
certified mail addressed to
hps. as per said inmates request
other addressed to michael collemo
4 court street suite 906 Brooklyn
NY. 11201 has been sent out

by J. Austro regards 7 coll A. Williams 141-18-01682
as C.A. w/ C.O. Jo. Ramirez