UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER WILLIAMS JR.,

                              Plaintiff,

              - v -                                                      19-cv-03347-LJL-JLC

THE CITY OF NEW YORK, ET AL.,

                              Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF MOTIONS IN LIMINE**


Daniel J. Beller
Moses Silverman
Robert J. O'Loughlin
Hillary S. Black
Shimeng Xu
Christie Ho Lam Wan
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
dbeller@paulweiss.com
msilverman@paulweiss.com
roloughlin@paulweiss.com
hblack@paulweiss.com
sxu@paulweiss.com
cwan@paulweiss.com

*Attorneys for Plaintiff
Alexander Williams*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ............................................................................................................2

ARGUMENT ..................................................................................................................4

I.      Defendants Have Waived the Qualified Immunity Defense....................................5

II.     Defendants Are Precluded from Introducing Testimony of New Witnesses
        Concerning the Cell 11 Incident, and Mr. Williams Is Entitled to an Adverse
        Inference Instruction for Defendants' Failure to Produce Witnesses to the
        Incident. ..........................................................................................................6

        A.      Under the Court's Explicit Instructions, Defendants Are Precluded from
                Presenting any Purported Witness to the Cell 11 Incident Besides Captain
                Doliscar—Who Was Not an Eyewitness...................................................6

        B.      Mr. Williams is Entitled to a Missing Witness Instruction Due to
                Defendants' Failure to Offer Any Eyewitness to the Cell 11 Incident. ...................7

III.    Mr. Williams's Testimony Regarding the Cell 11 Incident Should Be Admitted As
        Non-Hearsay Evidence of a Subsequent Similar Act Probative of Defendant
        Mathis's Retaliatory Intent. ...............................................................................9

        A.      The Cell 11 Incident is Admissible Under Rule 404 Because It Is
                Sufficiently Similar to the Incidents of Retaliation at Issue in This Case. ............10

        B.      Mr. Williams's Testimony About the Cell 11 Incident Is Admissible
                Under Rule 403. ..........................................................................................12

        C.      Mr. Williams's Testimony About the Officers' Statements During the Cell
                11 Incident is Admissible as Non-Hearsay. ..............................................13

IV.     Mr. Williams's and Mr. Ceruti's Convictions and Arrests Should Be Excluded. ..............13

        A.      Mr. Williams's and Mr. Ceruti's Criminal Histories .............................13

        B.      Mr. Williams's and Mr. Ceruti's Prior Convictions Should Be Excluded
                for Impeachment Purposes and from Defendants' Case in Chief..........................14

                1.      Mr. Williams's Drug and Bail-Jumping Convictions Should Be
                        Excluded. ......................................................................................15

i

**TABLE OF CONTENTS**
**(Continued)**

Page

2.     Mr. Ceruti's Conviction for Conspiracy and Trafficking Stolen
       Merchandise, for Which He Is Currently Incarcerated, Should Be
       Excluded. ...................................................................................17

C.     Mr. Ceruti's More-Than-Ten-Year-Old Convictions Are  Inadmissible..............18

D.     Mr. Williams's and Mr. Ceruti's Arrests That Have Not Led to
       Convictions Should Be Excluded. ......................................................19

V.   Evidence of the Reasons for Mr. Williams's and Mr. Ceruti's Lockdown Orders
     Should Be Excluded, as Well as the Lockdown Orders Themselves. ...............................20

VI.  Mr. Williams's Grievances and Court Filings are Admissible as Non-Hearsay. .................22

VII. The Videotaped Deposition Testimony of Samuel Ceruti is Admissible Because
     Defendants were Represented at the Deposition, Mr. Ceruti is Incarcerated Over
     100 Miles from Court, and the Testimony is Not Excludable as Hearsay.........................23

CONCLUSION.......................................................................................25

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States* v. *Aminy*,
15 F.3d 258 (2d Cir.1994)..............................................................................10

*AmTrust N. Am., Inc.* v. *KF&B, Inc.*,
2020 WL 5552522 (S.D.N.Y. Sept. 16, 2020)..............................................24, 25

*Aristocrat Leisure Ltd.* v. *Deutsche Bank Tr. Co. Americas*,
2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009)......................................................24

*United States* v. *Bellomo*,
176 F.3d 580 (2d Cir. 1999)............................................................................13

*Blissett* v. *Coughlin*,
66 F.3d 531 (2d Cir. 1995)................................................................................5

*Boykin* v. *W. Express, Inc.*, 2016 WL 8710481, at *7 n.2 (S.D.N.Y. Feb. 5, 2016).....................19

*Brown* v. *Cornell*,
2021 WL 2711511 (N.D.N.Y. July 1, 2021) .........................................................19

*United States* v. *Caccia*,
122 F.3d 136 (2d Cir. 1997)...........................................................................8, 9

*Chevron Corp.* v. *Donziger*,
974 F. Supp. 2d 362 (S.D.N.Y. 2014)....................................................................8

*City of Almaty, Kazakhstan* v. *Ablyazov*,
2022 WL 16901995 (S.D.N.Y. Nov. 11, 2022)...................................16, 17, 19, 21

*Corning* v. *MTD Prods, Inc.*,
2018 WL 1365822 (W.D. Wash. Mar. 16, 2018) ..................................................16

*Daniels* v. *Loizzo*,
986 F. Supp. 245 (S.D.N.Y. 1997) ...........................................................16, 19, 20

*Doe* v. *Lima*,
2020 WL 728813 (S.D.N.Y. Feb. 13, 2020)....................................................18, 19

*United States* v. *Dupree*,
706 F.3d 131 (2d Cir. 2013)............................................................................12

*Eng* v. *Scully*,
146 F.R.D. 74 80 (S.D.N.Y. 1993) ..................................................................11, 19

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*United States* v. *Estrada*,
    430 F.3d 606 (2d Cir. 2005)...........................................................................15

*United States* v. *Germosen*,
    139 F.3d 120 (2d Cir. 1998)...........................................................................11

*Gill* v. *Frawley*,
    2006 WL 1742738 (N.D.N.Y. June 22, 2006)....................................................23

*Granger* v. *City of Watertown*,
    2023 WL 418068 (N.D.N.Y. Jan. 26, 2023).....................................................15

*United States* v. *Int'l Bus. Machines Corp.*,
    90 F.R.D. 377 (S.D.N.Y. 1981) ......................................................................25

*Ismail* v. *Cohen*,
    706 F. Supp. 243 (S.D.N.Y. 1989) ..................................................................12

*United States* v. *Kuthuru*,
    665 F. App'x 34 (2d Cir. 2016) ......................................................................13

*L-3 Commc'ns Corp.* v. *OSI Sys., Inc.*,
    2006 WL 988143 (S.D.N.Y. Apr. 13, 2006).......................................................25

*Lombardo* v. *Stone*,
    2002 WL 113913 (S.D.N.Y. Jan. 29, 2002) ......................................................10

*Marshall* v. *Port Auth. of New York & New Jersey*,
    2022 WL 17491006 (S.D.N.Y. Dec. 5, 2022) ..........................................15, 16, 20

*McCardle* v. *Haddad*,
    131 F.3d 43 (2d Cir. 1997)..............................................................................6

*McLeod* v. *Llano*,
    2021 WL 1669732 (E.D.N.Y. Apr. 28, 2021) ....................................................19

*United States* v. *Mercado*,
    573 F.3d 138 (2d Cir. 2009).............................................................................12

*Mitchell* v. *Briseno*,
    2004 WL 7337416 (D.N.M. Dec. 3, 2004)........................................................24

