UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER WILLIAMS JR.,

                    Plaintiff,

         - v -                                        19-cv-03347-LJL-JLC

THE CITY OF NEW YORK, ET AL.,

                    Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE**

Daniel J. Beller
Moses Silverman
Robert J. O'Loughlin
Hillary S. Black
Shimeng Xu
Christie Ho Lam Wan

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
dbeller@paulweiss.com
msilverman@paulweiss.com
roloughlin@paulweiss.com
hblack@paulweiss.com
sxu@paulweiss.com
cwan@paulweiss.com

*Attorneys for Plaintiff
Alexander Williams*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................1

I.      Defendants Should Be Precluded from Introducing Mr. Williams's Lockdown
        Orders and the Command Level Order ..........................................................1

II.     Mr. Ceruti's Videotaped Deposition Testimony Is Admissible Under Federal Rule
        of Civil Procedure 32(a) ................................................................................4

III.    The Case Caption Should Not Be Amended to Remove the City of New York and
        New York City Department of Correction ......................................................5

IV.     Plaintiff Should Not Be Prohibited from Referring to the City of New York, the
        New York City Department of Correction, and to Defense Counsel as "City
        Attorneys" .....................................................................................................6

V.      Plaintiff Does Not Intend to Introduce Evidence that the Defendants May Be
        Indemnified ...................................................................................................8

VI.     Plaintiff Does Not Intend to Suggest a Specific Dollar Amount to the Jury ........9

VII.    Plaintiff Should Not Be Precluded from Referring to Dismissed Defendants
        Present at or Otherwise Implicated in the Events At Issue ...............................9

VIII.   Evidence About the Cell 11 Incident Is Admissible as Evidence of a Subsequent
        Similar Act Probative of Defendant Mathis's Retaliatory Intent......................11

IX.     Plaintiff's Proposed Exhibits Are Admissible ..............................................14

        A.      Grievances, Court Filings, and December 16, 2019 Order ...................14

        B.      Exhibits Concerning the Cell 11 Incident ..........................................16

        C.      Inmate Grievance Procedures ...........................................................17

X.      Plaintiff Does Not Intend to Elicit Testimony About the Court's October 27, 2022
        Order ...........................................................................................................17

XI.     Defendants' Disciplinary Histories Constitute Prior Similar Act Evidence and
        thus Should Not Be Excluded ......................................................................18

CONCLUSION.......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States v. 228 Acres of Land & Dwelling Located on Whites Hill Rd. in Chester, Vt.*,
916 F.2d 808 (2d Cir. 1990)..........................................................................................6

*American Mfrs. Mut. Ins. Co.* v. *Sullivan*,
526 U.S. 40 (1999).........................................................................................................7

*United States* v. *Aminy*,
15 F.3d 258 (2d Cir.1994)............................................................................................18

*United States v. Caccia*,
122 F.3d 136 (2d Cir. 1997)..........................................................................................10

*Can't Live Without It, LLC* v. *ETS Express, Inc.*,
373 F. Supp. 3d 434 (S.D.N.Y. 2018)..........................................................................13

*Dole* v. *Adams*,
2015 WL 13505323 (D. Vt. Sept. 17, 2015).................................................................11

*United States* v. *Dore*,
2013 WL 3965281 (S.D.N.Y. July 31, 2013) ..............................................................16

*Duncan* v. *Int'l Bus. Machines Corp.*,
1996 WL 720106 (S.D.N.Y. Dec. 13, 1996) .................................................................5

*Edwards v. City of New York*,
2011 WL 2748665 (E.D.N.Y. July 13, 2011)...............................................................10

*Fana* v. *City of New York*,
No. 15-cv-08114 (S.D.N.Y. June 8, 2018) ....................................................................9

*Hernandez v. Kelly*,
2011 WL 2117611 (E.D.N.Y. May 27, 2011) ...............................................................8

*Hogan v. Cnty. of Lewis*,
2015 WL 9165956 (N.D.N.Y. Dec. 16, 2015)............................................................6, 8

*Ismail* v. *Cohen*,
706 F. Supp. 243 (S.D.N.Y. 1989) ..............................................................................15

*Jean-Laurent v. Hennessy*,
840 F. Supp. 2d 529 (E.D.N.Y. 2011) ...........................................................................8

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*United States* v. *Kuo Chen*,
2011 WL 197585 (E.D.N.Y. Jan. 20, 2011) ......................................................15

*Macera v. Vill. Bd. of Ilion*,
2017 WL 1194236 (N.D.N.Y. Mar. 30, 2017) ...................................................17

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
991 F. Supp. 2d 464 (S.D.N.Y. 2013)..................................................................5

*Munafo* v. *Metro. Transp. Auth.*,
2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) ..................................................15

*United States* v. *Perez*,
2002 WL 31368100 (S.D.N.Y. Oct. 21, 2002) ....................................................3

*United States* v. *Peterson*,
808 F.2d 969 (2d Cir. 1987)...............................................................................18

*Spencer* v. *Int'l Shoppes, Inc.*,
2013 WL 685453 (E.D.N.Y. Feb. 25, 2013)......................................................11

*United States v. Ubaldo*,
859 F.3d 690 (9th Cir. 2017) .............................................................................18

*United States v. Vizcarra-Martinez*,
66 F.3d 1006 (9th Cir. 1995) .............................................................................18

