```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/12/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                               :

ALEXANDER WILLIAMS JR.,             :

                         :

               Plaintiff,      :

                         :          19-cv-3347 (LJL)

      -v-                   :

                         :         OPINION AND ORDER

THE CITY OF NEW YORK, CAPT BERNARD    :
MATHIS, CAPTAIN JOHN HERNANDEZ, CAPT  :
GORITZ, ADW HARVEY, WARDEN SWUAREZ,  :
DEPUTY GALLOWAY, DEPUTY BAILEY, CO   :
SANDRA ESPINOZA AND CO WELLS,       :

                         :

               Defendants.     :

                         :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

     Plaintiff Alexander Williams, Jr. ("Plaintiff" or "Williams") brings this action under 42

U.S.C. § 1983, alleging that Defendants Bernard Mathis ("Mathis") and Jakar Wells ("Wells,"

and with Mathis, "Defendants") violated his rights under the First and Fourteenth Amendments

to the United States Constitution by retaliating against him for exercising his First Amendment

rights.  Specifically, Plaintiff complains that, in 2019, while he was detained by the New York

City Department of Corrections at the Manhattan Detention Complex ("MDC"), he complained

about restrictions on his access to mail and his use of the prison law library by filing grievances.

He alleges that Mathis retaliated against him for filing these grievances and thereafter a lawsuit

by (1) telling him that if he did no stop complaining, Mathis would see to it that Plaintiff did not

receive mail; (2) acting aggressively towards Plaintiff; and (3) threatening that if Plaintiff did not

drop his lawsuits, he would make Plaintiff's stay at the MDC "hard."  Plaintiff alleges that, as

retaliation, Wells and another officer, during a search of Plaintiff's cell, stole legal papers

belonging to Plaintiff that related to Plaintiff's ongoing or planned lawsuits. Dkt. No. 271 at 5. Trial in this case is scheduled for May 1, 2023.

Each of Plaintiff and Defendants have filed numerous motions *in limine*. Dkt. Nos. 277–78 (Defendants' motion *in limine*); Dkt. Nos. 280–82 (Plaintiff's motion *in limine*). Each has filed opposition memoranda to the motion of the other party. Dkt. Nos. 287–88 (Plaintiff's opposition); Dkt. No. 289 (Defendants' opposition). This Opinion and Order resolves these pending motions *in limine*.

## LEGAL STANDARD

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). The decision whether to grant an *in limine* motion "resides in a district court's inherent and discretionary 'authority to manage the course of its trials.'" *United States v. Ray*, 2022 WL 558146, at *1 (S.D.N.Y. Feb. 24, 2022) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

**DISCUSSION**

I.      **Exclusion of Prior Convictions and Arrests**

Plaintiff moves for an order precluding Defendants from introducing for any purposes, including impeachment, evidence of his prior criminal history and that of Plaintiff's witness Mr. Samuel Ceruti.  Dkt. No. 281 at 13–20.

Plaintiff testified at his deposition that, in 2012, he was tried on drug charges but "jumped bail" and, once he "got caught," pleaded guilty to the drug charges under terms of a plea deal that made it "concurrent" with the bail jumping.  Dkt. No 282-3 at 12, 71.  He served four-and-a-half years and was released in April 2016.  *Id*. at 71.  He is currently detained because he is "charged in a murder case."  *Id*. at 12.  At his deposition, Mr. Ceruti testified that he is serving a 12-and-a-half to 25 year prison sentence on a conviction for "conspiracy," to which he pleaded guilty after he was arrested for murder, a charge that was subsequently dismissed.  Dkt. No. 282-5 at 103–04.  In connection with the same events, Mr. Ceruti pleaded guilty to a federal count of trafficking stolen merchandise and received a "concurrent" sentence of "45 days' time served."  *Id*. at 110–11.  Previously, in 1997, he was convicted for first-degree robbery and sentenced to 18 months of imprisonment and was released in 1998 on that charge.  *Id*. at 102, 114.  In 2003, he was convicted of second-degree robbery, and was released from prison in March 2013.  *Id*. at 102.  He also testified that he has been arrested for (1) trespass and loitering; and (2) an assault that occurred in jail.  *Id*. at 106–07, 108–09.  The parties have not submitted records indicating the precise charges for each of the convictions or the terms of imprisonment to which a person convicted of those crimes could be sentenced.

Plaintiff argues that the convictions that are less than ten years old should be excluded because their probative value is substantially outweighed by the danger of unfair prejudice, that the convictions older than ten years should be excluded under Federal Rule of Evidence 609(b),

and that the arrests that have not yet led to convictions are inadmissible under Federal Rule of Evidence 608. Dkt. No. 20 at 14–20. The Court considers each issue in turn.

### A.       Admissibility of Convictions Less Than Ten Years Old

Plaintiff moves to exclude his own prior convictions as well as those of his witness, Mr. Ceruti, that are less than ten years old from being used for impeachment purposes and in Defendants' case-in-chief. Dkt. No. 281 at 14, 16, 18–19. As noted, Plaintiff pleaded guilty to drug charges and bail jumping in 2012 and served four-and-a-half years in prison on these charges before being released in April 2016. Dkt. No 282-3 at 71. Mr. Ceruti is currently serving a 12-and-a-half to 25 year prison sentence for a "conspiracy" charge in relation to a second-degree murder charge that was dismissed. Dkt. No. 282-5 at 103–04. Mr. Ceruti also pleaded guilty to federal charges of trafficking stolen merchandise in relation to the same events as the conspiracy charge, and received a concurrent sentence of 45 days' time served. *Id*. at 110–11.

Federal Rule of Evidence 609(a)(1) provides that a witness's character for truthfulness may be attacked "by evidence of a criminal conviction . . . for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year." Fed. R. Evid. 609(a)(1). For convictions where fewer than ten years have passed since the later of the date of conviction or the witness's release from confinement for it, such evidence "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A). Under Rule 403, such evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The presumption under Rule 609(a) "is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed" are to be admitted for impeachment purposes.

*United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005).