*United States* v. *Payton*,
    159 F.3d 49 (2d Cir. 1998)..............................................................................18

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Perez* v. *Greiner*,
    2003 WL 22137013 (S.D.N.Y. Sept. 15, 2003)......................................................................9

*United States* v. *Peterson*,
    808 F.2d 969 (2d Cir. 1987)......................................................................10

*United States* v. *Ramirez*,
    609 F.3d 495 (2d Cir. 2010)......................................................................19

*People* v. *Ramos*,
    971 N.E.2d 369 (N.Y. 2012)......................................................................17

*United States* v. *Scali*,
    2018 WL 461441 (S.D.N.Y. Jan. 18, 2018) ......................................................................22

*United States* v. *Segui*,
    2019 WL 8587291 (E.D.N.Y. Dec. 2, 2019) ......................................................................11

*Shannon* v. *Koehler*,
    2011 WL 10483366 (N.D. Iowa Oct. 19, 2011) ......................................................................21

*Tardif* v. *City of New York*,
    2022 WL 2292049 (S.D.N.Y. June 24, 2022) ......................................................................18

*Thompson* v. *Spota*,
    2022 WL 17253464 (E.D.N.Y. Nov. 28, 2022)......................................................................21

*Tirado* v. *Shutt*,
    2015 WL 4476027 (S.D.N.Y. Feb. 23, 2015)......................................................................22

*Ueland* v. *United States*,
    291 F.3d 993 (7th Cir. 2002) ......................................................................25

*Vasquez* v. *Cnty. of Rockland*,
    2020 WL 883514 (S.D.N.Y. Feb. 24, 2020)......................................................................10

*United States* v. *Vasquez*,
    840 F. Supp. 2d 564 (E.D.N.Y. 2011) ......................................................................15, 16

**Statutes**

42 U.S.C. § 1983......................................................................1, 10

N.Y. Penal Law §§ 105.00, 05, 10, 13, 15, 17, 20......................................................................17

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 32(a) ...................................................................................................23, 24, 25

Fed. R. Evid. 403 .................................................................................................... *passim*

Fed. R. Evid. 404 ...................................................................................................10, 15, 17

Fed. R. Evid. 608(b) .................................................................................................19, 21

Fed. R. Evid. 609(a) ...........................................................................................................14

Fed. R. Evid. 609(b) .................................................................................................18, 19

Fed. R. Evid. 801 ...........................................................................................................22, 23

Fed. R. Evid. 802 ...........................................................................................................23, 25

Fed. R. Evid. 803 ...........................................................................................................13, 22

Fed. R. Evid. 804 ...................................................................................................................25

U.S. Const. amend. I .................................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiff Alexander Williams has spent the last five years in a prison cell awaiting trial on a criminal charge.   In January 2019, he was detained at the Manhattan Detention Complex ("MDC"), where he was subject to a "lockdown order" that severely limited his contact with the outside world.   To communicate with his family, Mr. Williams entirely relied on the mail.   When, numerous times, Department of Correction ("DOC") personnel impeded Mr. Williams's use of the mail, Mr. Williams sought recourse through the prison grievance system and, at times, the courts.

From March through December 2019, Defendants Captain Bernard Mathis and Correction Officer Jakar Wells retaliated against Mr. Williams for exercising his First Amendment right to seek relief through these systems.   Within days of Mr. Williams's submission of a grievance, Defendants threatened Mr. Williams or confiscated legal documents from his cell.   Another prisoner under lockdown order on Mr. Williams's unit, Samuel Ceruti, witnessed and testified to some of these incidents.   Following Mr. Williams's initiation in April 2019 of this lawsuit under 42 U.S.C. § 1983, spurts of docket activity prompted Defendants to perpetrate similar retaliatory acts.   Indeed, as recently as July 28, 2022, officers under the supervision and control of Defendant Mathis strip searched Mr. Williams and threatened to do so again unless Mr. Williams dropped the case.

Mr. Williams now moves *in limine* on several grounds.   First, Defendants should be precluded from raising a qualified immunity defense because they failed to develop it adequately during pretrial proceedings.   Second, Defendants should be precluded from introducing not-previously-identified witnesses to testify about the July 28, 2022 search and threats, and a missing-witness adverse inference instruction should be read to the jury because of Defendants' failure to produce witnesses, uniquely under their control, to that incident when afforded the opportunity to do so.   Third, Mr. Williams's testimony regarding the July 28, 2022 incident should be admitted

as evidence of a subsequent similar act of Defendant Mathis that is probative of his retaliatory intent.   Fourth, the criminal histories of Mr. Williams and Mr. Ceruti—elicited at their depositions—should be excluded because they are not probative of credibility and are highly prejudicial.   Fifth, for the same reasons, Mr. Williams's and Mr. Ceruti's lockdown orders, and the bases for them, should be excluded.   Sixth, Mr. Williams's grievances and court papers should be admitted as non-hearsay.   Finally, Mr. Ceruti's deposition testimony should be admitted at trial because Mr. Ceruti is incarcerated more than 100 miles from the courthouse, Defendants were represented at his deposition, and the testimony is not excludable as hearsay.

## BACKGROUND

Following his arrest in 2018 on a charge that, five years later, has yet to proceed to trial, Mr. Williams remains in DOC custody in what is effectively solitary confinement.   In January 2019, a New York Supreme Court justice issued a "lockdown order," which required Mr. Williams "to be housed in a highly secure area" separate from other inmates and barred him from having visits and phone calls with anyone other than his criminal defense team.   Ex. A; Ex. B.[1]   Pursuant to the order, Mr. Williams was housed in Unit 9 North at MDC (the lockdown unit), where he was locked in his cell for approximately 23 hours per day with one hour for recreation.   Ex. C at 28:14–15, 35:16–18.   His only permitted means of communicating with his family has been the mail.

Shortly after Mr. Williams's arrival at Unit 9 North, Defendants began retaliating against him for exercising his First Amendment rights to file prison grievances[2] and lawsuits—the sole claims for trial in this case.   Between March 20 and March 25, 2019, Mr. Williams filed at least

---

[1] Citations to "Ex. __" refer to the exhibits to the Declaration of Hillary S. Black filed in support of this motion.

[2] For purposes of this motion, the term "grievances" also encompasses any inmate "statement forms" Mr. Williams prepared as part of the grievance process.

five grievances against Defendant Mathis and other correction officers related to the handling of his mail, his restrictions on being able to call his criminal defense attorney, and his ability to call the prison grievance hotline ("311"). *See* Exs. J–O.

On March 26, 2019, Defendant Mathis and another officer stood in front of Mr. Williams's cell, and Captain Mathis said that if Mr. Williams "kept bitching about his mail that he would stop all of his mail." Ex. R (at internal Ex. F). A few days later, on March 28 or 29, Defendants and other officers searched Mr. Williams's cell and confiscated "legal mail," "paperwork," and "court documents." Ex. E at 29:13–23. Another prisoner housed in Unit 9 North pursuant to a lockdown order, Samuel Ceruti, witnessed these incidents and described them in a declaration, and in his deposition in this case. *See id.* at 24:25–31:21; Ex. F.

Between September 5 and September 18, 2019, Mr. Williams filed five grievances alleging interference with his mail and one grievance concerning a cell search after which Mr. Williams discovered certain documents were missing. *See* Exs. S–X. On September 20, Defendant Wells and another officer conducted another search of Mr. Williams's cell, after which Mr. Williams realized that his legal documents had been taken. Ex. Y.