*Weiss* v. *La Suisse, Societe D'Assurances Sur La Vie*,
293 F. Supp. 2d 397 (S.D.N.Y. 2003)................................................................10

**Statutes**

42 U.S.C. § 1983...........................................................................................1, 7, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................12, 13

Fed. R. Civ. P. 26 ................................................................................................16

Fed. R. Civ. P. 32(a) .......................................................................................4, 5

Fed. R. Evid. 403 .........................................................................................*passim*

Fed. R. Evid. 404(b)(2) ...............................................................................11, 18

**TABLE OF AUTHORITIES**
**(Continued)**

                                                                                                    **Page(s)**

Fed. R. Evid. 801 ............................................................................................................4

Fed. R. Evid. 804 ............................................................................................................5

U.S. Const. amend. I .................................................................................................2, 15, 17

## PRELIMINARY STATEMENT

In this case, Plaintiff Alexander Williams brought a number of claims under 42 U.S.C. § 1983 against various correction officers, prison officials, the City of New York and the New York City Department of Correction ("DOC") regarding various incidents and the conditions of his confinement at the Manhattan Detention Complex ("MDC").  Following the Court's decision on the parties' cross-motions for summary judgment, all that is left for trial are Mr. Williams's claims for retaliation against Defendant Captain Bernard Mathis and Defendant Correction Officer Jakar Wells.  *See* R. & R., Dkt. 186; Order Adopting R. & R., Dkt. 188.

Defendants have made eleven motions *in limine* covering a number of aspects of the case—some ministerial, some substantive, some addressed to types of evidence that Mr. Williams has no intention of propounding.  Many of them are effectively cross motions to the motions *in limine* brought by Mr. Williams:  for example, Defendants move to exclude the videotaped deposition testimony of Samuel Ceruti, an inmate who witnessed some of the incidents of retaliation and will corroborate Mr. Williams's testimony, while Mr. Williams has moved *in limine* to admit Mr. Ceruti's videotaped deposition.  *Compare* Defendants' Memorandum of Law in Support of Their Motions *in Limine* at 5–6, Dkt. 278 ("Defs.' MIL Br."), *with* Plaintiff's Memorandum of Law in Support of Motions *in Limine* at 23–25, Dkt. 281 ("Pl.'s MIL Br.").

As explained below, each of Defendants' motions *in limine* should be denied, and moreover, many of Plaintiff's cross-motions *in limine* should be granted for the same reasons.

## ARGUMENT

### I.     Defendants Should Be Precluded from Introducing Mr. Williams's Lockdown Orders and the Command Level Order

Defendants argue that the lockdown orders to which Mr. Williams was subject, as well as the MDC Command Level Order implementing lockdown order procedures, should be admitted

because they are necessary to "explain why the purported restrictions on plaintiff's mail and law library access were not in fact retaliatory." Defs.' MIL Br. at 5; *see also id.* at 3. This argument misleadingly suggests that Mr. Williams is claiming that the restrictions on his mail and his access to the law library were retaliatory. That is incorrect and reflects a fundamental misunderstanding of Mr. Williams's case. Mr. Williams claims that Defendants Mathis and Wells retaliated against him by threatening him and stealing legal papers from his cell *after* he complained about his mail and law library restrictions. *See* R. & R. at 50–52, Dkt. 186 (finding that Defendants' verbal threats to and confiscation of legal documents from Mr. Williams may rise to the level of adverse, retaliatory actions); *see also* Pl.'s MIL Br. at 2–3 (describing Plaintiff's claims). Whether the mail and law library access restrictions to which Mr. Williams was subjected were proper is not the issue in this case; the issue is whether Defendants violated Mr. Williams's First Amendment rights for having the courage to complain about these conditions of his confinement. Nothing in these documents justifies Defendants' illegal retaliation.

Not only should the lockdown orders not be admitted but, as Mr. Williams explained when moving *in limine*, they should be *excluded* because: (1) to the extent they are evidence of specific acts of violence by Mr. Williams, they would not be probative of Mr. Williams's character for truthfulness under Rule 608(b); and (2) the limited probative value of the documents themselves is substantially outweighed by the prejudice that the inflammatory accusations in them would cause Mr. Williams, and they should thus be excluded under Rule 403. *See* Pl.'s MIL Br. at 20–21.

The Command Level Order is similarly prejudicial. It provides, for example, that "[w]henever a Court Ordered Lock-Down Inmate is removed from the housing area, he shall be restrained in leg irons, waist chains and mitts" and "be under one-on-one observation of a

Correction Officer to assure no communication with any other inmate(s)." Ex. KK at 3.[1]  Such provisions are highly likely to suggest to the jury that inmates subject to the Command Level Order are violent or dangerous, and are therefore unfairly prejudicial to Mr. Williams.

The prejudicial nature of these documents is especially heightened because Mr. Williams's lockdown status was determined by a court.  As this Court has recognized, "'sound judicial policy' requires exclusion of [judicial findings] because they 'would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'"  *United States* v. *Perez*, 2002 WL 31368100, at *1 (S.D.N.Y. Oct. 21, 2002) (quoting *Niper* v. *Snipes*, 7 F.3d 415, 417–18 (4th Cir. 1993)).  That prejudice is exacerbated here given that the lockdown orders do not describe the evidence that was before the issuing court, and thus the jury would have no way to evaluate the credibility of the court's findings.  Indeed, the court entered the initial lockdown order after an *ex parte* hearing attended only by the District Attorney—in other words, Mr. Williams had no opportunity to dispute the allegations or contest the evidence, and his knowledge and understanding of contents of the District Attorney's presentation accordingly is limited.  *See* Ex. LL at 32:16–21.  Providing the lockdown orders and the resulting Command Level Order to the jury thus would require a mini-trial on the veracity of the underlying allegations, thereby running the risk of "confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403.