For the Rule 403 analysis under Rule 609(a)(1), the Second Circuit has instructed that "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *Id.* at 617. "In balancing probative value against prejudicial effect under [Rule 609(a)(1)], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)); *City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 16901995, at *8 (S.D.N.Y. Nov. 11, 2022) (denying admission of evidence of murder-for-hire); *Casmento v. Volmar Constr., Inc.*, 2022 WL 1094529, at *3 (S.D.N.Y. Apr. 12, 2022) (assessing these factors in Rule 609(b) context of falsification of business records conviction more than 10 years earlier); *Djangmah v. Falcione*, 2013 WL 6388364, at *12 (S.D.N.Y. Dec. 5, 2013) (admitting evidence of larceny conviction).

Under Federal Rule of Evidence 609(a)(2), by contrast, evidence of a criminal conviction "for any crime regardless of punishment . . . must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

The Court excludes evidence of Plaintiff's drug-related conviction; Defendants will not be permitted to cross-examine on that conviction. Although Plaintiff's credibility is critical and the prior conviction and the claims at issue in this case are dissimilar, diminishing the risk of prejudice, other factors weigh more heavily in the analysis. The Second Circuit has repeatedly instructed that narcotics-related crimes generally are "less probative of veracity" than "crimes

that reflect adversely on a person's integrity, and which therefore bear on honesty[,] such as those involving deceit, fraud and theft." *Estrada*, 430 F.3d at 617–18; *see also United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971) ("[W]e do not believe that a narcotics conviction is particularly relevant to in-court veracity."); *Picciano v. McLoughlin*, 2010 WL 4366999, at *3 (N.D.N.Y 2010) ("Drug crimes are generally not crimes involving dishonesty or false statement."); *Daniels*, 986 F. Supp. at 249 (stating that drug crimes "do not automatically implicate the use of dishonesty or false statements").

Furthermore, Defendants have not adduced any facts regarding Plaintiff's 2012 drug-related conviction that bear on Plaintiff's veracity. There is no evidence, for example, that the crime involved "planning or preparation," *Estrada*, 430 F.3d at 618 (citation omitted), or that it involved drug importation or smuggling, *id.* Moreover, substantial time will have passed between the time Plaintiff committed the crime and was convicted and when he will be testifying at trial. More than ten years will have passed from the date of conviction. "The probative force [of the conviction] is greatly diminished by its age." *Puco*, 453 F.2d at 543.

The analysis with respect to bail jumping is more complicated. Neither side has addressed whether Mr. Williams's offense was punishable by a term of imprisonment of more than one year.[1] Assuming Defendants can establish that it was punishable by a term of imprisonment of more than one year, the conviction would be admissible for impeachment purposes. Although there is scant case law in this Circuit with respect to the use of a bail-jumping conviction for impeachment, the Second Circuit has held that "escape crimes" rank high on "the scale of probative worth on credibility." *Estrada*, 430 F.3d at 618. Bail-jumping is

---

[1] Under the New York Penal Law, bail jumping in the first degree and in the second degree are felonies, N.Y. Penal Law §§ 215.56, 215.57, whereas bail jumping in the third degree is a misdemeanor, *id.* § 215.55.

classified in New York as an "Offense[ ] Relating to Judicial and Other Proceedings."  N.Y.

Penal Law Article 215.  It involves a failure to appear in court as required by the terms of his

release.  N.Y. Penal Law § 215.55.  Although "no proof of any culpable state of mind is

required" under the bail jumping statute, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1155 (2d Cir.

1995) (quoting *People v. McMillian*, 571 N.Y.S.2d 782, 784 (2d Dep't 1991)), Plaintiff testified

in his deposition that he "jumped bail" "while the jury was deliberating," and that he "was

captured in another state."  Dkt. No. 282-3 at 70–71.  Plaintiff's bail-jumping conviction thus

bears directly on Plaintiff's veracity and integrity.  If Plaintiff was willing, for his own purposes,

to violate a court's order that he appear as required, it would not be unreasonable for a jury to

infer that—for his own purposes—he would violate his oath to tell the truth in court.  Any

prejudice Plaintiff would suffer from being impeached by the prior conviction will flow from its

probative force and thus is not a basis for exclusion.  *See Romanelli v. Suliene*, 615 F.3d 847,

854–55 (7th Cir. 2010) (holding that district court acted within its discretion in permitting use of

plaintiff's felony convictions for sexual assault and bail jumping for impeachment).  Moreover,

Plaintiff brings this case as a prisoner's civil rights case.  It will be no great surprise to the jury

(and thus not particularly prejudicial) for it to know that Plaintiff has been the subject of an

arrest.  Finally, given the importance of Plaintiff's testimony, as one of two witnesses who will

testify to his version of events, any prejudice to him would be outweighed by the probative force

of this evidence.[2]

---

[2] The Court is not persuaded that the result in *Corning v. MTD Products, Inc.*, 2018 WL 1365822
(W.D.W.A. 2018), compels exclusion of the bail-jumping conviction here.  In *Corning*, the court
found that "[p]laintiff's testimony and credibility [were] unlikely to be determinative" and that
defendants could impeach plaintiff's testimony as to his injuries with medical records and select
financial documents.  *Id.* at *1.  By contrast, here, Plaintiff's testimony is likely to be critical, the
bail-jumping conviction is probative of his credibility, and any prejudicial impact is substantially
mitigated by the very fact that Plaintiff brings this case challenging conditions to which he would

The Court grants Plaintiff's motion to exclude evidence of Mr. Ceruti's conviction for trafficking stolen merchandise, for which he received a concurrent 45-day sentence. Dkt. No. 282-5 at 110–11. Defendants have proffered no evidence that the crime for which Mr. Ceruti was convicted was punishable by a term of imprisonment for more than one year. Accordingly, Rule 609(a)(2) governs its admissibility and the conviction can be used for impeachment only if it required proof of a "dishonest act or false statement." Fed. R. Evid. 609(a)(2). The Second Circuit has instructed that these terms are to be defined "narrowly" "[b]ecause this rule is quite inflexible, allowing no leeway for consideration of mitigating circumstances." *Hayes*, 553 F.2d at 827. "Congress emphasized that the second prong was meant to refer to convictions 'peculiarly probative of credibility,' such as those for 'perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.'" *Id.* (citations omitted). "If the title of the offense leaves room for doubt," the proponent of such evidence must demonstrate to the court "that a particular prior conviction rested on facts warranting the dishonesty or false statement description." *Id.* (citation omitted). Crimes such as trafficking in stolen property do not by definition involve a dishonest act or false statement. *See Daniels,* 986 F. Supp. at 249 (quoting *Hayes*, 553 F.2d at 827). Defendants have not proffered that the particular facts of Mr. Ceruti's conviction involved dishonesty or a false statement. Accordingly, there is no basis for admission of the conviction.