On December 13, 2019, Defendant Mathis filed an answer in this case. Ex. BB. On December 16, 2019, the Court ordered an initial conference. Ex. CC. Several days later, Defendant Mathis threatened Mr. Williams that "if he didn't take him out" of his civil complaint in this case, Mathis "was going to make his [st]ay at M.D.C. hard." Ex. D at 46:8–15. Defendant Mathis put his ring finger up to his lips, signaling that Mr. Williams should be quiet. Ex. DD. Shortly thereafter, on December 26, Mr. Williams filed a response to Defendants' motion to dismiss this case, writing that he wanted to dismiss Defendant Mathis from the case. *See* Ex. EE.

3

In late 2020, Mr. Williams was transferred to Unit 2A of the George R. Vierno Center ("GRVC") on Rikers Island—where Defendant Mathis now works.  On July 28, 2022, officers searched Unit 2A.  During that search, three officers from a "Strategic Response Team" came to Mr. Williams's cell on the second floor of the unit (Cell 11); strip-searched Mr. Williams; and stated, "you better drop your charges against my captain," "this is going to become the norm if you don't do what my partner told you to do," and "Mathis is a captain of the Strategic Response team" (the "Cell 11 Incident").  Ex. GG (at internal Exhibit A).

In January 2021, Mr. Williams—*pro se* at the time—was deposed.  On January 14, 2022, Magistrate Judge Cott issued a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment, recommending denial of summary judgment on Mr. Williams's First Amendment retaliation claim against Defendants and a grant of summary judgment to Defendants on all other claims.  R. & R. at 61, Dkt. 186.  Judge Cott observed that Defendants had waived the qualified immunity defense as to Mr. Williams's retaliation claims.  *Id.* at 53 n.15.  On February 14, this Court adopted the R&R in its entirety.  Order, Dkt. 188.  On January 27, 2023, Mr. Ceruti was deposed.  Discovery is now closed, and trial is scheduled to begin May 1.

## ARGUMENT

Mr. Williams moves *in limine* to: (i) preclude Defendants from raising the qualified immunity defense, which they have waived; (ii) preclude Defendants from introducing not-previously-identified witnesses to testify about the Cell 11 Incident, and seek a missing-witness adverse inference instruction for Defendants' failure to produce eyewitnesses to the Cell 11 Incident; (iii) admit Mr. Williams's testimony regarding the Cell 11 Incident as evidence of a subsequent similar act of Defendant Mathis probative of retaliatory intent; (iv) preclude the introduction at trial of Mr. Williams's and Mr. Ceruti's criminal histories; (v) preclude the introduction at trial of the reasons for Mr. Williams's and Mr. Ceruti's lockdown orders and those

orders themselves; (vi) admit Mr. Williams's grievances and court papers as non-hearsay; and (vii) admit Mr. Ceruti's testimony given via a previously recorded video deposition.

## I.       Defendants Have Waived the Qualified Immunity Defense.

"[B]ecause qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings . . . ." *Blissett* v. *Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995). Defendants have not met this burden, having failed to develop the record supporting this defense during discovery, and raising the defense as to Mr. Williams's retaliation claims only in a footnote to their brief in support of summary judgment. Defs.' Mem. Supp. Summ. J. at 26 n.23, Dkt. 161. As Magistrate Judge Cott observed in his R&R—which this Court adopted in full, Order, Dkt. 188— defendants have waived the defense by relegating it to a footnote. R. & R. at 53 n.15, Dkt. 186.

This finding of waiver is warranted here because "courts in this Circuit have made clear that arguments in footnotes are waived." *Id.* (first quoting *In re MF Global Holdings Ltd. Inv. Litig.*, No. 11-CV-7866 (VM), 2014 WL 8184606, at *2 (S.D.N.Y. Mar. 11, 2014), then citing *Skibniewski* v. *Commissioner*, 2020 WL 5425343, at *3, n.1 (W.D.N.Y. Sept. 10, 2020)). Moreover, the defense was inadequate on its own merits. In their footnote, Defendants argued that Defendant Mathis and certain dismissed Defendants were "entitled to qualified immunity for Plaintiff's retaliation claims because . . . the status of the law supports that the conduct alleged by Plaintiff does not constitute adverse actions, and therefore, was objectively reasonable." Defs.' Mem. Supp. Summ. J. at 26 n.23, Dkt. 161. In essence, Defendants argued there was no constitutional violation. Such arguments are insufficient, as the failure to "articulate[] a qualified immunity defense distinct from the[] contention . . . that no constitutional violation occurred" constitutes a failure to raise the qualified immunity defense. *Blissett*, 66 F.3d at 539.

5

It is no response that Defendants adequately raised their qualified immunity defense with respect to certain other of Mr. Williams's claims.  *See* R. & R. at 35–36, Dkt. 186 (granting qualified immunity to dismissed defendant Alexander on Mr. Williams' First Amendment mail interference claim).  The Second Circuit has made clear that asserting an adequate qualified immunity defense about one claim does not preserve the defense for another claim.  *McCardle* v. *Haddad*, 131 F.3d 43, 52 (2d Cir. 1997) (holding that defendant's qualified immunity argument about plaintiff's illegal stop claim did not preserve qualified immunity defense for plaintiff's unlawful search claim).

Accordingly, Defendants have waived their qualified immunity defense by failing to develop it in pre-trial proceedings, and they should be precluded from presenting it at trial.

## II.   Defendants Are Precluded from Introducing Testimony of New Witnesses Concerning the Cell 11 Incident, and Mr. Williams Is Entitled to an Adverse Inference Instruction for Defendants' Failure to Produce Witnesses to the Incident.

### A.   Under the Court's Explicit Instructions, Defendants Are Precluded from Presenting any Purported Witness to the Cell 11 Incident Besides Captain Doliscar—Who Was Not an Eyewitness.

The Court addressed the Cell 11 Incident at a conference on August 4, 2022, when Mr. Williams's counsel requested permission to depose the officers who were involved in the Incident, but explained that there would be no way to identify these officers unless Defendants identified them.  Ex. II at 37:7–9 ("All we are asking for at this point is, Mr. Braun has the video, he spent time describing it, okay, share it with us. Give it to us tomorrow.  And we'll take depositions."); *id.* at 43:17–19 ("We are not going to be able to get the names of those officers who did what is alleged in the letter.").  Because the officers involved in the Cell 11 Incident threatened that similar incidents were "going to become the norm" if Mr. Williams did not "drop [his] charges against" Defendant Mathis, their depositions were *crucial* to Mr. Williams's ability

to obtain direct evidence that Defendant Mathis set in motion the Cell 11 Incident in yet another act of retaliation.  Ex. GG (at internal Exhibit A).

The Court granted Mr. Williams's request, articulating the following procedure:

> If the defendant wants to offer witnesses to testify to that incident, the defendant is going to list them on an amended [R]ule 26(a)(1) disclosure by Wednesday.  In which case, they will be made available for a very short deposition.  Or if they are not listed on the [R]ule 26(a)(1) disclosure, they will not be permitted to testify at trial.

Ex. II at 44:14–20.  The Court made clear that, should Defendants not take these steps, their witnesses "will not be permitted to testify at trial."  *Id.* at 44:19–20.[3]

Following these explicit instructions, Defendants identified only a single purported witness: Captain Lucie Doliscar.  Ex. JJ.  Under the Court's unambiguous instructions, therefore, Defendants are precluded from calling at trial any witness other than Captain Doliscar to testify about the Cell 11 Incident.