Finally, the lockdown orders should also be excluded because, if they are to be used to prove the truth of the matters asserted in them—*i.e.*, that Mr. Williams actually "has solicited the

---

[1]   Citations to "Ex. __" refer to the exhibits to the March 20, 2023 Declaration of Hillary S. Black filed in support of Mr. Williams's motions *in limine*, *see* Dkt. 282, except for Exhibits KK–SS, which are attached to the April 3, 2023 Declaration of Hillary S. Black filed in support of this Opposition.

aid of other persons to threaten, intimidate, and cause serious physical injury or death to witnesses, and has been engaging in other conduct that raises serious, well-founded and legitimate concerns, that he poses a continuing, significant risk to the safety of persons whom he perceives as being potential witnesses against him," Exs. A–B, Dkts. 282-1, 282-2—then they are hearsay.  *See* Fed. R. Evid. 801.  Defendants do not argue that any hearsay exception applies.

**II.**   Mr. **Ceruti's Videotaped Deposition Testimony Is Admissible Under Federal Rule** of **Civil Procedure 32(a)**

Defendants argue that Mr. Williams should not be allowed to present the videotaped deposition of Samuel Ceruti, an inmate who witnessed some of the incidents of retaliation and is currently incarcerated at the Great Meadow Correctional Facility, because Mr. Williams has not established that Mr. Ceruti is unavailable to testify at trial.  Defs.' MIL Br. at 5–6.  In support of their arguments, Defendants cite cases standing only for the limited proposition that Mr. Williams bears the burden of establishing that the requirements of Federal Rule of Civil Procedure 32(a) have been met.  *Id*.

In moving *in limine* to admit Mr. Ceruti's videotaped deposition testimony, Mr. Williams established that all of the requirements of Federal Rule of Civil Procedure 32(a) have been met here:  Defendants were represented at the deposition, the deposition is to be used to the extent it would be admissible if Mr. Ceruti were present and testifying, and Mr. Ceruti is undeniably more than 100 miles from the place of trial.  Pl.'s MIL Br. at 23–24.  Specifically as to the 100-mile limit of the Court's subpoena power, Mr. Ceruti can no more be compelled to sit for testimony via a live video stream than he can be compelled to travel to the courthouse to testify live.

Furthermore, as Mr. Williams explained in detail in moving *in limine* to admit Mr. Ceruti's deposition testimony, federal courts have repeatedly rejected the arguments advanced by Defendants:  that Mr. Williams, as the proponent of Mr. Ceruti's deposition testimony, must

demonstrate a failed effort to procure Mr. Ceruti's attendance at trial, either in-person or by video. *See id.* at 24–25. Indeed, courts have specifically rejected Defendants' argument that Mr. Williams must first seek and be denied a writ of habeas corpus ad testificandum before being allowed to use the deposition of an incarcerated witness like Mr. Ceruti. *See id.* Mr. Williams also explained why Defendants' argument that Mr. Williams must demonstrate unavailability under Federal Rule of Evidence 804 is similarly misguided, given that the requirements of Federal Rule of Civil Procedure 32(a), which operates as an independent hearsay exception, are met. *Id.* at 25.

Defendants' invocation of the "preference for live testimony" does not change this analysis. Defs.' MIL Br. at 5. As this Court observed more than 25 years ago, because "videotaping techniques can provide jurors high-quality pictures and sound," videotaped depositions "go far to replicating the experience of viewing a witness live in the courtroom" and "permit[] the trier of fact to observe the witness's demeanor as well as listen for oral clues to the individual's credibility." *Duncan* v. *Int'l Bus. Machines Corp.*, 1996 WL 720106, at *5 & n.3 (S.D.N.Y. Dec. 13, 1996). This Court has since reaffirmed that "video testimony is an acceptable alternative to live witness testimony." *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 991 F. Supp. 2d 464, 471 (S.D.N.Y. 2013) (citing *Duncan*, 1996 WL 720106, at *5 & n.3). From the jury's perspective, playing Mr. Ceruti's videotaped deposition testimony would be little different from Mr. Ceruti testifying live via video feed.

## III.   The Case Caption Should Not Be Amended to Remove the City of New York and New York City Department of Correction

Defendants contend that the City of New York and the New York City Department of Correction ("DOC") should be removed as defendants from the case caption because the Court dismissed Plaintiff's claim against them on summary judgment. *See* Defs.' MIL Br. at 7. Defendants cite no authority for their argument that the caption should be amended mid-litigation

without an accompanying amendment to the complaint.  Indeed, courts have routinely denied the

very argument that Defendants make here.  As the court explained in *Hogan v. Cnty. of Lewis*,