---

be subject only if he had been charged with a crime.

Finally, the Court reserves on the motion to exclude evidence regarding Mr. Ceruti's conspiracy conviction until the final pretrial conference because the record does not permit the Court to determine the exact nature of the conspiracy crime of which Mr. Ceruti was convicted.

### B.     Admissibility of Mr. Ceruti's Convictions Greater Than Ten Years Old

Plaintiff moves to exclude evidence of Mr. Ceruti's more-than-ten-year-old convictions for impeachment purposes.  Dkt. No. 281 at 18.  The Court grants the motion and will exclude evidence of these convictions.

Mr. Ceruti was convicted of first-degree robbery in 1997 and served approximately 18 months in prison for this charge before being released in 1998.  Dkt. No. 282-5 at 102, 114.  Mr. Ceruti was also convicted of second-degree robbery in 2003 and was released from prison in March 2013.  *Id*. at 102.

Federal Rule of Evidence 609(b) provides that for a conviction greater than ten years old, "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).  The ten years is measured from "the witness's conviction or release from confinement for it, whichever is later."  *Id.*  Before admitting a conviction under Rule 609(b), "the district judge must make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice."  *United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978); *see also United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998) ("A determination that the probative value of the conviction substantially outweighs its prejudicial effect must be made on-the-record and based on 'specific facts and circumstances.'" (quoting Fed. R. Evid. 609(b))).

The Second Circuit has held that "convictions over ten years old [should] be admitted very rarely and only in exceptional circumstances." *Scotto v. Brady*, 410 F. App'x 355, 360 (2d Cir. 2010) (quoting *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993)). "The court considers the same factors it considers with respect to Rule 609(a), including the impeachment value of the prior conviction, whether credibility is a crucial issue, whether the two crimes are so similar as to invite improper inferences, and the age of the prior conviction and the defendant's subsequent history." *Marshall v. Port Auth. of New York & New Jersey*, 2022 WL 17491006, at *3 (S.D.N.Y. Dec. 5, 2022).

Although Mr. Ceruti's credibility will be important at trial and the robbery conviction "bears no resemblance" to the alleged civil rights violations by the Defendants in this case, *Daniels*, 986 F. Supp. at 250, thereby reducing potential for prejudice, other factors cut in the opposite direction.  In particular, by the time of trial, approximately twenty-five years will have elapsed from Mr. Ceruti's release from confinement for the first-degree robbery conviction and just over ten years will have passed from his release from confinement for the second-degree robbery conviction.  Twenty years will have passed since the most recent of those convictions— and presumably more than 20 years since the date of the crime.  *See Coleman v. Durkin*, 585 F. Supp. 3d 208, 214 (N.D.N.Y. 2022) (finding that a conviction from fifteen years ago was remote).  Moreover, robbery is not a crimen falsi that bears directly on the likelihood that the defendant will testify falsely.  *See Hayes*, 553 F.2d at 827.  Accordingly, the Court excludes evidence of those convictions for purposes of impeachment.

## C.     Exclusion of Arrests That Have Not Resulted in Convictions

Plaintiff also moves to exclude the arrests of Plaintiff and Mr. Ceruti that have not resulted in convictions.  Dkt. No. 281 at 19.  The Court grants the motion.

Plaintiff is currently charged with murder and awaits trial. *Id.* Because there has been no conviction on this charge, the only possible path to admission involves Federal Rule of Evidence 608, which permits the court to allow a witness to be examined on specific instances of conduct that are probative of the character of a witness for truthfulness or untruthfulness but does not permit extrinsic evidence to be received for purposes of proving those specific instances of conduct. Fed. R. Evid. 608(b). The question that thus arises is whether Plaintiff and Mr. Ceruti can be examined on whether they committed murder and whether such acts would constitute instances of conduct probative of the witness's character for truthfulness and, if so, whether the Court should permit the examination, assessing whether the prejudicial impact exceeds the probative value. *See Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991) (stating that courts "balance[ ] the relevance of this evidence against its potential for undue prejudice under Rule 403").

It is a popular notion that one who has violated societal norms in the past to commit a crime may be willing to do so again, and of course, "the gravity of an offense may bear on truthfulness, to the extent that more serious offenses indicate a stronger willingness to ignore the law," *Estrada*, 430 F.3d at 618. But the law requires a more refined analysis. All persons — including those accused of murder—appear as equals before a court of law. The Court must consider whether there is probative value to the evidence and whether the evidence "carries a strong risk of unfairly prejudicing plaintiff," *Giles v. Rhodes*, 2000 WL 1425046, at *13 (S.D.N.Y. 2000). "[A]cts of violence, 'which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity.'" *Estrada*, 430 F.3d at 617 (alterations omitted) (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)). Mr. Ceruti's murder charge was later dismissed. Plaintiff's

charge has not been adjudicated.  Examination on those topics—which also might result in

Plaintiff having to invoke his Fifth Amendment rights—carries the unmistakable risk that the

jury will judge Plaintiff's case not on the strength (or lack of strength) of the evidence but on the

jury's sympathy, or more precisely lack of sympathy, for the Plaintiff personally.  Therefore, the

Court will exclude the arrests of Plaintiff and Mr. Ceruti that have not led to convictions.

II.    **Exclusion of Reasons for the Lockdown Orders and the Lockdown Orders Themselves**

    A.    **Exclusion of the Fact of the Lockdown Orders and Command Level Orders**

Plaintiff moves the Court to exclude the lockdown and command level orders to which

Plaintiff and Mr. Ceruti were subjected.  Dkt. No. 281 at 20.  Specifically, Plaintiff argues that

"[i]t is undisputed that both Mr. Williams and Mr. Ceruti were subject to lockdown orders" and

that the issue in this case concerns whether Defendants retaliated against Plaintiff after Plaintiff

complained of his confinement conditions.  *Id*. at 20–21; Dkt. No. 287 at 1–2.  Defendants argue

that presenting the lockdown orders is central to their defense, since Plaintiff argues that

Defendants purposely restricted his access to mail and the prison law library as retaliation while

Defendants contend that Plaintiff's loss of access to mail and the prison law library was due to

the lockdown orders that required Plaintiff to be housed in a secure area and prevented him from

communicating with others.  Dkt. No. 278 at 3–5.   Plaintiff also moves the Court to exclude any

testimony about the *reasons* or context of the lockdown orders.  Dkt. No. 281 at 21.