### B.  Mr. Williams is Entitled to a Missing Witness Instruction Due to Defendants' Failure to Offer Any Eyewitness to the Cell 11 Incident.

Despite having ready access to all of the officers who participated in the July 28, 2022 search of GRVC Unit 2A, including those who executed the Cell 11 Incident, the only witness Defendants identified—Captain Doliscar—*had no knowledge of what actually happened in and around Mr. Williams's cell*.  While Captain Doliscar was present during the search of GRVC Unit 2A, Captain Doliscar admitted during her deposition that she was nowhere near Mr. Williams's cell.  Ex. G at 113:6–114:21.  Specifically, while Mr. Williams's cell was on the second level of Unit 2A, Captain Doliscar, by her own admission, remained on the first level the entire time.  *Id.* at 114:18–21 ("Q. And you did not go up to the upper level throughout the entire search on that

---

[3] *See also* Ex. II at 41:19–25 ("I will give you time to either indicate to the plaintiff, make the election to either to be able to proffer witnesses in response to this incident, in which case you'll make them available for a short deposition.  Or if you do not designate them on what would be an amended [R]ule 26 disclosure, then you'll be precluded from calling them as witnesses at trial.").

day; is that correct?  A. Correct.").  She thus was in no position to observe or testify about the strip search of Mr. Williams and could not hear, much less testify about, whether or not officers made threats against Mr. Williams during the Cell 11 Incident.  *See id.* at 113:6–114:21.[4]  Because of Defendants' failure to produce an eyewitness to the Cell 11 Incident, Mr. Williams had no opportunity to elicit testimony establishing that Defendant Mathis set that Incident in motion to retaliate against Mr. Williams for pursuing this lawsuit.

Accordingly, because Defendants denied Mr. Williams access to the officers who perpetrated and personally observed the Cell 11 Incident, Mr. Williams is entitled to a "missing witness" instruction allowing the jury to draw the adverse inference that, had Defendants made such witnesses available for deposition, the testimony would have been favorable to Mr. Williams. Ex. H.  A "missing witness" instruction "permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party."  *United States* v. *Caccia*, 122 F.3d 136, 138 (2d Cir. 1997); *see also Chevron Corp.* v. *Donziger*, 974 F. Supp. 2d 362, 700 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016) ("Hence, where one party alone could produce a material witness but fails to do so, an inference that the testimony would favor the opposing party may be appropriate."). When these elements are met, an adverse inference instruction is warranted because "[i]n such circumstances, it is more likely than not that the testimony of an uncalled witness would have been unfavorable to the party with such control, and a jury may reasonably draw such an inference." *Caccia*, 122 F.3d at 138–39.

---

[4] Defendants indicated in the Joint Pretrial Order that they do not intend to call Captain Doliscar at trial.  *See* Proposed Joint Pretrial Order at 7, Dkt. 271.

Here, given Mr. Williams's intended testimony about the Cell 11 Incident—which is admissible for the reasons set forth below, *see infra* Section III—the rebuttal testimony of the officers who participated in the Cell 11 Incident would indisputably be material. These witnesses to the Cell 11 Incident are also "peculiarly within the control of" Defendants, as they are all correction officers and fellow employees of the DOC, and if called to testify likely would have been disposed toward giving testimony favorable to Defendants. *Caccia*, 122 F.3d at 138; *Perez* v. *Greiner*, 2003 WL 22137013, at *3 (S.D.N.Y. Sept. 15, 2003) ("[I]f a witness, although theoretically 'available' to both sides, is favorable to or under the influence of one party and hostile to the other, the witness is said to be in the 'control' of the party to whom he is favorably disposed, and an unfavorable inference may be drawn from the failure to call the witness." (quoting *People* v. *Gonzalez*, 68 N.Y.2d 424, 429 (1986))).

Furthermore, it would have been easy for Defendants to have identified the other officers who participated in the Cell 11 Incident, and thus to have determined which of them actually interacted with Mr. Williams. Not only could Defendants have asked Captain Doliscar for that information, but Defendants also produced a list of the officers involved in the Incident. *See* Ex. FF. Identifying the officers with actual, first-hand knowledge thus would have taken minimal effort. Defendants did not do so, despite the Court's explicit instructions. Mr. Williams is thus entitled to a missing witness instruction.

### III.    Mr. Williams's Testimony Regarding the Cell 11 Incident Should Be Admitted As Non-Hearsay Evidence of a Subsequent Similar Act Probative of Defendant Mathis's Retaliatory Intent.

While Defendant Mathis was not present during the Cell 11 Incident, he admitted at his deposition that he was, at the time, a captain of the Strategic Response Team on Rikers, and knew and supervised the officers who were involved in this Incident. Given the similarity of the threats made by the officers during the Cell 11 Incident and those made by Mathis in the incidents of

retaliation at issue in this case, the ongoing pattern of retaliation against Mr. Williams from his filing of this lawsuit in 2019 until today, and the low risk of prejudice to Defendants, Mr. Williams's testimony about the Cell 11 Incident is evidence of a subsequent similar act that is probative of Mathis's retaliatory intent, admissible under Rules 404 and 403, and is not hearsay.

### A.   The Cell 11 Incident is Admissible Under Rule 404 Because It Is Sufficiently Similar to the Incidents of Retaliation at Issue in This Case.

While Rule 404(b)(1) prohibits the introduction of evidence of another act to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Rule 404(b)(2) permits the admission of such evidence "for another purpose," including proving intent.  Fed. R. Evid. 404.  To be admissible under Rule 404(b)(2), evidence of a similar act must be "sufficiently similar" to the alleged conduct at issue, *United States* v. *Aminy*, 15 F.3d 258, 260 (2d Cir.1994) (internal quotations and citation omitted), and meet the Rule 403 balancing test, *United States* v. *Peterson*, 808 F.2d 969, 974 (2d Cir. 1987).

"Similar act evidence offered to show a defendant's intent is admissible in a section 1983 case because the defendant's intent is a relevant element of the constitutional tort." *Lombardo* v. *Stone*, 2002 WL 113913, at *6 (S.D.N.Y. Jan. 29, 2002).  Proof of Defendant Mathis's intent is central to this case, as Mr. Williams must show "some evidence of retaliatory intent" to support his retaliation claim.  *Vasquez* v. *Cnty. of Rockland*, 2020 WL 883514 at *7 (S.D.N.Y. Feb. 24, 2020).

Another act is sufficiently similar to the conduct at issue for purposes of Rule 404(b)(2) if the act would "permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence."  *Aminy*, 15 F.3d at 260 (quotation omitted).  And "[w]here the evidence [of similar acts] is offered for a proper purpose, it makes no difference whether the acts occurred before or after the events in issue." *Lombardo*, 2002 WL 113913, at *6;

*see also United States* v. *Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) ("The fact that the evidence involved a subsequent rather than prior act is of no moment."). Moreover, evidence of conduct by personnel over whom a defendant has supervisory responsibility can be probative of the supervising defendant's intent. *Eng* v. *Scully*, 146 F.R.D. 74 80 (S.D.N.Y. 1993).