2015 WL 9165956, at *4 (N.D.N.Y. Dec. 16, 2015):

> [The dismissed defendants] cite no authority, and the Court is aware of none,
> allowing defendants to amend the caption mid-litigation where all claims against
> those particular defendants have been dismissed.  Rather, courts generally only
> allow a party to amend the caption where the party seeks to add an additional
> defendant, or substitute a named defendant for an unknown party.  *Compare
> Christiana Bank & Trust Co.* v. *Dalton*, 2009 WL 4016507, at *5 (E.D.N.Y.
> Nov. 17, 2009) (granting motion to amend caption to replace John Doe defendants
> with named defendants), *with Browning Debenture Holders' Comm.* v. *DASA
> Corp.*, 81 F.R.D. 407, 413 (S.D.N.Y. 1978) (denying defendant's request to amend
> caption to remove his name after all claims against him had been dismissed on the
> basis that to do so would be confusing and was unnecessary).  While the Court
> understands that [the dismissed defendants] may wish to be disassociated from this
> case, the Court is unable to grant their Motion to amend the caption. Moreover, the
> presence of [the dismissed defendants'] names in the caption in no way indicates
> that there are active claims against these Defendants.

Notably, Defendants move to remove only the City of New York and DOC from the

caption, but not any of the other defendants whose claims were dismissed on summary judgment.

*See* Defs.' MIL Br. at 7.  Defendants do not explain why removing the City of New York and DOC

while leaving these other dismissed defendants would alleviate the jury's confusion.  Furthermore,

there has not been a final judgment entered in this case, and therefore, Plaintiff retains the right to

appeal the Court's summary judgment order as to the City of New York and DOC.  *See United

States v. 228 Acres of Land & Dwelling Located on Whites Hill Rd. in Chester, Vt.*, 916 F.2d 808,

811 (2d Cir. 1990) ("An order that denies summary judgment or grants partial summary judgment

cannot by itself be the basis for an appeal, since it is nonfinal.").  The Court should therefore deny

Defendants' motion to amend the case caption.

## IV.    **Plaintiff Should Not Be Prohibited from Referring to the City** of New York**, the** New York **City Department** of **Correction,** and **to Defense Counsel as "City Attorneys"**

Defendants further move to preclude Mr. Williams from making any reference to the City

of New York and DOC during trial, as well as referring to Defendants' counsel as "City Attorneys," arguing that to do so could lead the jury to award excessive damages because they view the City and DOC has having "deep pockets."  Defs.' MIL Br. at 7–8.

Defendants fail to show any prejudice resulting from such references.  By contrast, it is impossible for Plaintiff to prove his case without making any reference to the City of New York and DOC.  One of the elements of Mr. Williams's Section 1983 claim is that Defendants were acting under color of state law when they retaliated against him.  *American Mfrs. Mut. Ins. Co.* v. *Sullivan*, 526 U.S. 40, 49–50 (1999); *see also* R. & R. at 31, Dkt. 186.  In other words, to prove his claims, Plaintiff must establish that Defendants were acting in their capacity as correctional officers of DOC, an agency of the City of New York, when they retaliated against him. Defendants' motion, if granted, would prevent Mr. Williams from introducing facts necessary to prove his case by preventing him from establishing this fact.  The probative value of referring to the City of New York and DOC thus is not "substantially outweighed" by any prejudice to Defendants from using these terms.  Fed. R. Evid. 403.

Furthermore, because Mr. Williams does not intend to introduce any evidence regarding the City's and/or DOC's indemnification of Defendants Mathis and Wells, *see infra* Section V, Defendants' concerns about the jury being swayed to award excessive damages to Mr. Williams because they may view the City and DOC as having "deep pockets" is misplaced.  Without any evidence of indemnification, the jury would have no reason to believe that the City's and/or DOC's "deep pockets" would indemnify Defendants Mathis and Wells.  Defendants' arguments about what the jury may believe despite the absence of such evidence of indemnification amounts to no more than rank speculation, and cannot carry Defendants' prejudice argument, particularly when weighed against Mr. Williams's need to prove his claims.

There is similarly no reason to preclude Plaintiff from referring to Defendants' counsel as "City Attorneys."  As discussed above, *supra* Section III, the City of New York and DOC are named defendants even though the claims against them have been dismissed,  and Defendants are not entitled to remove all references to the City and DOC.  *See Hogan*, 2015 WL 9165956, at *4. That the City and DOC were named defendants in this case also distinguish both of the cases cited by Defendants in support of their argument.  *See* Defs.' MIL Br. at 8.  The courts in both *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011) and *Hernandez v. Kelly*, 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011), granted motions to refer to defense counsel only as "attorneys from the Office of the Corporation Counsel," but in doing so both courts noted that the City of New York was *not* a defendant.  As the City and DOC are defendants here, and Mr. Williams must refer to the City and DOC to prove his Section 1983 claims, the prejudice concerns of also referring to defense counsel as "City Attorneys" are virtually non-existent.

Should the Court nevertheless be inclined to require Mr. Williams to refer to defense counsel as "attorneys from the Office of the Corporation Counsel," the Court should also inform the jury that the Corporation Counsel represents the correctional officers of the New York City DOC, which is an agency of the City of New York, similar to the instructions given by the *Jean-Laurent* and *Hernandez* courts.  *See Jean-Laurent*, 840 F. Supp. 2d at 550; *Hernandez*, 2011 WL 2117611, at *6.

## V.    Plaintiff Does Not Intend to Introduce Evidence that the Defendants May Be Indemnified

Defendants argue that Mr. Williams should not be allowed to introduce evidence concerning any potential indemnification obligations to Defendants by the City of New York or DOC.  Defs.' MIL Br. at 8–9.  Mr. Williams does not intend to introduce evidence regarding indemnification, and thus the Court should deny this motion as moot.