The Court will exclude evidence of the fact and content of the lockdown and command

level orders, but if Plaintiff opens the door by introducing evidence or argument that he was

subject to mail or law library restrictions, the Court will instruct the jury that such restrictions

were imposed by court order and that the jury is not to consider the question of why Plaintiff was

subject to those restrictions and that they were proper and lawful.  (In particular, if any of

Plaintiff's grievances concern restrictions imposed as a result of those orders, the Court will give

an instruction that the restrictions were lawful.)  Under Federal Rule of Evidence 401, evidence

is relevant if "(a) it has any tendency to make a fact more or less probable than it would be

without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R.

Evid. 401.  Under Rule 403, relevant evidence can be excluded "if its probative value is

substantially outweighed by a danger" such as "unfair prejudice, confusing the issues, misleading

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R.

Evid. 403.

The orders restrict access to the law library and outgoing mail, stating that "[i]nmates will

make all requests for Law Library materials in writing" and that "[u]nder no circumstances will

any inmate in Court Ordered Lockdown status be permitted to send out any written

correspondence or any other type of communication."  Dkt. No. 288-1 at ECF p. 4.   In addition,

they provide that whenever an inmate subject to the order "is removed from the housing area, he

shall be restrained in leg irons, waist chains and mitts" and "be under one-on-one observation of

a Correction Officer to assure no communication with any other inmate(s)."  *Id.*  The reasons that

Plaintiff was subjected to lockdown orders include that he "solicited the aid of other persons to

threaten, intimidate, and cause serious physical injury or death to witnesses, and has been

engaging in other conduct that raises serious, well-founded and legitimate concerns, that he

poses a continuing, significant risk to the safety of persons whom he perceives as being potential

witnesses against him."  Dkt. No. 282-1 at 10.

Plaintiff, however, does not challenge the restrictions on outgoing mail and law library

access imposed by the lockdown and command level orders.  He challenges alleged acts of

retaliation committed after he was subject to those orders and that were imposed as a result of his

grievances.  The acts of retaliation did not involve restrictions on outgoing mail or law library access.  They involved treatment of his incoming mail and restrictions on his ability to call his criminal defense attorney and to call the prison grievance hotline.  Dkt. No. 281 at 3.  Thus, the fact that Plaintiff was subject to restrictions on outgoing mail and on access to the law library and the reasons for those restrictions are irrelevant on the record before the Court.  Moreover, whether Plaintiff's grievances had merit is not a fact of consequence.  Even if the grievances had no merit, Plaintiff still had a right to make the grievances and to be free from retaliation for doing so.  And, if the grievances had merit, that would not entitle Plaintiff to a judgment against Defendants unless they personally retaliated against him.  The lawfulness of the restrictions, and the reasons why they were imposed, is of no consequence to the determination of the action.

Moreover, any limited probative value that the fact or basis of the lockdown orders would have would be substantially outweighed by a danger of unfair prejudice.  The lockdown orders were based on the conclusion that Plaintiff posed a sufficient danger to witnesses against him or those he perceived to be witnesses against him, such that he was placed in a much more secure facility while incarcerated.  In short, testimony about the lockdown orders risks leading the jury to the conclusion that Plaintiff is a dangerous man who creates a risk to society.  Those issues will, of course, be central to Plaintiff's forthcoming criminal trial.  But they are not central or even relevant to Plaintiff's civil trial here.  Even if Plaintiff is a violent man, that would not entitle Defendants to engage in acts of retaliation against him.  Nor would it deprive him of the right to receive compensation for wrongs that were done to him.  Even a "convicted felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).  The risk that the jury would take the evidence the wrong way—and punish Plaintiff not for the strength or lack of strength of the evidence—but

because of the conduct he is alleged to have engaged in, further supports exclusion of the evidence.[3]

### III.   Videotaped Testimony of Mr. Ceruti

Plaintiff seeks an order permitting him to offer the videotaped deposition testimony of Mr. Ceruti.  Mr. Ceruti is incarcerated at Great Meadow Correctional Facility in Comstock, New York, more than 100 miles from the Court.  His videotaped testimony was taken on January 27, 2023, after the Court reopened discovery, for the purpose of preserving it for trial.  *See* Dkt. No. 282-5.  Defendants' counsel was present for the deposition and had the opportunity to examine. Plaintiff argues that the testimony is admissible under Federal Rule of Civil Procedure 32(a)(4)(B) because Defendants were represented at the deposition and Plaintiff did not procure Mr. Ceruti's absence.  Dkt. No. 281 at 23–24.  For their part, Defendants argue that the testimony is inadmissible because Plaintiff has not demonstrated unavailability under Federal Rule of Evidence 804(a), has neither sought nor been denied a writ of habeas corpus ad testificandum for Mr. Ceruti's live appearance, nor has sought to compel him to appear by video from his correctional facility.  Dkt. No. 278 at 6.

The Court has had a previous occasion to consider a similar issue.  *See AmTrust N. Am., Inc. v. KF&B, Inc.*, 2020 WL 5552522, at *2 (S.D.N.Y. Sept. 16, 2020).  Federal Rule of Evidence 804 and Federal Rule of Civil Procedure 32(a) provide alternative means by which a party can introduce deposition testimony for its truth at trial.  *See* Fed. R. Civ. P. 43 ("At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise.").

---

[3] This ruling is subject to reconsideration if Plaintiff opens the door by introducing evidence or making arguments to which the lockdown and command level orders would constitute relevant rebuttal.

Under Federal Rule of Evidence 804(b), testimony that "was given at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one" is not excluded by the rule against hearsay if (1) "the declarant is unavailable as a witness"; and (2) it is "offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b). For purposes of this Rule, the declarant is "unavailable as a witness" if the declarant "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance." Fed. R. Evid. 804(a)(5)(A).

Federal Rule of Civil Procedure 32(a)(4) provides an alternative basis for the admission of deposition testimony of an unavailable witness. That Rule provides that:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
>
> . . . .
>
> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition, or
>
> . . . .
>
> (D) that the party offering the deposition could not procure the witnesses' attendance by subpoena.