The similarities between the Cell 11 Incident and the December 2019 incident at issue in this case are obvious. In the December 2019 incident, Defendant Mathis told Mr. Williams that he would "make his stay at MDC hard." Ex. D at 46:8–15. On July 28, 2022, officers that Defendant Mathis supervises strip searched Mr. Williams, and told him that such strip searches would "become the norm" if he did not abandon his claims against Defendant Mathis. Ex. GG (at internal Exhibit A). Both incidents involved verbal threats against Mr. Williams by Defendant Mathis or by personnel under his direct supervision that were triggered by Mr. Williams's lawful exercise of his First Amendment rights to name Mathis as a Defendant in this civil lawsuit, and were aimed at pressuring Mr. Williams into abandoning this lawsuit.

As the similarities between these incidents makes clear, Mr. Williams's testimony about the Cell 11 Incident would be probative of Defendant Mathis's retaliatory intent in December 2019 in at least two ways. First, this testimony would make it more probable that the threats levied against Mr. Williams in December 2019 were connected to Mr. Williams's inclusion of Defendant Mathis in this lawsuit. Second, this testimony would demonstrate Defendant Mathis's intent to execute (and indeed his actual execution of) his December 2019 threat to make Mr. Williams's period of incarceration "hard." *See United States* v. *Segui*, 2019 WL 8587291, at *13 (E.D.N.Y. Dec. 2, 2019) (admitting evidence of certain of defendant's Google searches because they bore "close parallels to the threats outlined in [defendant's]" threatening email at issue).

**B.**     **Mr. Williams's Testimony About the Cell 11 Incident Is Admissible Under Rule 403.**

Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The central inquiry under Rule 403 is whether the prejudice is "unfair," and not whether it is "harmful." *Ismail* v. *Cohen*, 706 F. Supp. 243, 253 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990) (internal quotations omitted).

As described above, Mr. Williams's testimony about the Cell 11 Incident is highly probative of Defendant Mathis's intent. And the probative value of this evidence is not outweighed, let alone "substantially outweighed," by any risk of unfairly prejudicing Defendants or misleading the jury. Given the close resemblance between the threats made during the Cell 11 Incident and those made by Defendant Mathis in December 2019, testimony about the Cell 11 Incident is no more inflammatory than other evidence that will be presented to the jury. *See United States* v. *Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (upholding admission of evidence under Rule 403 where challenged evidence was "not especially worse or shocking than the transactions charged"). This testimony is also unlikely to mislead the jury, cause undue delay, or waste time, as it will be limited to one incident that took place during a discrete period of time on a single day.

Finally, to the extent the Court is concerned about prejudice to Defendants, such risks "can often be cured by careful limiting instructions" stating that evidence of the incident is offered only to establish Mathis's retaliatory intent. *United States* v. *Dupree*, 706 F.3d 131, 139 (2d Cir. 2013); *see also Mercado*, 573 F.3d at 142 (upholding admission where court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"); *Ismail*, 706 F. Supp. at 253 ("The Second Circuit has repeatedly recognized the efficacy of"

cautionary instructions that "the proof was offered for the sole and limited purpose of establishing a wrongful intent or motive or a relevant pattern of conduct.").

### C. Mr. Williams's Testimony About the Officers' Statements During the Cell 11 Incident is Admissible as Non-Hearsay.

Finally, Mr. Williams's testimony as to the statements made by officers during the Cell 11 Incident is not excludable as hearsay.  Mr. Williams offers these statements "as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein," which is definitionally "not hearsay."  *United States* v. *Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999); *see also United States* v. *Kuthuru*, 665 F. App'x 34, 38 (2d Cir. 2016) ("'[T]hreats are verbal acts,' not hearsay." (quoting *United States* v. *Stratton*, 779 F.2d 820, 830 (2d Cir. 1985)). The statements also fall within an exception to the rule against hearsay for the independent reason that they are statements of the speakers' "then-existing state of mind"—namely, their "motive, intent, or plan" to carry out a threat on behalf of Defendant Mathis.  Fed. R. Evid. 803(3).

## IV.   Mr. Williams's and Mr. Ceruti's Convictions and Arrests Should Be Excluded.

### A.   Mr. Williams's and Mr. Ceruti's Criminal Histories

At his deposition, Mr. Williams testified that in 2012, he was tried on "drug charges," "jumped bail," and upon his return, pleaded guilty to the drug charges under the terms of a deal that "made it concurrent with the bail jumping."  Ex. B at 12:14–19, 70:22–71:5.[5]  Mr. Williams served four-and-a-half years in prison and was released in April 2016.  *Id.* at 71:18–19. Mr. Williams also testified at his deposition that he is currently "charged in a murder case," which is the basis for his detention at MDC and Rikers.  *Id*. at 12:11–12.[6]

---

[5] Mr. Williams testified that the underlying arrest was for drug "[p]ossession" and "sale" but did not testify as to the specific charge(s) to which he pleaded guilty.  Ex. C at 12:9–10.

[6] Mr. Williams reserves all rights to move to exclude any additional evidence of his prior arrests or convictions that Defendants may seek to introduce.

At his deposition, Mr. Ceruti testified that he is serving a 12-and-a-half- to 25-year prison sentence on a conviction for "conspiracy." Ex. E at 79:19–24. Mr. Ceruti pleaded guilty to conspiracy after he was arrested for murder, a charge that was dismissed. *Id.* at 103:13–104:8. In connection with the same events, Mr. Ceruti pleaded guilty to a federal count of trafficking stolen merchandise and received a "concurrent" sentence of "45 days' time served." *Id.* at 110:7–111:16. In 1997, Mr. Ceruti was convicted of first-degree robbery. *Id.* at 100:17–101:21. He served approximately 18 months in prison and was released in 1998. *Id.* at 102:3–7, 114:9–10. In 2003, Mr. Ceruti was convicted of second-degree robbery. *Id.* at 102:12–24. He was released from prison in March 2013. *Id.* at 114:17–23. In addition, Mr. Ceruti testified that he has been arrested for (i) trespassing and loitering—charges that were dismissed, *id.* at 106:22–107:7, 108:5–109:6, and (ii) an assault that occurred in jail[7], *id.* at 109:19–25.

### B. Mr. Williams's and Mr. Ceruti's Prior Convictions Should Be Excluded for Impeachment Purposes and from Defendants' Case in Chief.

In a civil case, evidence of a conviction "for a crime that, in the convicting jurisdiction, was punishable by . . . imprisonment for more than one year" may be admitted to impeach a witness's character for truthfulness, subject to Rule 403's protection that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403, 609(a)(1)(A). And "for any crime regardless of the punishment," the evidence must be admitted if the elements of the crime include "a dishonest act or false statement." Fed. R. Evid. 609(a)(2). In balancing a conviction's probative value against its prejudicial effect, this Court considers "(1) the impeachment value of the prior crime,

---

[7] Mr. Ceruti stated that the outcome of the assault arrest was "30 days' time served" but did not testify that he was convicted on the assault charge. Ex. E at 110:2–4.

(2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Marshall* v. *Port Auth. of New York & New Jersey*, 2022 WL 17491006, at *2 (S.D.N.Y. Dec. 5, 2022) (internal quotations omitted).[8]  This analysis requires determining whether the witness's "crimes have elements relevant to veracity and honesty." *United States* v. *Estrada*, 430 F.3d 606, 617 (2d Cir. 2005).

Evidence of "other crimes, wrongs, or acts" is inadmissible "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1).  Such evidence may instead "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2).  In any event, evidence may be excluded under Rule 403.  Under these Rules, the prior convictions of Mr. Williams and Mr. Ceruti are inadmissible for any purpose.