## VI.     Plaintiff Does Not Intend to Suggest a Specific Dollar Amount to the Jury

Defendants move to preclude Mr. Williams from suggesting a specific dollar amount of compensatory damages to the jury.  Defs.' MIL Br. at 9–10.  Mr. Williams does not intend to introduce such evidence.  Mr. Williams is under no obligation to prove a specific amount of these damages to the jury, and instead intends to leave it to the jury's good judgment to determine the appropriate amount of compensatory and punitive damages should Defendants be found liable. *See* Pl.'s Proposed Jury Instructions at 29–30, Dkt. 272 (regarding compensatory damages, "the law does not require that Mr. Williams prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit") (citing 1983 Litig. Jury Instructions § 18.01.1; Modern Federal Jury Instructions-Civil P 87.03 (2022)); Jury Instructions, *Fana* v. *City of New York*, No. 15-cv-08114 (S.D.N.Y. June 8, 2018), Dkt. 139, at 30); *id.* at 33–34 (regarding punitive damages, the jury "must be unanimous both that punitive damages should be imposed and as to any amount you decide to impose").  Because Mr. Williams does not intend to introduce this evidence, the Court should deny this motion as moot.

## VII.    Plaintiff Should Not Be Precluded from Referring to Dismissed Defendants Present at or Otherwise Implicated in the Events At Issue

Defendants argue that Mr. Williams should be prevented from "allud[ing] to" any "dismissed defendants who had *zero* connection to the alleged incidents that remain at issue for trial."  Defs.' Br. 10 (emphasis added).  Defendants thus concede that Mr. Williams can reference dismissed defendants who had *some* connection to the incidents that remain at issue for trial.  To the extent Defendants suggest any reference to a previously dismissed defendant is per se inadmissible, they are wrong.

Some of the dismissed defendants were present at the scenes of the retaliatory incidents at issue, and Mr. Williams may mention them in his testimony to provide a complete and accurate

description of those incidents.  For example, dismissed defendant Hernandez was present during the September 20, 2019 incident where Defendant Wells confiscated legal documents from Mr. Williams's cell.  *See* Ex. Y, Dkt. 282-25.  Moreover, Mr. Williams may reference some dismissed defendants, who were Defendants Mathis and Wells's fellow officers, because they were involved in the incidents about which he filed grievances.  *See, e.g.*, Ex. K, Dkt. 282-11 (dismissed defendant Rivera), Ex. O, Dkt. 282-15 (Ramirez), Ex. U, Dkt. 282-21 (Martinez), Ex. W, Dkt. 282-23 (Martinez).  Because Mr. Williams intends to show that the Defendants retaliated against him for filing grievances against them and their fellow officers, the dismissed defendants' identities and their relationships with remaining Defendants Mathis and Wells are plainly relevant. Any potential jury confusion on this issue can be cured with a limiting instruction.  *See Weiss* v. *La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 410 (S.D.N.Y. 2003) (admitting certain evidence related to dismissed claim with limiting instruction).

Defendants rely on *Edwards v. City of New York*, 2011 WL 2748665 (E.D.N.Y. July 13, 2011), but the court in that case excluded a New York City Police Department Patrol Guide because the City of New York had been dismissed from the case and the Patrol Guide was irrelevant to the claims at issue.  *See id.* at *4.  *Edwards* is inapplicable here, where the testimony pertaining to the dismissed defendants is relevant.

Finally, Defendants Mathis and Wells have not indicated they will call any of their fellow officers, including those dismissed defendants who were present at the scene of the incidents at issue, to testify on their behalf at trial, despite these individuals being readily available to them. *See* Joint Pretrial Order at 7, Dkt. 271. The jury may rightfully infer based on Mr. Williams's testimony that if any of the dismissed defendants had testified, their testimony would be favorable to Mr. Williams.  *See United States v. Caccia*, 122 F.3d 136, 138–39 (2d Cir. 1997) (when

testimony would be material and witness is peculiarly within a party's control, "it is more likely than not that the testimony of an uncalled witness would have been unfavorable to the party with such control, and a jury may reasonably draw such an inference"). Mr. Williams reserves all rights to move for a missing witness instruction as a result.

## VIII. Evidence About the Cell 11 Incident Is Admissible as Evidence of a Subsequent Similar Act Probative of Defendant Mathis's Retaliatory Intent

Defendants argue that Mr. Williams should not be permitted to present evidence about "claims that have not been pled in this lawsuit," including evidence about the July 28, 2022 strip search and threats to which he was subjected (the "Cell 11 Incident"). Defs.' MIL Br. at 11; *see* Pl.'s MIL Br. at 4 (setting forth background facts about the Cell 11 Incident). This argument misunderstands Plaintiff's case. Mr. Williams does not assert a claim based on the Cell 11 Incident. Instead, he offers it under Rule 404(b)(2) as evidence of a subsequent similar act that is probative of Defendant Mathis's retaliatory intent during the instances of retaliation on which Mr. Williams bases his claims. Pl.'s MIL Br. at 10–11. And as Mr. Williams explained when moving *in limine*, his testimony about the Cell 11 Incident is admissible for that purpose. *Id.* at 9–13.