Fed. R. Civ. P. 32(a)(4)(B), (D). Deposition testimony that is admissible under Federal Rule of Civil Procedure 32(a)(4)(B) or (D) that is not admissible under Federal Rule of Evidence 804, or vice versa, may still be introduced at trial, so long as such testimony would be admissible if the witness were present and testifying. *See* Fed. R. Civ. P. 32(b); *see also* 8A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2146 (3d ed. 2020) ("Beyond that, the evidence rules contain other provisions that might make deposition testimony admissible although Rule 32(a)(4) does not."); Steven S. Gensler and Lumen N. Mulligan, Federal Rules of

Civil Procedure, Rules and Commentary Rule 32 (Feb. 2020) ("The hearsay exception provided by Rule 32 operates independently of any exceptions that might exist under the Federal Rules of Evidence, although the admissibility criteria tend to overlap.").  Thus, where Rule 32(a)(4) is not met because a witness is less than 100 miles from the place of hearing or trial, the party seeking to use the deposition may still admit such testimony if it shows that, *inter alia*, by "process or other reasonable means" it has attempted to procure the testimony under Rule 804(a)(5).  *See*, *e.g.*, *Rao v. Rodriguez*, 2017 WL 1753489, at *1 (E.D.N.Y. May 1, 2017) (deposition testimony was admissible under Fed. R. Evid. 804, but not under Fed. R. Civ. P. 32); *Samad Bros., Inc. v. Bokara Rug Co.*, 2012 WL 43613, at *3 (S.D.N.Y. Jan. 9, 2012) ("[U]nder Rule 32(a)(4), [declarant]'s deposition testimony will likely be admissible at trial under the Federal Rules of Evidence and the Federal Rules of Civil Procedure."); *Carbotrade SpA v. Bureau Veritas*, 1994 WL 9652, at *2 (S.D.N.Y. Jan. 13, 1994) (discussing, as alternative options, admission of deposition testimony under either Federal Rule of Civil Procedure 32(a) or Federal Rule of Evidence 804).  By the same token, Rule 32(a)(4) relieves the proponent of deposition testimony from the requirement to show that it used "reasonable means" as defined by Federal Rule of Evidence 804(b) to procure the attendance of a witness if, for example, the witness is more than 100 miles from the courthouse (and thus cannot be subpoenaed), but the testimony that is permitted is only that which was taken as a deposition in the case.  It is not sufficient that it was given in a trial, hearing, or deposition in a different proceeding or if the party against whom it was offered or its predecessor in interest had an opportunity and similar interest to examine.  "Evidence authorized by Rule 32(a) cannot be excluded as hearsay, unless it would be inadmissible even if delivered in court."  *Ueland v. United States*, 291 F.3d 993, 996 (7th Cir. 2002).

Defendants protest that the Federal Rules express a preference for live testimony, Dkt.

No. 278 at 5 (citing Fed. R. Civ. P. 43), and that Plaintiff could have but did not present to the

Court a request for a writ of habeas corpus ad testificandum to bring Mr. Ceruti to the Court.

But the rule that Plaintiff invokes makes clear that exceptions to the taking of testimony live in

Court include those set forth elsewhere in the Federal Rules of Civil Procedure, including in

Federal Rule of Civil Procedure 32(a)(4).  And Defendants do not cite a case for the proposition

that the plaintiff must request a writ of habeas corpus ad testificandum and have the U.S.

Marshals deliver a prisoner often great distances, lest the plaintiff be deprived of the testimony of

a prisoner witness at trial.  And, to the extent that Defendants would have preferred also having

Mr. Ceruti brought before the Court and having him shown in person to the jury, it bears mention

that Defendants too could have requested a writ of habeas corpus ad testificandum.  Thus, the

Court will admit his video deposition under Federal Rule of Civil Procedure 32(a)(4)(B).

## IV.    Testimony About the Cell 11 Incident

Plaintiff alleges that on July 28, 2022, while Plaintiff was housed in Cell 11 of Unit 2A

on Rikers Island, several officers from a "Strategic Response Team" strip-searched him and

threatened that if he did not "drop" charges against Defendant Mathis, whom the officers

referred to as the "captain of the Strategic Response Team," such searches would "become the

norm" for Plaintiff ("Cell 11 incident").  Dkt. No. 282-33 at ECF pp. 5–6.

### A.    Plaintiff's Testimony Regarding the Cell 11 Incident

Plaintiff seeks to admit his own testimony regarding the Cell 11 incident.  Dkt. No. 281 at

4, 9.  Specifically, Plaintiff seeks to introduce his testimony as evidence of a subsequent similar

act of Defendant Mathis to demonstrate retaliatory intent under Federal Rule of Evidence 404(b).

*Id*.  The Court will allow Plaintiff to testify about the Cell 11 incident.

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but that such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "[E]vidence of another act should not be admitted as proof of the defendant's knowledge or intent unless the other act is 'sufficiently similar to the conduct at issue.'" *U.S. v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)). Here, the retaliatory conduct Plaintiff alleges on the part of Defendants is very similar to the conduct Plaintiff alleges that the officers took against him during the Cell 11 incident. Plaintiff argues that evidence of the Cell 11 incident is probative of Mr. Mathis's intent in two ways: (1) it makes it more probable that the threats leveled against Mr. Williams in December 2019 were connected to Williams's inclusion of Mathis in this lawsuit and (2) it makes it more likely that Mathis intended to execute the threat to make Williams's period of incarceration "hard" because it shows that Mathis actually made Williams's incarceration "hard." Plaintiff proffers that he will offer evidence that Mathis was the supervisor of the officers who conducted the search, even if Mathis was not physically present during the Cell 11 incident. The evidence is relevant for purposes other than propensity under Rule 404. "[T]he incident relates to the possibility of there being a motive behind the corrections officers['] acts and the possibility" that Defendants intended the retaliatory acts against Plaintiff. *Eng v. Scully*, 146 F.R.D. 74, 80 (S.D.N.Y. 1993). Moreover, "[t]his Circuit has recognized the importance of allowing civil rights plaintiffs to present evidence showing the wrongful intent of state actors." *Lombardo v. Stone*, 2002 WL 113913, at *7 (S.D.N.Y. 2002); *see also Ismail v. Cohen*, 706 F.Supp.243, 252–53 (S.D.N.Y.