     *1.*     *Mr. Williams's Drug and Bail-Jumping Convictions Should Be Excluded.*

"[D]rug possession has little bearing on the veracity of [a witness] and thus, ranks fairly low on the impeachment value scale." *United States* v. *Vasquez*, 840 F. Supp. 2d 564, 568 (E.D.N.Y. 2011) (quotation omitted).  Similarly, the impeachment value of a drug-sale conviction is "moderately low on the scale of veracity-related crimes." *Id.* at 569–70; *see Granger* v. *City of Watertown*, 2023 WL 418068, at *2 (N.D.N.Y. Jan. 26, 2023) ("[C]onvictions for criminal possession and sale of a controlled substance are generally not probative of a witness' character for truthfulness.").  Accordingly, Mr. Williams's drug-related conviction has, at most, minimal probative value as to his character for truthfulness.

---

[8] As to the third factor, the lower the degree of similarity between the past crime and the conduct at issue, the more likely the jury is "to understand the prior conviction for its impeachment value, without taking it as propensity evidence." *Marshall*, 2022 WL 17491006, at *3.

The remaining factors applicable for impeachment purposes, on balance, further support exclusion. As to the second factor, the drug conviction is remote in time: the conviction is more than ten years old, and by the time of trial it will have been more than seven years since Mr. Williams was released from confinement for this charge. Therefore, this conviction has "diminished probative value." *Vasquez*, 840 F. Supp. 2d at 570 (holding that convictions twelve, eight, and six years old had diminished probative value). The third and fourth factors, although they weigh slightly in the other direction, are insufficient to justify admission. As to the third factor, because the drug conviction has no similarity to the conduct at issue in this case, the jury is unlikely to treat it as improper propensity evidence. *See Marshall*, 2022 WL 17491006, at *3. As to the fourth factor, Mr. Williams's credibility is important in this case. But the danger of creating "unfair prejudice in the minds of the jurors" nonetheless militates in favor of exclusion. *Daniels* v. *Loizzo*, 986 F. Supp. 245 at 251 (S.D.N.Y. 1997); *see Vasquez*, 840 F. Supp. 2d at 573 (excluding drug convictions because of their prejudicial effect); *City of Almaty, Kazakhstan* v. *Ablyazov*, 2022 WL 16901995, at *8 (S.D.N.Y. Nov. 11, 2022) (excluding conviction based on danger of unfair prejudice notwithstanding that some factors of balancing test weighed in favor of admissibility).

Likewise, to the extent Mr. Williams's deposition testimony can be understood to mean he pleaded guilty to bail jumping, there is no evidence from which the Court could determine whether the conviction is probative of credibility, and the conviction is equally remote. It also poses a substantial danger of unfair prejudice that outweighs any theoretical probative value. *See Corning* v. *MTD Prods, Inc.*, 2018 WL 1365822, at *1–2 (W.D. Wash. Mar. 16, 2018) (excluding evidence identifying conviction for bail jumping because of "severe" prejudicial effect).

Mr. Williams's drug-related and bail-jumping convictions are also excludable under Rule 403 because the danger of unfair prejudice substantially outweighs any probative value. Indeed,

these convictions have no probative value at all as to the merits of Mr. Williams's retaliation claim. Moreover, under Rule 404(b)(1), the convictions are inadmissible as propensity evidence, and no other purpose for which the convictions may be admissible under Rule 404(b)(2) is apparent.

<blockquote>

2.     *Mr. Ceruti's Conviction for Conspiracy and Trafficking Stolen Merchandise, for Which He Is Currently Incarcerated, Should Be Excluded.*

</blockquote>

Mr. Ceruti's conspiracy conviction has minimal impeachment value and poses a significant danger of unfair prejudice and confusion.  Under New York law, the basic elements of conspiracy are (i) intent that conduct constituting a crime be performed; (ii) an agreement with one or more persons to engage in or cause that conduct; and (iii) an overt act.  *See* N.Y. Penal Law §§ 105.00, 05, 10, 13, 15, 17, 20; *People* v. *Ramos*, 971 N.E.2d 369, 419–20 (N.Y. 2012).  The fact that Mr. Ceruti pleaded guilty to satisfying these elements reveals nothing about his credibility. Further, Mr. Ceruti's deposition testimony suggests that the conspiracy conviction was related to an alleged murder, *see* Ex. E at 103:13–104:8, which has little impeachment value.  *See Ablyazov*, 2022 WL 16901995, at \*8 ("Crimes of violence rank low on the scale of probative worth on credibility," and murder does not "bear on honesty in the same way that crimes involving deceit, fraud, and theft do." (internal quotations and alteration omitted)).  Moreover, the inflammatory nature of the crime would likely influence the jury to hold Mr. Ceruti's conviction against him, causing prejudice against Mr. Williams by association.  *See id.* ("[T]he relevance of the conviction is substantially outweighed by the danger of unfair prejudice, namely that the jury could determine that [the witness's] alleged conduct was so heinous that it should be held against [a party].").  The remaining factors "are insufficient to justify admission of the conviction for purposes of impeachment." *Id.*

As to Mr. Ceruti's current conviction for trafficking in stolen merchandise, this crime, "by its terms, does not recite concrete falsehoods or deceit," and its exploration at trial would

needlessly delay the proceedings and risk confusing the jury.  *Doe* v. *Lima*, 2020 WL 728813, at *6 (S.D.N.Y. Feb. 13, 2020) (finding the same as to a robbery conviction).

### C.    Mr. Ceruti's More-Than-Ten-Year-Old Convictions Are  Inadmissible.[9]

"[I]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," then the conviction is *not* admissible for impeachment purposes unless its probative value "substantially outweighs its prejudicial effect" and the proponent gives reasonable written notice such that the opposing party "has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).  More-than-ten-year-old convictions are admitted for impeachment purposes "only in rare and 'exceptional circumstances,'" *Tardif* v. *City of New York*, 2022 WL 2292049, at *1 (S.D.N.Y. June 24, 2022) (quoting *United States* v. *Mahler*, 579 F.2d 730, 735 (2d Cir. 1978)), which must be  determined "on-the-record and based on 'specific facts and circumstances,'" *United States* v. *Payton*, 159 F.3d 49, 57 (2d Cir. 1998) (citation omitted). By the time of trial, more than ten years will have passed since Mr. Ceruti's robbery convictions and his release from confinement for the same. Ex. E at 100:17–101:21, 102:3–7, 114:9–10 (1997 conviction and 1998 release); *id.* at 102:12–24, 114:17–23 (2003 conviction and March 2013 release).  These stale convictions should be excluded.

Moreover, under Rule 609(b), a more-than-ten-year-old conviction is presumptively *inadmissible* unless its probative value "substantially outweighs its prejudicial effect."  *See Lima*, 2020 WL 728813, at *6 (quoting Fed. R. Evid. 609(b)).  Mr. Ceruti's robbery convictions—which took place *20 or more years ago*—do not meet this standard.  These crimes have minimal probative

---

[9] While Defendants did not question Mr. Williams during his deposition about any convictions that are more than ten years old, should they seek to do so at trial, the same arguments set forth here would apply.  Furthermore, Defendants are barred from proffering evidence of any more-than-ten-year-old conviction Mr. Williams may have incurred because Defendants provided no "reasonable written notice" of their intent to use such conviction so that Mr. Williams "has a fair opportunity to contest its use."  Fed. R. Evid. 609(b)(2).

value because robbery "does not bear on the offender's character for veracity." *Lima*, 2020 WL 728813, at *6; *see also Brown* v. *Cornell*, 2021 WL 2711511, at *6 (N.D.N.Y. July 1, 2021) (excluding attempted robbery conviction under Rule 609(b)).  All that discussion of Mr. Ceruti's more-than-ten-year-old convictions could accomplish would be to prejudice the jury against him, and thus against Mr. Williams.  Thus, the Court should exclude any inquiry into these convictions.