The fact that the Cell 11 Incident was not pleaded in Mr. Williams's complaint does not affect the admissibility of the evidence. Contrary to Defendants' suggestion, there is no requirement that every piece of evidence that will be used at trial be pleaded in the complaint. *See, e.g.*, *Dole* v. *Adams*, 2015 WL 13505323, at *1 (D. Vt. Sept. 17, 2015) (admitting evidence of additional allegations of fraud not pleaded in the complaint because they "bear on" allegations made in the complaint); *Spencer* v. *Int'l Shoppes, Inc.*, 2013 WL 685453, at *3 (E.D.N.Y. Feb. 25, 2013) (reasoning that, even if plaintiff's claims were limited to allegations made in his original

11

complaint, evidence related to a claim made in his amended complaint would be admissible due to its relevance to damages).  Indeed, Defendants cite no authority for such a proposition.

Defendants additionally argue that they have been prejudiced because: (i) they supposedly have been denied the opportunity to take discovery on the Cell 11 Incident; and (ii) have not been able file a Rule 12(b)(6) motion challenging the Cell 11 Incident.  Defs. MIL Br. at 11–12.  Both arguments are meritless.

As to the first point, Defendants complain that although the Court allowed Mr. Williams to take discovery on the Cell 11 Incident, it did not afford Defendants the same opportunity.  *Id.* However, *Defendants never asked for this discovery*.  Defendants' chutzpah in arguing that they have been prejudiced by the Court not affording them something they never asked for is simply astounding.

Defendants had ample opportunity to develop evidence on the Cell 11 Incident if they had wanted to.  During an August 4, 2022 court conference, Mr. Williams informed Defendants and the Court exactly what his theory would be at trial regarding the Cell 11 Incident, and the Court echoed that explanation in overruling Defendants' objection to pursuing discovery about it. *See* Ex. MM at 40:7–10 ("It may be that the plaintiff will argue that it is admissible on a theory of consciousness of wrongdoing or is able to link it up and they win."); *id.* at 40:16–17 ("[Plaintiff's counsel] have now told you testimony that they believe will be admissible on their claim."). Defendants were provided an opportunity to identify witnesses to the Cell 11 Incident so those witnesses could be deposed, and were explicitly warned by the Court that they bore the risk of failing to identify witnesses.  *Id.* at 40:10–13 ("[W]hat I will want to avoid is a circumstance in which the plaintiff is permitted to testify to this incident and you then say, oh, my gosh, now I need to call the officers.  That would be neither efficient nor fair."); *id.* at 40:22–24 ("If you don't want

12

to call them, you want to take your chances that I'll rule that the plaintiff can't introduce this into evidence, it's too attenuated, then that's also fine.").

Despite this ample warning, Defendants made the strategic choice to proceed as though the Court had already determined that evidence about the Cell 11 Incident was inadmissible. Defendants identified as their sole witness Captain Lucie Doliscar, who was nowhere near Mr. Williams's cell during the Cell 11 Incident and therefore had no personal knowledge of what happened.  *See* Pl.'s MIL Br. at 6–8.  Defendants did not include Captain Doliscar in their witness list in the Joint Pre-Trial Order.  *See* Proposed Joint Pre-Trial Order at 7, Dkt. 271.  Not once did Defendants seek to depose Mr. Williams, or obtain any other discovery about the Cell 11 Incident. The Court should not reward Defendants by excluding evidence of the Cell 11 Incident based on Defendants' ostrich-like performance.  Furthermore, if the Court permits Mr. Williams to testify about the Cell 11 Incident, Defendants will be able to cross-examine him about it at trial, thereby obviating any prejudice from not having obtained discovery.  *See Can't Live Without It, LLC* v. *ETS Express, Inc.*, 373 F. Supp. 3d 434, 441 (S.D.N.Y. 2018) (rejecting plaintiff's argument that it was prejudiced by certain evidence that defendant "disclosed . . . well before trial" and by its inability to present countervailing evidence because "[a]ny prejudice [defendant's evidence] caused was due to [plaintiff's] choice not to pursue readily available evidence" and, "[h]aving opted not to pursue this equally accessible and easily discoverable information, [plaintiff] cannot now complain that it is prejudiced without it," particularly after being able to cross-examine witnesses at trial about it).

As to the second point, Defendants argue that the Cell 11 Incident should have been alleged in an amended complaint so that they could challenge the sufficiency of that pleading through a Rule 12(b)(6) motion.  Defs. MIL Br. at 12.  Again, this misunderstands Mr. Williams's theory

regarding the Cell 11 Incident:  it is merely evidence that Defendant Mathis acted with retaliatory intent in 2019, when he threatened Mr. Williams at the MDC.  This claim is not only adequately pleaded, it is supported by sufficient evidence to have survived Defendants' motion for summary judgment.  *See* R. & R. at 48–53, Dkt. 186.  The addition of the Cell 11 Incident in an amended complaint—which is only *additional* evidence in support of Mr. Williams's existing claim— would not suddenly render his prior allegations insufficient to state a claim.