1989) (holding that evidence of subsequent similar behavior by a police officer in a civil rights claim is admissible to demonstrate intent).

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. There is no risk that the testimony will unduly delay the trial, waste time, or needlessly present cumulative evidence. There is also little to no risk that the jury will take the evidence as propensity evidence and the Court is prepared to offer an instruction regarding the limited purposes for which the testimony is being received.

If, in the course of his testimony, Plaintiff testifies about statements made by the officers during the Cell 11 incident, those statements are admissible as non-hearsay to the extent that they are offered for a purpose other than for the truth of the matter asserted. For instance, the statements are admissible as non-hearsay if offered to illustrate the *fact* that retaliatory threats were made against Plaintiff, but not for the truth of the matter asserted.

### B. Preclusion of Defendants Introducing Testimony of New Witnesses About the Cell 11 Incident

Plaintiff moves to preclude Defendants from introducing not-previously identified witnesses to testify about the Cell 11 incident. Dkt. No. 281 at 4, 6. The Court grants the motion.

In a conference on August 4, 2022, Plaintiff requested a copy of the video of the Cell 11 incident from the Defendants, as well as permission to depose the officers who were involved in the Cell 11 incident. Dkt. No. 213. In granting the Plaintiff's request, this Court imposed August 10, 2022, not only as the deadline for Defendants to provide Plaintiffs with a copy of the requested video, but also as the "deadline for Defendants to amend their Rule 26 disclosures to

designate witnesses with respect to the July 28, 2022 incident." *Id.* This Court made clear to Defendants that "[i]f no witnesses related to the incident are designated by that date, Defendants will be precluded from offering that testimony at trial." *Id.* In response, Defendants only listed Captain Lucie Doliscar on their amended Rule 26 disclosures. *See* Dkt. No. 282-36 at 3.

Federal Rule of Civil Procedure 37(c)(1) provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Monsour v. New York State Office for People With Developmental Disabilities*, 2016 WL 3248398, at *4 (N.D.N.Y. 2016) (quoting *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d. Cir. 2008)).

"Despite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Pal v. New York University*, 2008 WL 2627614, at *3 (S.D.N.Y. 2008) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)). "To determine whether evidence should be precluded, a court must consider '(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Monsour*, 2016 WL 3248398, at *4 (quoting *Softel, Inc. v. Dragon Med. and Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).

"The burden of proving substantial justification rests with the party which has failed to disclose information." *Id.* (internal quotation marks and citation omitted). Here, Defendants

have not provided any substantial justification for having failed to disclose witnesses beyond

Captain Doliscar on their Rule 26 disclosures.  In fact, Defendants admit that "Defendants'

preclusion from presenting July 28th witnesses other than Captain Doliscar is uncontroversial."

Dkt. No. 289 at 7.  Defendants further acknowledge that this Court ordered Defendants to

provide a comprehensive list of witnesses they seek to offer regarding the Cell 11 incident "or be

precluded from offering that testimony at trial," and that Defendants complied.  *Id*.  The Court

issued that order and gave that warning so that Plaintiff would have the opportunity to request a

deposition of the witness and so that the trial would not be delayed.  Defendants thus were

forewarned.  At this stage, permitting Defendants to call a new, non-identified witness would

cause prejudice to Plaintiff and undermine the Court's orders.  Plaintiff would have the right to

request a deposition of the new witness and the trial inevitably would be delayed.  Finally,

Defendants have not demonstrated the relevance of any new witness.  The Cell 11 incident itself

is not alleged to have violated any of Plaintiff's rights and will be received only as similar act

evidence.  By Defendants' argument, it is not even relevant as similar act evidence.  Defendants

also proffer that Captain Doliscar will be prepared to offer testimony that undermines Plaintiff's

account.  It is not true that Defendants were deprived of the "opportunity to serve discovery

demands upon plaintiff regarding" the incident because Plaintiff did not plead the incident.  Dkt.

No. 289 at 5.  Defendants had notice that Plaintiff intended to offer evidence of the incident and

never asked to re-depose Plaintiff.  Therefore, the Court will exercise its discretion in precluding

Defendants from offering witnesses other than Captain Doliscar, the sole addition to their Rule

26 disclosures.

C.   **Adverse Inference Instruction for Defendants' Failure to Produce Witnesses to the Cell 11 Incident**

Plaintiff moves the Court to issue, at trial, an adverse inference instruction for Defendants' failure to produce witnesses to the Cell 11 incident.  Dkt. No. 281 at 7.  The Court declines this invitation.  "Whether a missing witness charge should be given lies in the sound discretion of the trial court."  *U.S. v. Torres*, 845 F.2d 1165, 1170–71.  Plaintiff's attorney is, of course, permitted to argue and make clear to the jury that Defendants offered no witnesses with respect to the Cell 11 incident if that turns out to be true.  But the Court will not wade into any such arguments by means of issuing an adverse inference instruction.

V.   **Plaintiff's Proposed Exhibits**

A.   **Grievances, Court Filings, and the December 16, 2019 Order**

Plaintiff moves to admit various of his grievances and court filings, including those in this case, for the purposes of demonstrating that Plaintiff made grievances and brought legal claims that Defendants knew about.  Dkt. No. 281 at 22.  The documents Plaintiff seeks to admit include many grievances filed by Plaintiff in 2019, Plaintiff's Amended Complaint filed in May 2019, Defendants' Answer to the Amended Complaint filed in December 2019, a Court Order from December 2019 that scheduled an initial telephonic pre-trial conference, and Plaintiff's Response to Defendants' Motion to Dismiss.  *See* Dkt. No. 271 at 9–12.  Defendants have moved to exclude these grievances and court filings first on the grounds that, *inter alia*, the exhibits would be needlessly cumulative in light of the fact that Plaintiff will be testifying at trial, and second because the exhibits are inadmissible hearsay.  Dkt. No. 278 at 13.

The fact of the grievances and their general content plainly is relevant.  Plaintiff is not limited to testifying that he made grievances.  He is also permitted to offer evidence of the fact of those grievances, including their general nature and their timing.  The fact, timing, and general

content all may make it more likely that Defendants did retaliate against him based on his First Amendment-protected communications.  The documents are not hearsay because they will not be received for the truth of what they allege (and the Court will so instruct the jury) but for the limited but important fact that the Plaintiff made the grievances.  Defendants' argument that the exhibits should be precluded because they will be cumulative in addition to Plaintiff's testimony is unpersuasive.  The existence of these documents, including when they were filed, is relevant in this case.  The physical evidence that Mr. Williams made grievances makes it more likely that he will be testifying truthfully when he states that he filed grievances.