### D.   Mr. Williams's and Mr. Ceruti's Arrests That Have Not Led to Convictions Should Be Excluded.

Extrinsic evidence of specific instances of conduct, including arrests, is inadmissible "to attack or support the witness's character for truthfulness," but the Court may, "on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of[]the witness."  Fed. R. Evid. 608(b); *United States* v. *Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010) (applying Rule 608(b) to evidence of arrest).  However, "arrest without more does not . . . impeach the integrity or impair the credibility of a witness."  *McLeod* v. *Llano*, 2021 WL 1669732, at *7 (E.D.N.Y. Apr. 28, 2021) (quoting *Michelson* v. *United States*, 335 U.S. 469, 482 (1948)); *Daniels* v. *Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997); *see also Boykin* v. *W. Express, Inc.*, 2016 WL 8710481, at *7 n.2 (S.D.N.Y. Feb. 5, 2016).

Mr. Williams has been imprisoned since 2018, awaiting trial for murder.  This charge is inadmissible because murder is not probative of truthfulness.  *See Ablyazov*, 2022 WL 16901995, at *8 ("Crimes of violence rank low on the scale of probative worth on credibility," and murder does not "bear on honesty in the same way that crimes involving deceit, fraud, and theft do." (quotation and alteration omitted)); *Eng*, 146 F.R.D. at 78 ("Murder is not necessarily indicative of truthfulness.").   And the "inflammatory nature" of a murder charge "raises substantial countervailing concerns of unfair prejudice."  *Ablyazov*, 2022 WL 16901995, at *8; *see* Fed. R. Evid. 403.  Therefore, evidence of this charge should be excluded.

Mr. Ceruti's prior arrests for assault, trespass, and loitering, for which he was not convicted, similarly are not probative of truthfulness.  *See Marshall*, 2022 WL 17491006, at *4 ("The fact that the crimes do not involve a consummated act of a false statement or a dishonest act make[s] them less probative."); *Daniels*, 986 F. Supp. at 251 ("[A]ssault . . . do[es] not involve dishonesty or false statements.").  Given the substantial danger of unfair prejudice, the arrests should be excluded.[10]

## V.      Evidence of the Reasons for Mr. Williams's and Mr. Ceruti's Lockdown Orders Should Be Excluded, as Well as the Lockdown Orders Themselves.

It is undisputed that both Mr. Williams and Mr. Ceruti were subject to lockdown orders.  Mr. Williams's lockdown order asserts that Mr. Williams "has solicited the aid of other persons to threaten, intimidate, and cause serious physical injury or death to witnesses, and has been engaging in other conduct that raises serious, well-founded and legitimate concerns, that he poses a continuing, significant risk to the safety of persons whom he perceives as being potential witnesses against him."  Exs. A–B.   Mr. Ceruti testified that his lockdown order was imposed for "[a]lleged witness tampering," Ex. E at 75:10–12, but that the order was "lifted" because the witness-tampering allegation "was thrown out," *id.* at 76:3–7.

Defendants clearly intend to make these lockdown orders a key component of their case.  Two of the three documents they propose to introduce are versions of Mr. Williams's lockdown order.  *See* Proposed Joint Pretrial Order at 15, Dkt. 271 (DEF 1–2 (attached hereto as Exs. A–B)).  The only possible purpose for introducing the lockdown orders or delving into the bases for them is to attack Mr. Williams's and Mr. Ceruti's credibility by painting them as dangerous.  The Court

---

[10] For the reasons set forth above in Sections II.B.2 and II.C-D, Mr. Williams has not designated in the Proposed Joint Pretrial Order the portions of Mr. Ceruti's deposition testimony concerning Mr. Ceruti's criminal history, and, if Mr. Williams prevails on this motion *in limine*, he will remove any such portions from the testimony shown to the jury.  *See* Proposed Joint Pretrial Order at 8, Dkt. 271.

should exclude not only the documents themselves, but also any testimony about the background or bases for their respective lockdown orders.

"[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct" in order to "attack" the witness's "character for truthfulness." Fed. R. Evid. 608(b).  However, the court may allow cross-examination into specific instances of conduct only if they are probative of the witness's character for truthfulness.  *Id.*  Acts of violence "rank low on the scale of probative worth on credibility." *Ablyazov*, 2022 WL 16901995, at *8 (alteration and citation omitted).  Any risk that Mr. Williams may have posed to the physical safety of others—which is what Defendants will argue this lockdown order suggests—is thus not probative of his character for truthfulness. Additionally, the witness tampering allegation against Mr. Ceruti is not probative of his character for truthfulness because it was dismissed.

Further, evidence of the lockdown orders should be excluded under Rule 403.  The fact that Mr. Williams and Mr. Ceruti were under lockdown orders is uncontested.  The purported bases for the issuance of the orders are irrelevant to determining whether Defendants retaliated against Mr. Williams, and can only serve to prejudice the jury.  *See Thompson* v. *Spota*, 2022 WL 17253464, at *6 (E.D.N.Y. Nov. 28, 2022) (convictions for witness tampering irrelevant to employment discrimination claim); *Shannon* v. *Koehler*, 2011 WL 10483366, at *6 (N.D. Iowa Oct. 19, 2011) (probative value of testimony about alleged witness tampering substantially outweighed by danger of unfair prejudice).  In fact, the allegation of witness tampering underlying Mr. Ceruti's lockdown order says nothing about Mr. Ceruti's character because it was dismissed. Ex. E at 76:3–7.  Because the *only* effect of any evidence of the reasons for the lockdown orders is prejudicial, Defendants' proposed exhibits DEF 1 and DEF 2 (Exs. A–B), and any testimony about the reasons for Mr. Williams's and Mr. Ceruti's lockdown orders, should be excluded.

21

**VI.      Mr. Williams's Grievances and Court Filings are Admissible as Non-Hearsay.**

Mr. Williams intends to introduce various grievances he filed, *see* Exs. J–O, Q, S–AA, DD as well as the complaint and amended complaint in this case, *see* Exs. P, R, each of which he submitted shortly before Defendants' retaliatory acts occurred.  *See* Proposed Joint Pretrial Order at 9–13, Dkt. 271 (PX 1–19, PX 22).   Mr. Williams intends to introduce these documents to establish the simple fact that he filed them—the First-Amendment protected activity that is the basis of his allegations.  *See* R. & R. at 49, Dkt. 186 (grievances are protected First-Amendment activity); *Tirado* v. *Shutt*, 2015 WL 4476027, at *4 (S.D.N.Y. Feb. 23, 2015) (same, regarding lawsuits).[11]  Mr. Williams also offers these documents to show Defendants' knowledge that he filed them.

Mr. Williams also intends to introduce Defendant Mathis's answer to the Amended Complaint, Ex. BB, and the Court's December 16, 2019 order, Ex. CC, not for their truth but to establish that Defendants' retaliation closely followed certain events in this litigation, which is circumstantial evidence of the causal connection between Mr. Williams's protected activities and Defendants' retaliatory acts, *see* R. & R. at 52–53, Dkt. 186.  *See* Proposed Joint Pretrial Order at 12, Dkt. 271 (PX 20–21).  Finally, Mr. Williams intends to introduce his response to Defendants' motion to dismiss, Ex. EE, to show the effect that Defendant Mathis's December 2019 retaliatory act had on Mr. Williams—that is, that the act caused Mr. Williams to seek dismissal of Defendant Mathis from this lawsuit.  *See* Proposed Joint Pretrial Order at 12, Dkt. 271 (PX 23).