IX.   **Plaintiff's Proposed** Exhibits **Are Admissible**

A.   **Grievances, Court Filings,** and December **16, 2019 Order**

Defendants have moved to exclude Mr. Williams's grievances; court filings including the Complaint, Amended Complaint, Defendant Mathis's Answer to the Amended Complaint, and Mr. Williams's response to Defendants' motion to dismiss; and the Court's December 16, 2019 Order.  *See* Defs.' MIL Br. at 13–14 (in subsection (a), moving to exclude Exs. J–O, Q, S–Z, AA, DD, Dkts. 282-10–282-15, 282-17, 282-19–282-26, 282-27, 282-30, and Ex. SS (grievances); in subsection (b), moving to exclude Exs. P, R, and BB, Dkts. 282-16, 282-18, 282-28 (Complaint, Amended Complaint, and Defendant Mathis's Answer to the Amended Complaint); in subsection (c), moving to exclude Ex. CC, Dkt. 282-29 (Dec. 16, 2019 Order); in subsection (d), moving to exclude Ex. EE, Dkt. 282-31 (Plaintiff's response to Defendants' motion to dismiss)).  Defendants variously complain that these documents are hearsay and that they should be excluded under Rule 403.  Both arguments fail.

As Mr. Williams explained when moving *in limine* to admit these exhibits, he is not offering these documents for the truth of the matters asserted in them.  Rather, Mr. Williams offers the grievances and court filings for non-hearsay purposes:  (i) to establish that Mr. Williams engaged in First-Amendment protected activity; (ii) to establish that Defendants knew he had done so; (iii) to establish the close timing between the filing of Defendant Mathis's Answer, the Court's

December 16, 2019 Order, and Defendant Mathis's December 2019 incident of retaliation, which is circumstantial evidence of the causal connection between Mr. Williams's protected activities and Defendant Mathis's retaliatory acts; and (iv) to establish that Defendant Mathis's retaliatory threats caused Mr. Williams to seek to drop Defendant Mathis from this lawsuit when Mr. Williams responded to Defendants' motion to dismiss.  *See* Pl.'s MIL Br. at 22–23. Mr. Williams's grievances and court papers are clearly relevant to these issues, and thus should be admitted as they are being used for a non-hearsay purpose.[2]

Furthermore, the Rule 403 balancing test weighs squarely against exclusion.  For the reasons set forth above, these exhibits are highly probative of the elements of Mr. Williams's claim, including that Mr. Williams engaged in activity protected by the First Amendment and that this activity was the cause of Defendants' retaliation.  Defendants fail to explain why, in their view, the high probative value of these documents is "substantially outweighed" by any danger of unfair prejudice. Fed. R. Evid. 403. Moreover, these exhibits are corroborative, not cumulative, of Mr. Williams's anticipated testimony.  *See United States* v. *Kuo Chen*, 2011 WL 197585, at *3 (E.D.N.Y. Jan. 20, 2011) (holding that evidence was not cumulative when it corroborated other evidence).  To the extent there is any risk of jury confusion or prejudice, that risk easily can be abated by the Court delivering a limiting instruction.  *See Ismail* v. *Cohen*, 706 F. Supp. 243, 253

---

[2]    Although Mr. Williams did not move *in limine* to admit Exhibit SS (and is not seeking to do so here), similar arguments apply and counsel against *excluding* it at this juncture.  Exhibit SS is a statement Mr. Williams provided in connection with Defendant Mathis's investigation into Mr. Williams's allegations that Defendant Wells stole legal papers from his cell in September 2019.  Exhibit SS could be used for the non-hearsay purpose of establishing that Mr. Williams engaged in the verbal act of providing this statement.  *See Munafo* v. *Metro. Transp. Auth.*, 2003 WL 21799913, at *17 (E.D.N.Y. Jan. 22, 2003) ("The definition of hearsay excludes the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." (internal quotation marks and citation omitted)).

(S.D.N.Y. 1989) (admitting evidence when, as here, it demonstrated that certain elements of the claims at issue were satisfied, and explaining that limiting instruction would "guard against" potential prejudice).

> B.   Exhibits **Concerning the Cell 11 Incident**

Defendants also move to exclude Mr. Williams's proposed exhibits regarding the Cell 11 Incident, for the same reasons that all testimony or other evidence about this incident should be excluded. Defs.' MIL Br. at 15 (subsection (e)). For the same reasons set forth above, Defendants are wrong about the admissibility of evidence regarding the Cell 11 Incident. *See supra* Section VIII; *see also* Pl.'s MIL Br. at 9–13.

Moreover, Defendants' arguments that these particular exhibits are cumulative, contain irrelevant information, or would be confusing to the jury should be rejected. Video footage related to the Cell 11 Incident (*See* Proposed Joint Pretrial Order at 13–14 (PX 28, 29, 32)) is admissible as substantive evidence to corroborate Mr. Williams's testimony about that Incident. Defendants' only argument on this point appears to be that the video footage is cumulative or confusing because it depicts events about which Mr. Williams will testify, and, therefore, it is per se inadmissible. Defs.' MIL Br. at 15. That is not the law. Courts have admitted evidence to corroborate even undisputed facts. *See, e.g.*, *United States* v. *Dore*, 2013 WL 3965281, at *8 (S.D.N.Y. July 31, 2013) (admitting video footage notwithstanding that a fact it established was undisputed).

In addition, the SRT Search Report (Ex. FF, Dkt. 282-32), letters from counsel (Ex. GG, Dkt. 282-33; Ex. NN), the Court's order (Ex. HH, Dkt. 282-34) and the conference transcript (Ex. II, Dkt. 282-35), and Defendants' amended Rule 26 disclosures (Ex. JJ, Dkt. 282-36) are necessary only to establish *why* Defendants have failed to proffer any witnesses to rebut Mr. Williams's testimony about the Cell 11 Incident. If the Court grants Mr. Williams's motion

*in limine* seeking an adverse-inference jury instruction, *see* Pl.'s MIL Br. at 6–9, Mr. Williams does not intend to introduce these exhibits at trial.