Defendants' argument that the evidence would be confusing and unduly prejudicial has more force.  But its force cannot be determined before trial on the basis of an *in limine* motion.  The Court therefore denies on Rule 403 grounds the motion to *admit* the grievances and reserves decision on whether all or some of the grievances are admitted until Plaintiff makes a specific proffer as to which grievances should be received and for what reasons, and the Court has an opportunity to consider the issue in context including in connection with whatever stipulation the Defendants are willing to make regarding the content, timing, and quantity of the grievances.

### B.     Exhibits Concerning the Cell 11 Incident

Plaintiff seeks to admit several exhibits with respect to the Cell 11 incident, including a search report filed by the Strategic Response Team on the day of the search, video footage related to the incident, letters from counsel regarding the search, this Court's order granting Plaintiff's request for a copy of the video footage as well as indicating to Defendants that they must update their Rule 26 disclosures with any witnesses whose testimony they seek to offer at trial, the transcript of the court conference on which the order was based, and a copy of Defendants' amended Rule 26 disclosures.  Dkt. No. 271 at 13–14.

"The unrestrained use of filmed evidence could lead to 'spectacular displays'" and may be excluded under Rule 403 as unduly prejudicial. 6 Weinstein's Federal Evidence § 1001.07 (2021). The parties, however, have not submitted the video footage. The Court will rule on the admissibility of the video footage at the final pretrial conference if it is provided to the Court.

Plaintiff argues that the other exhibits are important in establishing the reasons why Defendants have not offered witnesses regarding the Cell 11 incident. Dkt. No. 287 at 16. That argument is unpersuasive. Counsel may elicit from Plaintiff the number of officers who were involved in the Cell 11 incident and that none of them is a Defendant here. Counsel may also argue the absence of evidence offered by Defendants as to the Cell 11 incident. The Court transcript, the amended Rule 26 disclosures, and the letters from counsel are all irrelevant. It does not matter who is listed on the Rule 26 disclosures or that Defendants were instructed to amend the disclosures if they wanted to call a witness. What will be relevant is whether Defendants do call a witness. Plaintiff's motion is denied.

### C.   Inmate Grievance Procedures

Plaintiff additionally moves to admit the Department of Correction's Directive on Inmate Grievance Procedures. Dkt. No. 271 at 15. The Court denies Plaintiff's motion.

The Grievance Procedures outline the policy and procedures for inmate grievances, including the ways in which inmates can submit grievances, how those grievances will be received, reviewed and investigated, the resolution processes for the grievances, and safeguards protecting inmates who file grievances, including protection from retaliation. *See generally* Dkt. No. 288-5. Plaintiff argues that this document is relevant in showing "Defendants' *deviations* from these procedures" in a way that "make[s] it more probable that they had retaliatory intent." Dkt. No. 287 at 17 (emphasis in original). But the central issue to be tried in this case is whether Defendants *retaliated* against Plaintiff for having exercised his First Amendment rights such that

Defendants violated Plaintiff's *legal rights*, not whether Defendants failed to follow the

Grievance Procedures.  If Plaintiff establishes that Defendants violated his civil rights as he has

alleged, Defendants will be liable to Plaintiff irrespective of any process provided by the

Grievance Procedures.  Moreover, under Rule 403, introducing such a long and technical

document to the jury runs the risk of confusing the issues and making the trial about the

Grievance Procedures rather than the alleged retaliation on the part of Defendants.

## VI.    Defendants' Disciplinary Histories

Defendants move to exclude their disciplinary histories and prior allegations of

misconduct.  Dkt. No. 278 at 16–18.  Defendant Wells testified in his deposition that he was

subject to a complaint by the Department of Correction for "[f]alsifying reports" and "inaccurate

report writing," for which he was investigated and had his "[c]omp days taken away" as

punishment.  Dkt. No. 288-6 at 32–34.  Defendant Mathis testified in his deposition that he was

previously disciplined for unauthorized use of force.  Dkt No. 288-7 at 170–71.

The disciplinary histories are inadmissible under Federal Rule of Evidence 404(b).  Rule

404(b) provides that "[e]vidence of any other crime, wrong, or act" is admissible for non-

propensity purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Plaintiff cannot use

the Defendants' disciplinary histories as character evidence under Rule 404(b).

However, pursuant to Federal Rule of Evidence 608(b), the Court will allow inquiry on

cross-examination into the disciplinary history of Defendant Wells but not into that of Defendant

Mathis.  Rule 608(b) provides that "the court may, on cross-examination, allow" specific

instances of a witness's conduct "to be inquired into if they are probative of the character for

truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  The use of unauthorized force can be

likened to acts of violence, which in the context of admitting prior convictions for violent crimes,

26

*Estrada*, 430 F.3d at 617, is understood to result from aggression while having little to no probative value on one's veracity.  On the other hand, writing inaccurate reports quite obviously and directly bears on one's veracity and thus can be inquired into on cross-examination.  Any prejudice that befalls Defendant Wells on cross-examination into his disciplinary history will stem from the probative value of his censured conduct with respect to his credibility and character for truthfulness.

## VII.    Waiver of Qualified Immunity

Plaintiff argues that Defendants have waived their qualified immunity defense "by failing to develop it in pre-trial proceedings, and [that] they should be precluded from presenting it at trial."  Dkt. No. 281 at 5.  The argument is without merit.

"[Q]ualified immunity affords government officials a two-tier defense 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  When successfully raised on a motion for summary judgment, "qualified immunity may provide a defense from suit altogether."  *Id.*  And, "[w]here summary judgment is inappropriate, and the case proceeds to trial, the defense of qualified immunity may be presented to the jury or may be decided by the court in a motion for judgment as a matter of law."  *Id.*

Plaintiff relies upon Magistrate Judge James L. Cott's Report and Recommendation finding that Defendants waived on summary judgment their arguments based on qualified immunity and the Second Circuit's opinion in *Blissett* for the proposition that Defendants are foreclosed from raising a qualified immunity defense at trial.  Neither supports their argument. In the course of his Report and Recommendation on Defendants' motion for summary judgment, Judge Cott recommended that the Court treat Defendants' argument that they should be granted

summary judgment on the basis of qualified immunity as waived because it was raised only in a footnote.  Dkt. No. 186 at 53 n.15.  He added, in language that Plaintiff avoids, that in any event, "qualified immunity is not appropriate on the current record given the factual issues presented."  *Id.*  Judge Cott did not purport to recommend that qualified immunity was waived for all purposes; the only issue as to which he issued a Report and Recommendation was whether to grant the motion for summary judgment.