Because these documents are not being offered "to prove the truth of the matter asserted" in them, Fed. R. Evid. 801(c), they are not being used for hearsay purposes and thus are not excludable on that basis.  *See United States* v. *Scali*, 2018 WL 461441, at *3 (S.D.N.Y. Jan. 18,

---

[11] Mr. Williams reserves all rights to seek to use these documents for other proper purposes, such as evidence of a recorded recollection, *see* Fed. R. Evid. 803(5).

2018) ("[A]dmission of the Petitions is not barred by the rule against hearsay because they are not being admitted for the truth of the matter asserted, but rather, to prove the Defendant's knowledge.") , *aff'd*, 820 F. App'x 23 (2d Cir. 2020) (summary order); *Gill* v. *Frawley*, 2006 WL 1742738, at *9 (N.D.N.Y. June 22, 2006) (representations related to grievances not hearsay "to the extent they were offered for a purpose other than to show the truth of the matters asserted").[12] The documents are clearly relevant, and because they are not excludable as hearsay, should be admitted.  Fed. R. Evid. 801, 802.

**VII.    The Videotaped Deposition Testimony of Samuel Ceruti is Admissible Because Defendants were Represented at the Deposition, Mr. Ceruti is Incarcerated Over 100 Miles from Court, and the Testimony is Not Excludable as Hearsay.**

Mr. Williams is entitled to present the videotaped deposition testimony of Samuel Ceruti under Federal Rule of Civil Procedure 32(a).  For over seven months, Defendants have known that Mr. Ceruti's deposition was intended to preserve his testimony for trial because he is beyond the Court's subpoena power.  Ex. I at 2 ("Mr. Ceruti is now housed . . . beyond the subpoena power of the Court, and thus his deposition is not for discovery but for the purpose of preserving his testimony for trial."); Ex. II at 12:2–4, 6–11 ("[T]he deposition of [Ceruti] . . . is really a deposition to take trial testimony. . . . [I]n the case that he was deemed to not be subject to subpoena to come and testify at the trial, we need to take his testimony now.").  Indeed, the Court commented on Plaintiff's proposal to take Mr. Ceruti's deposition as trial testimony prior to issuing its order reopening discovery.  *See* Ex. II at 12:1–16; Ex. HH.  Nevertheless, in the Proposed Joint Pretrial Order, Defendants now contend that Mr. Ceruti's testimony from his deposition is inadmissible because Mr. Williams has not established that he has tried and failed to have Mr. Ceruti testify live

---

[12]  To the extent that Mr. Williams's grievances and court filings include his recounting of statements made by Defendants Mathis and Wells, such statements would be admissible non-hearsay statements of party opponents.  *See* Fed. R. Evid. 801(d)(2)(A).

at trial, either in-person or by video.  Proposed Joint Pretrial Order at 8–9, Dkt. 271.  Defendants' position is untenable.

Federal Rule of Civil Procedure 32(a)(1) provides that, at trial, a deposition "may be used against a party" if (A) the party was represented at the deposition; (B) the deposition "is used to the extent" it would be admissible "if the deponent were present and testifying"; and (C) use of the deposition "is allowed by Rule 32(a)(2) through (8)."  Here, it is undisputed that the first and second elements are satisfied, as defense counsel attended Mr. Ceruti's deposition, and Mr. Williams intends to use Mr. Ceruti's deposition only to the extent it is otherwise admissible.

As to the third element, the use of Mr. Ceruti's deposition is "allowed by" Rule 32(a)(4)(B), which provides that "[a] party may use for any purpose the deposition of a witness . . . if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial . . . , unless it appears that the witness's absence was procured by the party offering the deposition." Mr. Ceruti is incarcerated at Great Meadow Correctional Facility in Comstock, New York, which is more than 100 miles from court, and there can be no argument that Mr. Ceruti's absence was procured by Mr. Williams.  Use of Mr. Ceruti's deposition testimony is thus permitted under Rule 32(a).

Mr. Williams need not demonstrate a failed effort to procure Mr. Ceruti's voluntary attendance at trial, either in-person or by video.  *See Aristocrat Leisure Ltd*. v. *Deutsche Bank Tr. Co. Americas*, 2009 WL 3111766, at *19–20 (S.D.N.Y. Sept. 28, 2009) (rejecting argument that videotaped deposition testimony should be excluded because proponents "failed to show that they have made an attempt to compel the witnesses to appear at trial"); *see also AmTrust N. Am., Inc*. v. *KF&B, Inc*., 2020 WL 5552522, at *3 (S.D.N.Y. Sept. 16, 2020) (Liman, J.) (same).  Indeed, courts have held that Rule 32(a)(4)(B) "provides no requirement that a party must apply for a writ of

habeas corpus ad testificandum before being allowed to use at trial the deposition of an incarcerated witness."  *Mitchell* v. *Briseno*, 2004 WL 7337416, at *2 (D.N.M. Dec. 3, 2004) (applying predecessor to Rule 32(a)(4)(B)); *see also Ueland* v. *United States*, 291 F.3d 993, 996 (7th Cir. 2002) (rejecting argument that a party invoking the 100-mile exception for an incarcerated witness must first attempt to obtain a writ of habeas corpus ad testificandum).

Furthermore, Mr. Ceruti's deposition testimony is not excluded as hearsay simply because it was given out of court, as Federal Rule of Civil Procedure 32(a) operates as an independent exception to the rule against hearsay.  *United States* v. *Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 384 (S.D.N.Y. 1981) ("[I]f the deposition meets the criteria of [the 100-mile provision], any hearsay objection under Fed.R.Evid. 802 is cured."); *L-3 Commc'ns Corp.* v. *OSI Sys., Inc.*, 2006 WL 988143, at *9 (S.D.N.Y. Apr. 13, 2006) ("Fed.R.Civ.P. 32(a) creates an exception to the hearsay rules." (quoting *Angelo* v. *Armstrong World Indus. Inc.*, 11 F.3d 957, 962-63 (10th Cir.1993))); *AmTrust N. Am., Inc.*, 2020 WL 5552522, at *2 ("[D]eposition testimony that is admissible under Fed. R. Civ. P. 32(a)(4)(B) . . . that is not admissible under Fed. R. Evid. 804 . . . may still be introduced at trial, so long as such testimony would be admissible if the witness were present and testifying.").

To the extent Defendants argue that Mr. Ceruti's deposition testimony is inadmissible because Mr. Williams has not tried to procure Mr. Ceruti's testimony "by process or other reasonable means," as required to show that a declarant is "unavailable as a witness" under Federal Rule of Evidence 804(a)(5), that argument is unavailing because it "ignores that Fed. R. Civ. P. 32(a)(4) provides an provides an alternative basis [to Fed. R. Evid. 804] for the admission of deposition testimony of an unavailable witness." *AmTrust N. Am., Inc.*, 2020 WL 5552522, at *2.

## CONCLUSION

For the foregoing reasons, Mr. Williams's motions *in limine* should be granted.

Dated: March 20, 2023

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  /s/ *Hillary Black*
Daniel J. Beller
Moses Silverman
Robert J. O'Loughlin
Hillary Black
Simona Xu
Christie Wan
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
*Attorneys for Plaintiff*