###### C.      **Inmate Grievance Procedures**

Defendants finally move to exclude DOC's Directive on Inmate Grievance Procedures (Ex. OO), arguing that this document is irrelevant and would be confusing to the jury.  Defs.' MIL Br. at 15 (subsection (f)).  To the contrary, the Inmate Grievance Procedures are relevant because Defendants' *deviations* from these procedures in processing and investigating Mr. Williams's grievances tend to make it more probable that they had retaliatory intent—a central element of Mr. Williams's First Amendment retaliation claim.  *See Macera v. Vill. Bd. of Ilion*, 2017 WL 1194236, at *4 (N.D.N.Y. Mar. 30, 2017) ("'[D]eviation from standard procedure' can provide circumstantial evidence of retaliatory motive" (alterations omitted) (quoting *Tomlins* v. *Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 373 (S.D.N.Y. 2011))).  And again, any potential risk of confusing the jury could be cured with a limiting instruction.

## X.      **Plaintiff Does Not Intend to Elicit Testimony About the Court's** October **27, 2022 Order**

Defendants seek to exclude any testimony about the Court's October 27, 2022 Order, Dkt. 232, which memorialized the Court's warning to Defendants and DOC given at an October 26, 2022 conference, that additional incidents of retaliation against Mr. Williams "may constitute violations of state or federal civil rights laws as well as of federal criminal law."  *See* Defs.' MIL Br. at 16.  At present, Mr. Williams has no intent to introduce testimony about the Court's October 27, 2022 Order, or the October 26, 2022 conference that preceded it, but reserves all rights to seek to introduce such testimony at a later time if Defendants' testimony at trial opens the door to revisiting this issue.

## XI.   **Defendants' Disciplinary Histories Constitute Prior Similar Act Evidence** and **thus Should Not Be Excluded**

Defendants' final motion seeks to exclude all allegations of prior or subsequent[3] misconduct by Defendants and any other correctional officers, other than those specific incidents at issue in this case.  *See* Defs.' MIL Br. at 16–18.  Because the only two witnesses Defendants intend to call are Defendants Mathis and Wells, it is only their disciplinary histories that are truly at issue on this motion.

To be admissible under Rule 404(b)(2), evidence of a similar act must be "sufficiently similar" to the alleged conduct at issue, *United States* v. *Aminy*, 15 F.3d 258, 260 (2d Cir.1994) (internal quotations and citation omitted), and meet the Rule 403 balancing test, *United States* v. *Peterson*, 808 F.2d 969, 974 (2d Cir. 1987).  This is a fact-specific inquiry that defies determination on a categorical basis.  *See United States v. Ubaldo*, 859 F.3d 690, 705 (9th Cir. 2017) ("[T]he considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues."); *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1016 n.9 (9th Cir. 1995) (noting that Rule 404(b) implicates a "highly fact-specific" inquiry).  Nevertheless, Defendants do not describe what specific prior or subsequent allegations of misconduct they seek to exclude that would allow the Court to conduct this fact-specific inquiry, and instead ask for a blanket ban on all use of such evidence.  The Court should deny Defendants' motion on this basis alone.

If the Court were to look at the actual disciplinary histories of Defendants, however, it should still deny the motion.  Defendant Wells testified in his deposition that he was the subject of an investigation by DOC for inaccurate report writing, which resulted in him being disciplined

---

[3]    The only subsequent misconduct by either Defendant that Mr. Williams intends to introduce relates to the Cell 11 Incident.  For the reasons described above, *supra* Section VIII, that evidence should not be excluded, and instead should be admitted.

and his "[c]omp days [being] taken away."  Ex. PP at 31:24–34:14.  This incident would be relevant to the jury's determination of what weight it should give to the investigation conducted by Defendant Mathis that found, based in part on a statement from Defendant Wells, that Mr. Williams's allegations that Defendant Wells stole legal papers from his cell were unsubstantiated.  Ex. RR.  The jury should be able to consider the fact that Defendant Wells was previously disciplined for writing an inaccurate report when evaluating his  credibility in participating in the investigation of Mr. Williams's grievance against him.

Defendant Mathis testified in his deposition that he was previously disciplined for an unauthorized use of force incident.  Ex. QQ at 170:22–173:7, 175:16–177:3.  The jury should be able to hear about this incident, and determine to what extent it bears on the likelihood that Defendants Mathis threatened Mr. Williams in this case, including by warning Mr. Williams that if Mr. Williams "didn't take him out" of this case, Defendant Mathis "was going to make his [s]tay at M.D.C. hard."  Ex. D at 46:8–15, Dkt. 282-3.

## CONCLUSION

For the foregoing reasons, Defendants' motions *in limine* should be denied and, as applicable, Plaintiff's cross-motions *in limine* should be granted.

Dated: April 3, 2023

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  /s/ *Robert J. O'Loughlin*

_____

Daniel J. Beller
Moses Silverman
Robert J. O'Loughlin
Hillary Black
Simona Xu
Christie Wan
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
*Attorneys for Plaintiff Alexander Williams*