"The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived."  *Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017).  Defendants did not waive the defense.  "The defendant bears the burden of pleading" the defense of qualified immunity, and here Defendants have raised the defense several times.  *Blissett*, 66 F.3d at 539.  Defendants raised an affirmative defense of qualified immunity in their answer.  Dkt. No. 47 ¶ 31 ("Defendants have not violated any clearly established constitutional or statutory rights of which a reasonable person would have known and therefore are entitled to qualified immunity.").  Defendants raised the defense in a footnote to their motion for summary judgment.  Dkt. No. 161 at 26 n.23.   Furthermore, Defendants' statement of defenses for trial identifies qualified immunity as one of four defenses.  Dkt. No. 271 at 4 ("Defenses for Trial: . . . 4. Defendants did not violate any clearly established rights of which a reasonable officer would have been aware, and are therefore entitled to qualified immunity.").

In *Blissett*, the Second Circuit held that the defendants had waived a qualified immunity defense where—having raised a general qualified immunity defense in the answer—they had not sought summary judgment on the issue of qualified immunity, had made no mention of a qualified immunity defense in their pretrial memorandum of law outlining disputed issues of law and fact to be tried, had not objected when the district court stated that the qualified immunity

defense was not an issue to be tried, failed to articulate the defense even when the court

entertained oral argument on the matter after opening statements, and did not raise qualified

immunity in any of their motions for judgment as a matter of law either during trial or after the

verdict. *Blissett*, 66 F.3d at 538–39. The court did not hold that a defendant must make a motion

for summary judgment on qualified immunity grounds lest he lose the ability to raise the issue at

trial. As noted, the court expressly contemplated the circumstance in which summary judgment

was not appropriate because "facts material to the qualified immunity defense must be presented

to the jury to determine [the defense's] applicability," and held that in that circumstance it

presents a defense to liability. *Id.* at 538; *see also Kerman v. City of N.Y.*, 374 F.3d 93, 111 (2d

Cir. 2004) (holding that *Blissett* statement is applicable in "cases where summary judgment is

inappropriate because the party opposing the motion has adduced evidence sufficient to show a

genuine issue of material fact to be tried, but where that party's proof as presented at trial falls

short of its initial promise").

Although Defendants did mention qualified immunity in their motion for summary

judgment, Defendants were not required to move for summary judgment on the grounds of

qualified immunity and thus it follows that their failure to do so cannot waive the issue for trial.

*See McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997) ("Where the qualified immunity

defense has not been resolved prior to trial, it may be presented to the jury or it may be decided

by the court as a matter of law."). Unlike the situation in *McCardle* where the officer did not call

the court's "attention to any part of the record showing that the issue was the subject of any other

pretrial motion" and where "[t]here was no reference to qualified immunity in [defendant's]

pretrial memorandum to the court," *id.* at 52, Defendants have brought the qualified immunity

defense to the attention of the Court and Plaintiff by means of their pleadings, motions,

memorandums of law, as well as the *joint* proposed pretrial order by listing it as one of their four defenses for trial.  Neither the Court nor Plaintiff are blindsided by Defendants' qualified immunity defense given the many times it has been referenced and raised, including in these very motions *in limine*.

## VIII.   Plaintiff Referring to Dismissed Defendants

Defendants move to preclude Plaintiff from alluding to dismissed defendants "who had zero connection to the alleged incidents that remain at issue for trial."  Dkt. No. 278 at 10. Plaintiff maintains that Mr. Williams should be able to reference dismissed defendants "who had *some* connection."  Dkt. No. 287 at 9 (emphasis in original).

The parties are permitted to elicit evidence regarding all persons who are relevant, regardless of whether they are named as a defendant.  But the fact that they were named as a defendant and were dismissed is not relevant and will not be received absent the witness testifying.

## IX.   Case Caption Mentioning the City as a Defendant

Defendants move to amend the case caption to remove the City of New York, Dkt. No. 278 at 7, on the theory that any mention of the City would be prejudicial and might confuse the jury because is not a party to the suit.  The motion is granted in part.

Any document bearing the case caption that is given to or displayed to the jury will be redacted so that it names only the Plaintiff and the two Defendants on trial.  It will not refer to the fact that there were other Defendants or provide their identity.  This ruling applies to the juror questionnaire, verdict form, and jury instructions and any other document displayed to the jury.

**X.      Plaintiff Referring to the City of New York, NYC Department of Correction, and Defense Counsel as "City Attorneys"**

Defendants move for an order precluding the Plaintiff from referring to Defendants' counsel as "City Attorneys" or as attorneys for the "New York City" or the "Department of Corrections."  Dkt. No. 278 at 7.

The motion is granted.  The Court will introduce the attorneys representing the two individual Defendants as Attorneys from the Corporation Counsel's Office and will inquire into whether any of the jurors know the attorneys or anyone who works for Corporation Counsel.  But, technically speaking, the attorneys who will represent the Defendants are not representing the City or the Department of Corrections.  They are not parties to the trial.  Accordingly, it would be improper and incorrect to refer to Defendants' counsel as the City's attorneys or the attorneys for the City or the Department of Corrections.[4]

**CONCLUSION**

For these reasons, Plaintiff's and Defendants' motions *in limine* are both GRANTED in part and DENIED in part.  The Clerk of Court is respectfully directed to close Dkt. Nos. 277, 280.

SO ORDERED.

Dated: April 12, 2023
   New York, New York       _____
                 LEWIS J. LIMAN
              United States District Judge

---

[4] Defendants also move to preclude Plaintiff from offering evidence of the City's indemnification of Defendants and from suggesting a specific dollar amount to the jury.  Dkt. No. 278 at 8–9.  Plaintiff does not dispute these motions and indicates that he does not intend to do either.  Dkt. No. 287 at 8–9.  The Court grants Defendants' motions.